UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT R. FENICHEL, M.D. )
Individually, and as Personal )
Representative of the )
Estate and Next of Kin of )
EMILY S. FENICHEL, Deceased, )
                                                      )
              Plaintiff,               )        Case No. 1:07-CV-00768-JR
                                                      )
v.                                          )
                                                      )
WASHINGTON METROPOLITAN )
AREA TRANSIT AUTHORITY, et al. )
                                                      )
              Defendants.            )
_____)

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE LIABILITY OF DEFENDANT WMATA

Plaintiff Robert R. Fenichel, M.D., individually, and as Personal Representative of the Estate and Next of Kin of Emily S. Fenichel, Deceased, through his counsel, hereby moves this Court pursuant to Fed. R. Civ. P. 56 for partial summary judgment as to Defendant Washington Metropolitan Area Transit Authority's (WMATA's) liability for the death of Mrs. Fenichel.

In support of this Motion, Plaintiff submits the accompanying Memorandum of Points and Authorities, and Statement of Undisputed Material Facts.

Respectfully submitted,

BRUCE J. KLORES & ASSOCIATES, P.C.

By_____/s/ Scott M. Perry____
    Bruce J. Klores (358548)
    Scott M. Perry (#459841)
    1735 20th Street, N.W.
    Washington, DC 20009
    P: 202-628-8100
    F: 202-628-1240
    *Counsel for Plaintiffs*

1845/sum.judg.mtn

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ROBERT R. FENICHEL, M.D.     )
                                  )
       Plaintiff,             )
                                  )
v.                                  )     C. A. No. 1:07-CV-00768
                                  )
WASHINGTON METROPOLITAN     )
AREA TRANSIT AUTHORITY, et al.     )
                                  )
       Defendants.          )

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     On June 8, 2006, Emily Fenichel, was struck and killed by a bus owned and operated by the Defendant, Washington Metropolitan Area Transit Authority (WMATA). **Exhibit 2 at 2**.

2.     Mrs. Fenichel was struck as the bus was making a right turn onto Wisconsin Avenue from Jennifer Street in Northwest Washington, D.C. **Exhibit 2 at 2**.

3.     Mrs. Fenichel was within the confines of the pedestrian crosswalk when she was struck. **Exhibit 2 at 2**.

4.     The bus's striking of Mrs. Fenichel was a proximate cause of her death. **Exhibit 4.**

5.     The bus was being operated by Michelle Ferguson, a WMATA employee. She was acting within the scope of her employment. **Exhibit 3 at para. 17.**

6.     Three weeks after the collision, WMATA terminated Ms. Ferguson. **Exhibit 2 at 3**.

7.     Ms. Ferguson sought unemployment benefits, which WMATA declined to provide. **Exhibit 1 at 1**.

8.     A hearing was held before D.C. Department of Employment Services Claims Examiner. **Exhibit 1 at 1**.

9.  On February 12, 2007, the Claims Examiner found that Ms. Ferguson exhibited

"misconduct" in her operation in causing the accident and denied her unemployment benefits.

**Exhibit 1 at 1.**

10. Ms. Ferguson appealed and a hearing was held by Administrative Law Judge Wendy

Hartmann Moore on March 14, 2007.  **Exhibit 2.**

11. On April 6, 2007, Judge Moore found that Ms. Ferguson exhibited "gross misconduct" in

causing the accident and denied her unemployment benefits.  **Exhibit 2.**


Respectfully submitted,

BRUCE J. KLORES & ASSOCIATES, P.C.

By_____/s/ Scott M. Perry_____
    Bruce J. Klores (358548)
    Scott M. Perry (#459841)
    1735 20th Street, N.W.
    Washington, DC 20009
    P: 202-628-8100
    F: 202-628-1240
    Attorneys for Plaintiffs


1845-sj-liability

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT R. FENICHEL, M.D.          )
Individually, and as Personal     )
Representative of the             )
Estate and Next of Kin of         )
EMILY S. FENICHEL, Deceased,      )
                                  )
        Plaintiff,                )          Case No. 1:07-CV-00768-JR
                                  )
v.                                )
                                  )
WASHINGTON METROPOLITAN           )
AREA TRANSIT AUTHORITY, et al.    )
                                  )
        Defendants.               )
_____ )

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO THE LIABILITY OF DEFENDANT WMATA**

**Introduction**

        "Where a party assumes a certain position in a legal proceeding, and succeeds in

maintaining that position, he may not thereafter, simply because his interests have changed,

assume a contrary position . . . ." *State of New Hampshire v. State of Maine,* 532 U.S. 742, 749

(2001) (quoting *Davis v. Wakelee,* 156 U.S 680, 689 (1895)).  In this case WMATA has

successfully argued in a prior legal proceeding that its driver was at fault for hitting and killing

Emily Fenichel, a pedestrian.  Because of that WMATA is precluded from now claiming that

its driver, and therefore WMATA, was not negligent.

        On June 8, 2006, a WMATA bus being driven by WMATA employee, Michelle

Ferguson, struck and killed Emily Fenichel, a 64-year old childrens'-rights advocate, while she

was in the crosswalk of Wisconsin Avenue, N.W. in the District.

WMATA then fired Ms. Ferguson on the basis that she was at fault for causing the accident. Ms. Ferguson applied for unemployment benefits, which WMATA denied. Specifically, WMATA asserted before the District of Columbia Department of Employment Services (DOES) -- first before a Claims Examiner, and then on appeal before an Administrative Law Judge -- that it was not liable for unemployment benefits because Ms. Ferguson was at fault in causing the accident, and that, in fact, she exhibited gross misconduct when she struck and killed the Plaintiff's decedent.

The Claims Examiner ruled in WMATA's favor, finding that WMATA, which had the burden of proof, had established "gross misconduct" and that this was a "preventable major accident." Claims Examiner's Decision of 2/12/07, **Exhibit 1 at 1,** (hereafter "Examiner's Decision"). Ms. Ferguson, through counsel, appealed this decision and in a seven-page opinion evaluating Ms. Ferguson's, and WMATA's, respective legal positions and the evidence, an Administrative Law Judge held that WMATA had proven that Ms. Ferguson exhibited "gross misconduct," that she was at fault in causing the death of Emily Fenichel, and that Ms. Ferguson was not entitled to unemployment benefits. Final Order of 4/6/07, **Exhibit 2 at 6,** (hereafter "Final Order") (collectively referred to as the "Employment Services Litigation").

Under long-established judicial principles, WMATA should be estopped from taking the opposite position in this case by claiming that Ms. Ferguson acted correctly and did not cause Mrs. Fenichel's death. For this reason, the Court should strike WMATA's liability defenses, grant partial summary judgment in favor of Plaintiff as to liability, and set this matter for trial on damages only.[1]

---

[1] WMATA has conceded in this litigation that its driver was employed by WMATA and that she was operating within the scope of her WMATA employment at the time of the collision. *See* WMATA's Ans. To First Amended Compl. ¶ 17. **Exhibit 3.**

2

**Factual Background**

    **The Death Of Emily Fenichel**

On June 8, 2006 at approximately 11:00 p.m., Mrs. Fenichel exited the Friendship Heights Metro Station, walked to the intersection of Wisconsin Avenue, N.W. and Jenifer Street, N.W. and began crossing Wisconsin Avenue, N.W. within the crosswalk. **Exhibit 2 at 2.** There is no dispute that she was in the crosswalk and had the light when she was struck. *See id.* at 6-7. Around that time Ms. Ferguson, who was driving WMATA bus #3916, had exited a WMATA depot and was attempting to make a right turn onto Wisconsin Avenue, N.W., heading southbound. *See id.* at 2. The bus struck and killed Mrs. Fenichel with its <u>driver's side bumper</u>. *See id.* Thus, it had completed the arc of its turn before hitting her, during which time Mrs. Fenichel was readily visible to the driver.

Ms. Ferguson did not know she had hit Mrs. Fenichel. *See id.* Rather, she continued down Wisconsin Avenue another 24 feet, stopping only after hearing witnesses screaming. Mrs. Fenichel was dragged under the bus and caught in the left-front wheel. An eyewitness yelled to Ms. Ferguson to back the bus off of Mrs. Fenichel, whose chest was being crushed. In response, Ms. Ferguson got out of the bus, walked around the front of it, recognized that she had hit and pinned Mrs. Fenichel, and then returned to the bus to reverse it off of the 64-year old grandmother. Video footage shot by a Channel 4 News crew shows Mrs. Fenichel lying awake with the bus on top of her.

Emily Fenichel was pronounced dead at the Washington Hospital Center at 11:50 p.m. *See* Autopsy, **Exhibit 4**. The D.C. Medical Examiner lists the cause of death as blunt impact trauma of torso and extremities. *See id.*

**This Litigation**

Plaintiff, through counsel, contacted WMATA on February 28, 2007, to determine if it was interested in settling this matter without suit. WMATA responded that it was, and so Plaintiff sent a settlement demand to WMATA. WMATA then put Plaintiff off time-and-time again stating that it was still evaluating Plaintiff's demand and repeatedly asked him to hold off from filing suit. Plaintiff obliged WMATA's requests unaware that WMATA concurrently was litigating its liability to Mrs. Ferguson for terminating her after Mrs. Fenichel's death. With the wrongful-death statute of limitations nearing, Plaintiff filed this lawsuit on April 27, 2007. No settlement offer was ever made, and in answering Plaintiffs' First Amended Complaint WMATA denied all allegations of negligence and also claimed that Mrs. Fenichel was contributorily negligent. **Exhibit 3**.

Discovery ensued and Plaintiff sought documents and information regarding Ms. Ferguson's termination by WMATA. *See, e.g.,* Plaintiff's First Set of Interrogatories and First Request for the Production of Documents to Defendant WMATA, filed on July 13, 2007 at 12, **Exhibit 5.** In WMATA's responses, it failed to inform Plaintiff of the existence of the Employment Services Litigation, it provided no information regarding Ms. Ferguson's termination, and it provided no documents regarding the termination. *See* WMATA's Ans. To First Set of Interrogatories, **Exhibit 6.** Plaintiff then issued a subpoena to the DOES requesting all documents regarding Ms. Ferguson's unemployment claim. **Exhibit 7.** DOES responded by producing two documents: (1) the February 12, 2007 Examiner's Decision, and the (2) April 6, 2007 Final Order.[2]

---

[2] DOES has refused to produce the filings that WMATA submitted in support of its position, and WMATA has refused despite repeated requests to produce those documents. WMATA claims it is entitled to withhold these pursuant to the "self-evaluative" privilege. Even if such privilege existed, it provides no basis to withhold

**WMATA Proves The Negligence Of Its Driver**

Notwithstanding the denial in its Answer of every allegation of misconduct and driver error in this case, WMATA, in an effort to avoid paying Ms. Ferguson unemployment benefits, argued to both the Claims Examiner and to the Administrative Law Judge (*Ferguson v. WMATA,* Case No. ES-P-07-106712), that Ms. Ferguson was, in fact, at fault, characterizing Mrs. Fenichel's death as a "preventable major accident" during which Ms. Ferguson acted with "gross misconduct." **Exhibit 1 at 1.** Specifically, the Claims Examiner found that "[Ms. Ferguson was] discharged from your job with [WMATA] because you were involved in a preventable major accident resulting in a fatality of a pedestrian." **Exhibit 1 at 1.** In finding gross misconduct, the Administrative Law Judge specifically held that Ms. Ferguson "should have seen and avoided hitting a pedestrian walking within the crosswalk and with the light." **Exhibit 2 at 6-7.**

The Examiner's Decision and the Final Order demonstrate that Ms. Ferguson and WMATA were afforded a full hearing on the merits regarding Ms. Ferguson's fault, including taking evidence from Ms. Ferguson and from Robert Ballard, WMATA's Transportation Superintendent.[3] **Exhibit 2 at 1**. Indeed, 7 DCMR 307.1, "Conduct of Hearings," provides that "[a]ll hearings before a hearing examiner shall be conducted so as to ensure the protection of the substantial rights of the parties and the presentation of all relevant issues for consideration and incorporation in any decision." Regulation 7 DCMR 307.10 further provides the parties with the right to present an affirmative case by oral and documentary evidence, to

---

documents that WMATA filed with the DOES asserting its driver was liable, and Plaintiff hereby requests that WMATA be ordered to produce these documents forthwith.

[3] In addition to failing to inform Plaintiff in its discovery responses of the DOES proceedings, WMATA failed to identify Mr. Ballard as a person having knowledge of the case, and has still failed to identify the WMATA Counsel who argued the DOES cases.

submit rebuttal evidence, and to conduct cross examination. Regulation 7 DCMR 307.13 gives subpoena power to the parties. All these procedural protections were available to the parties.

At the trial presided over by Judge Moore, both Ms. Ferguson and WMATA were represented by counsel. Judge Moore relied on both the initial police report and the supplemental March 2007 Metropolitan Police Vehicle Homicide Investigation Unit report ("Accident Reconstruction Report"). **Exhibit 2 at 7.** Ms. Ferguson used that evidence, along with her own testimony, to argue that she was not at fault. *See id.* at 6-7. She argued that Mrs. Fenichel was in Ms. Ferguson's "blind spot," and that because Ms. Fenichel "ran out in front of the bus" this was not a preventable accident. *Id.* Ms. Ferguson claimed she had no opportunity to see Mrs. Fenichel before striking and killing her. *See id.* at 6. In response, WMATA argued that Ms. Ferguson ignored standard operating procedures to such a degree that her actions/omissions constituted not just misconduct, but gross misconduct. *See id.* at 4-6.

Judge Moore relied upon 7 DCMR 312.3 in finding that WMATA had met its burden of proof by demonstrating that Ms. Ferguson exhibited "gross misconduct," which is defined to include acts that "deliberately or willfully violate the employer's interests, show a repeated disregard for the employee's obligation to the employer, or disregard standards of behavior which an employer has a right to expect of its employee." *See also The Washington Times v. D.C. Dep't of Employment Servs.,* 724 A.2d 1212, 1217 (D.C. 1999) (outlining the elements of gross misconduct).

Judge Moore found that:

(1) Ms. Ferguson was a professional bus driver trained to observe all pedestrians;

(2) based on the facts presented Ms. Ferguson "should have seen and avoided hitting [Mrs. Fenichel] walking within the crosswalk and with the light;"

(3) that even if the pedestrian signal was flashing "Don't Walk" at the time of impact, that would not absolve Ms. Ferguson as Mrs. Fenichel was within the crosswalk and should have been seen by Ms. Ferguson;

(4) that Mrs. Fenichel had been within the traffic pattern for at least five seconds, which provided plenty of time for Ms. Ferguson to see her and react;

(5) that there was no obstruction while Mrs. Fenichel was standing on the curb before crossing, which provided additional time for Ms. Ferguson to see Mrs. Fenichel; and that

(6) Ms. Ferguson's act of hitting Mrs. Fenichel constituted gross misconduct.

**Exhibit 2.** The DOES denied Ms. Ferguson unemployment benefits because she wrongfully caused Emily Fenichel's death.

## ARGUMENT

### I.    SUMMARY JUDGMENT IS A FAVORED MECHANISM

Summary judgment is appropriate when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if its existence or nonexistence might affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248; *Laningham,* 813 F.2d at 1242-43. If evidence is "merely colorable" or "not significantly probative," summary judgment is appropriate. *See id.* at 249-50. Thus, where the record taken as a whole would not lead a rational juror to find for the nonmoving party on the issue, summary judgment should be granted. *See Matushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 599 (1986).

As our Circuit Court of Appeals has recognized, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal

7

Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Riddell v. Riddell Washington Corp.,* 866 F.2d 1480, 1498-99 (D.C. Cir. 1989) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-32 (1986)). Our Circuit has encouraged the district court to give "serious consideration" to summary judgment whenever its use is appropriate. *Riddell,* 866 F.2d at 1499. Thus, to defeat a motion for summary judgment, the nonmovant must come forth with "affirmative evidence" establishing a genuine issue of material fact. *Anderson,* 477 U.S. at 257; *Laningham,* 813 F.2d at 1248-49. If the nonmovant fails to do so, summary judgment is appropriate.

## II.    DEFENDANT WMATA IS COLLATERALLY ESTOPPED FROM ASSERTING THAT ITS DRIVER WAS NOT NEGLIGENT

The doctrine of non-mutual offensive collateral estoppel precludes a defendant from relitigating issues that the defendant has previously litigated against another plaintiff. *See Jack Faucett Assoc., Inc. v. AT&T,* 744 F.2d 118, 124 (D.C. Cir. 1984); *see also Modiri v. 1342 Rest. Group, Inc.,* 904 A.2d 391, 394 (D.C. 2006). Its purpose is well-engrained in our common law:

> Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation .... Collateral estoppel [] serves to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage relevance on adjudication.'

*United States v. Mendoza,* 464 U.S. 154, 158 (1984) (citations omitted). While the doctrine is ordinarily invoked to prevent a defendant from relitigating an issue he previously lost, in this case, WMATA is prohibited from relitigating the issue it won; that its employee was negligent.

To establish collateral estoppel, three elements must be met: (1) the issue must have been actually litigated; (2) the issue must have been determined by a tribunal of competent

8

jurisdiction; and (3) preclusion in the second trial must not work an unfairness.  *See AT&T*, 744

F.2d at 125.  All three criteria are met here.

### A.    The Issue Was Actually Litigated

The issue litigated before the DOES Claims Examiner, and before Judge Moore on

appeal, was whether Ms. Ferguson was liable for the death of Emily Fenichel, and if so,

whether Ms. Ferguson exhibited gross misconduct in causing her death.  To determine whether

gross misconduct occurred, the Claims Examiner and Judge Moore were required to do what

any factfinder would be asked to do in this case; determine liability for the accident.  The

Claims Examiner and Judge Moore took evidence, listened to testimony from Ms. Ferguson

regarding her version of the accident (that she was not at fault) and took testimony from Mr.

Ballard of WMATA regarding its version of the accident (that Ms. Ferguson was at fault),

heard from each party's counsel, considered the initial police report, the seven-page Accident

Reconstruction Report, and reviewed all of the documentation submitted by the parties.

**Exhibit 2 at 1-2**.  The parties were provided with a full and fair opportunity to set forth their

positions in two forums, Ms. Ferguson was afforded appellate rights that she utilized, and two

separate factfinders concluded that she caused the accident.  *See* D.C. Code Ann. § 51-111

(providing appellate rights up to the D.C. Court of Appeals for persons aggrieved by the

DOES).

Importantly, the D.C. Court of Appeals has recognized that in the DOES arena,

"misconduct" and "negligence" are equivalent terms.  *See The Washington Times*, 724 A.2d at

1218.  In fact, the Court of Appeals has held that "ordinary negligence in disregarding the

employer's standards or rules will not suffice as a basis of disqualification for misconduct. *Id.*

(quoting *Keep v. D.C. Dep't of Employment Servs.*, 461 A.2d 461, 463 (D.C. 1983)).  As a

result, in order for Ms. Ferguson to have been denied unemployment benefits, as she was, the liability finding had to be <u>greater than that of ordinary negligence</u>, which is all that is required in the present case.

Thus, liability was decided.

WMATA's affirmative defense in this case asserting contributory negligence was also decided.[4]  Specifically, Ms. Ferguson relied on the Accident Reconstruction Report's finding that Mrs. Ferguson entered the crosswalk after the flashing "Don't Walk" sign illuminated. **Exhibit 2 at 7 n.2.**  This finding is also the basis for WMATA's assertion of contributory negligence in this case.  Judge Moore considered and rejected this argument, finding that even if the "Don't Walk" signal was flashing, Ms. Ferguson "was within the traffic pattern for more than five seconds" and that "there was additional time for [Ms. Ferguson] to have observed [Mrs. Fenichel]." *Id.* at 7.  Thus, Judge Moore found that Mrs. Fenichel was not contributorily negligent even if she entered the intersection late because her actions were not a proximate cause of the collision.  *See, e.g., D.C. v. Sterling*, 578 A.2d 1163, 1165 (D.C. 1990) ("To establish the defense of contributory negligence, the burden is upon the defendant to prove…that the plaintiff was negligent <u>and that</u> such negligence contributed in some degree as a proximate cause of the injury to the plaintiff") (citations omitted) (emphasis added); *see also Hall v. Carter,* 825 A.2d 954 (D.C. 2003) (holding that if defendant has last clear chance to avoid accident then defendant is liable).

Thus, contributory negligence was decided.

**B.    The Issue Was Determined By A Tribunal of Competent Jurisdiction**

---

[4]  Nothing in this argument should suggest that Plaintiff agrees that Plaintiff's decedent was contributorily negligent.  To the contrary, the evidence is that Mrs. Fenichel was not contributorily negligent.

10

The second element required to apply collateral estoppel is that the issue must have been determined by a tribunal of competent jurisdiction. The District of Columbia recognizes the majority position that collateral estoppel applies to an administrative agency's finding: Collateral estoppel "applies not only to judicial adjudications, but also to determinations made by agencies other than courts, when such agencies are acting in a judicial capacity." *Kovach v. D.C.,* 805 A.2d 957, 962 (D.C. 2002). Thus, in *Kovach* the payment of a parking ticket in an administrative forum barred the recipient from later claiming in court that he was not guilty. *See id.*

Similarly, in *Oubre v. District of Columbia Department of Employment Services,* 630 A.2d 699 (D.C. 1993), the Court of Appeals recognized that collateral estoppel ordinarily applies to findings by DOES hearing examiners (the same agency involved in this case) as long as the proceeding was the equivalent of a judicial proceeding. *See id.* at 703. Thus, where an evidentiary hearing is held, and the parties had an opportunity to be heard, collateral estoppel will apply. *See id*; *see also Short v. D.C. Dep't of Employment Servs.,* 723 A.2d 845, 850 (D.C. 1998) ("[B]oth *res judicata* and collateral estoppel apply in administrative proceedings . . . .").

In this case, Ms. Ferguson's case was heard both before a DOES Claims Examiner and then, pursuant to her appellate rights, on appeal by an administrative law judge.[5] The Claims Examiner took evidence and rendered a finding. Likewise, the administrative law judge took evidence, heard testimony, argument of counsel and issued findings.

Thus, the issue was decided by a tribunal of competent jurisdiction.

## C.    It Would Not Be Unfair To WMATA To Apply Collateral Estoppel. It Would Be Unfair To Plaintiff *Not* To Apply Collateral Estoppel

---

[5]  That the factfinders in the first two proceeding were judicial officers and not a jury is of no moment. The U.S. Supreme Court and, in turn, the D.C. Circuit have recognized that the presence or absence of a jury is a neutral factor when applying collateral estoppel. *See Whelan v. Abell,* 1992 U.S App. LEXIS 6180, **12 (D.C. Cir. March 30, 1992) (citing *Parklane Hosiery v. Shore,* 439 U.S. 322, 332 n.19 (1979)).

The final element in applying collateral estoppel is fairness. Fairness in this context is a broad concept, but courts look generally at whether: (1) the party seeking to apply collateral estoppel could have joined in the first action but chose not to; (2) whether the party against whom it is asserted had no incentive to strongly fight the first adjudication; (3) whether there are procedural opportunities that were unavailable in the first forum; and (4) whether the judgment relied upon is consistent with other decisions. *See AT&T*, 744 F.2d at 125-26. None of these elements render application of collateral estoppel unfair to WMATA.

As to the first element, Plaintiff not only had no incentive to join in the first action, but he had no ability to join in it. The employment matter between Ms. Ferguson and WMATA was between those parties only. Indeed, Plaintiff did not even know about the proceedings until he received the records demanded by his subpoena.

As to the second element, WMATA not only had a strong incentive to fight the issue, it actually strongly fought it, and won. As previously mentioned, in the Employment Services Litigation WMATA had the burden of proof to establish the liability of Ms. Ferguson. It did this by relying on Ms. Ferguson's gross misconduct in failing to follow WMATA's policies and procedures. Moreover, given the facts of this case, and the attendant publicity received by WMATA as a result of multiple pedestrian deaths arising from WMATA bus accidents, WMATA was aware that this death would result in a negligence lawsuit. It likewise was aware that it could not argue inconsistent positions before two judicial bodies. Yet, it chose to do so.

The third element – procedural protections – favors estoppel. This element recognizes that there may be certain protections afforded to the estopped party in the second court that were unavailable in the first tribunal. But this element has no application in this case because WMATA <u>won</u> the issue in the tribunal below – twice. Thus, it cannot claim that the procedural

12

protections available in this Court will be more beneficial to it because it has already succeeded on the issue. Moreover, pursuant to D.C. Code Ann. § 51-111 and 7 DCMR 307, Ms. Ferguson and WMATA were entitled to virtually all the procedural protections available in this Court, and arguably more. Under the DOES system, Ms. Ferguson had the right to have the ALJ's decision reviewed by the Director and then again by the D.C. Court of Appeals, while in this Court only one appeal is afforded. *See* D.C. Code Ann. § 51-111.

The fourth element – consistency of judgments – strongly favors application of collateral estoppel. There are now two valid, final judgments holding Ms. Ferguson liable for this accident. These decisions are consistent. A finding by a jury that there was no liability on the part of WMATA would result in inconsistent judgments.

The Court should also consider the unfairness to the Plaintiff of not applying collateral estoppel. The system only works when each side adheres to their roles as officers of the Court by not manipulating the judicial process. While the taking of patently inconsistent positions solely for pecuniary interest is, itself, a grievous distortion of the process, WMATA's failure to disclose the Employment Services Litigation in discovery was equally calculated. Plaintiff specifically inquired of WMATA in discovery as to any proceedings that resulted from Ms. Ferguson's termination. *See, e.g.,* **Exhibit 4, Interrogatory 12** (seeking information, including the court and case number, of any termination proceedings). WMATA responded by asserting the so-called "self-evaluative" privilege and its "internal disciplinary process," providing no other information in that response, or in any other discovery response regarding the Employment Services Litigation. It never informed Plaintiff that it had terminated Ms. Ferguson for causing the accident, never informed Plaintiff of the Employment Services

Litigation, and still has not provided any documents it submitted in the Employment Services Litigation.

Plaintiff, relying on the fact that WMATA disputed liability in its Answer, has spent thousands of dollars putting together proof that Ms. Ferguson was negligent, not knowing that all along WMATA's lawyers were telling another judge Ms. Ferguson was at fault. Indeed, Plaintiff spent over $10,000 during a multi-hour inspection of the scene and of the bus, which WMATA's counsel attended. Yet, during that multi-hour inspection, WMATA's counsel said nothing despite the fact that WMATA had already proven to another judge that Ms. Ferguson was negligent. To not apply collateral estoppel given WMATA's intentional actions/omissions, would unfairly prejudice Plaintiff.

Fairness and judicial integrity favor application of collateral estoppel. The doctrine exists for a reason. Parties should not have to waste precious time, money, and resources re-litigating issues that have been fully and fairly decided. *See generally, Mendoza,* 464 U.S. at 158. Likewise, the Court should not have to waste precious trial time re-litigating issues that have been fully and fairly decided. Moreover, a party cannot take one position before one judicial officer, and then take the opposite position before another judicial officer simply because it favors that party at the moment. While this is discussed in detail *infra,* suffice it to say that the Court, and equity, should not countenance WMATA's actions on this issue; either its driver was at fault, or she was not at fault. WMATA has asserted, *and proven,* that she was at fault.

### D.    Collateral Estoppel Has Been Applied In A Case With Similar Facts

*Rutter v. Rivera,* 74 Fed. Appx. 182 (3d Cir. 2003), is instructive on this issue. Jennifer Rutter was involved in an automobile accident with Felix Rivera. *See id.* at 184. She applied

14

for workers' compensation benefits, claiming she was disabled. *See id.* The Pennsylvania workers' compensation board denied her benefits, finding she was not disabled. *See id.* Ms. Rutter subsequently filed a negligence action against Mr. Rivera and claimed wage loss due to her disability. *See id.* The trial court declined to apply collateral estoppel to the administrative finding of no disability. *See id.* On Appeal, the Third Circuit Court of Appeals reversed the district court's decision holding that collateral estoppel precluded Ms. Rutter from claiming wage loss in the negligence action. *Id.* at 187. Finding that the disability issue was decided in the prior administrative proceeding, and that "the workers' compensation decision effectively decided this element against her, Rutter was collaterally estopped from litigating her wage loss claim" for disability against Rivera.[6] *Id.* at 188.

This same analysis applies in this case. WMATA successfully took a position before an administrative tribunal that its driver was at fault for causing Mrs. Fenichel's death. It did this to further its own pecuniary interest. The decedent's family has now brought a negligence action in this Court. Because that issue has been fully litigated in a competent forum, just as in *Rutter*, WMATA is collaterally estopped from claiming its driver is not liable in this negligence suit.

## II.     WMATA IS JUDICIALLY ESTOPPED FROM ASSERTING THAT ITS DRIVER WAS NOT NEGLIGENT

### A.     Judicial Estoppel Protects The Integrity Of The Judicial Process

Judicial estoppel prevents a party, such as WMATA, that has successfully assumed a position in a legal proceeding from asserting a contrary position in a subsequent legal proceeding simply because the party's interests have changed. *See State of New Hampshire v. State of Maine,* 532 U.S. 742, 749 (2001). Its basis is well-grounded in equitable principles and

---

[6]  Although *Rutter* was decided under Pennsylvania collateral estoppel law, all of the same essential elements applied.

in common law.  Judicial estoppel prevents "perversion of the judicial process," *see id.*

(quoting *In re Cassidy,* 892 F.2d 637, 641 (7th Cir. 1990)), and "prevents parties from playing

fast and loose with the courts."  *See State of Maine,* 532 U.S at 749 (quoting *Scarano v. Cent.*

*R.R. Co.,* 203 F.2d 510, 513 (3d Cir. 1953)).  The rule "is intended to prevent 'improper use of

judicial machinery.'"  *Id.* (quoting *Konstantinidis v. Chen,* 626 F.2d 933, 938 (D.C. Cir. 1980)).

### B.    Judicial Estoppel Is Firmly Engrained In Our Common Law

Plaintiff acknowledges that some decisions from our Circuit have held that based on a

1980 D.C. Circuit Court of Appeals decision, the D.C. Circuit does not recognize judicial

estoppel.  *See, e.g., Smith v. District of Columbia,* 295 F. Supp. 2d 53 (D. D.C. 2003)

(Magistrate Facciola).  But Plaintiff suggests that these decisions cannot be reconciled with the

Supreme Court's 2001 decision in *State of Maine* recognizing this judicial doctrine and

applying it to decide that case.[7]  Specifically, the Supreme Court found that "[a]lthough we

have not had occasion to discuss [judicial estoppel] elaborately, other courts have *uniformly*

recognized that its purpose is 'to protect the integrity of the judicial process.'"  *See State of*

*Maine,* 532 U.S. at 749 (citations omitted) (emphasis added).

After this pronouncement by the U.S. Supreme Court, and its use of the doctrine to

resolve that case, the D.C. Circuit is no longer free to disavow this judicial doctrine.[8]  *See, e.g.,*

*U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.,* 498 F. Supp. 25, 93 (D. D.C. 2007)

---

[7]  Plaintiff has assumed for purposes of this argument that judicial estoppel is procedural and, thus, the Court will rely on federal precedent in determining whether to apply this principle.  But it is worth noting that the First Circuit Court of Appeals has noted that judicial estoppel appears neither clearly procedural nor clearly substantive. *See Alternative Sys. Concepts, Inc. v. Synopsys, Inc.,* 374 F.3d 23, 32 (1st Cir. 2004).  To the extent that the principle is substantive and this case which arose in D.C. will apply D.C. law, the D.C. Court of Appeals recognizes and applies judicial estoppel. *See Prince Constr. Co. v. D.C. Contract Appeals Board,* 892 A.2d 380, 386 (D.C. 2006).

[8]  Indeed, in the 1993 case, *United Mine Workers v. Pittston Co.,* 984 F.2d 469, 477 (D.C. Cir. 1993), the Court did not actually repudiate the doctrine.  Rather, it held that it had not yet embraced it in this Circuit and declined to do so in that case. *See id.*

16

(applying judicial estoppel because party acted in a "calculated manner" to manipulate the district court). Judicial estoppel is firmly engrained in our judicial system, and has been recognized and approved for use by the United States Supreme Court in all courts.

### C. All of the Elements Of Judicial Estoppel Are Met In This Case

While the Supreme Court has noted that the elements of judicial estoppel are not reducible to one simple formula, it has laid out the general elements. These elements establish that this case is uniquely suited for application of judicial estoppel.

The general elements are as follows: (1) a party's later position must be inconsistent with its earlier position; (2) the party must have succeeded in asserting the position such that judicial acceptance of an inconsistent finding in a later proceeding would create the perception that the first finder of fact was misled; and (3) whether the party seeking to assert an inconsistent position will derive an unfair advantage if not estopped. *See State of Maine,* 532 U.S. at 751.

### 1.    WMATA'S Position Is Inconsistent

This element is similar to the "actually litigated" requirement discussed *supra* in the collateral estoppel analysis. Thus, Plaintiff will not belabor the Court with a long discussion here. It is sufficient to point out that in the Employment Services Litigation WMATA successfully took the position that its driver's negligent actions caused Mrs. Fenichel's death. It argued that Ms. Ferguson committed gross misconduct in failing to avoid the accident. And gross misconduct, which imputes willfulness, is a higher burden than negligence. *See The Washington Times,* 724 A.2d at 1217-1218 (D.C. 1999) ("ordinary negligence...will not suffice as a basis of disqualification for misconduct").

In the present case, WMATA has denied that its driver was negligent in causing the accident. The two positions cannot be reconciled. While WMATA will likely argue that gross misconduct is not akin to negligence, they are.

A comparison of the D.C. Negligence Instruction (§ 5.02), and Judge Moore's findings demonstrate this:

> Negligence is the failure to exercise ordinary care. To exercise ordinary care means to use the same caution, attention or skill that a reasonable person would use under similar circumstances. It is negligent to do something that a person using ordinary care would not do. It is also negligent to fail to do something that a person using ordinary care would do.

Judge Moore's findings:

> Claimant was a professional bus driver. She was trained how to operate the bus to avoid accidents. She was trained how to traverse intersections, make right turns, look for pedestrians; she was trained to observe 'every person, object, or vehicle within the traffic pattern.' [citation omitted.] This training includes procedures to be used to minimize the impact of both vehicle and environmental blind spots. [citation omitted]
>    . . .
> Had Claimant been following the Standard Operating Procedures with which she was trained, and following the rules of careful driving, Claimant should have seen pedestrian well before the pedestrian left the curb and entered the crosswalk.

**Exhibit 2 at 6-7.** Put simply, Judge Moore found negligence.

In exhibiting gross misconduct, WMATA is really arguing that Ms. Ferguson's failure to adhere to, and follow its policies and procedures, caused this death. After all, if Ms. Ferguson's gross misconduct did not cause the death, then WMATA would not have, and could not have, terminated Ms. Ferguson in the first place, nor could it have denied her employment benefits. Indeed, as the Third Circuit recognized in *Rutter,* although the legal nomenclature may be different in the two actions, the crux of the finding is the same. *See Rutter,* 74 Fed.

Appx. at 188 (finding no merit in the argument that the "no disability" finding in the workers

compensation forum is different from the wage loss claim in the negligence suit).

Simply put, WMATA's position in this litigation is clearly inconsistent with WMATA's

successful argument in the Employment Services Litigation.

**2.    A Contrary Finding In This Litigation Would Create The
Perception That Both The Claims Examiner And
The Administrative Law Judge Were Misled**

A finding of no liability in this case could not be reconciled with both of the findings in

the Employment Services Litigation.  How could WMATA's employee have exhibited gross

misconduct in causing Mrs. Fenichel's death -- "a preventable major accident" -- yet not have

been negligent?   Such disparate findings cut at the very core of the integrity of the judicial

process and are the type of result that make our citizens question whether the tort system has

lost its way.

As explained *supra* regarding application of collateral estoppel, this issue was fully and

fairly litigated by both sides.  In the Employment Services Litigation WMATA had the burden

of proof, and it met that burden of proof -- twice.  There is no evidence that either the Claims

Examiner or the Administrative Law Judge, who issued a seven-page Final Order, were misled.

Indeed, WMATA cannot claim there was a mistake because it succeeded in asserting its

position.  Moreover, it makes no difference that WMATA's inconsistent position was first

made to an administrative agency.  *See Mitchell v Washingtonville C. Sch. Dist.*, 190 F.3d 1, 6

(2$^d$ Cir. 1999) (finding that judicial estoppel applies to positions taken with administrative

agencies).

A contrary finding in this case would lead to irreconcilable judicial decisions, which the

doctrine of judicial estoppel is designed to prevent.

### 3. WMATA Would Derive An Unfair Advantage By Being Permitted To Assert Inconsistent Positions

WMATA's counsel, like Plaintiff's counsel, are officers of the Court. They have a duty to protect the integrity of the judicial system regardless of the interest of their client. A party is not entitled to take one position before one tribunal because it advances its position there (avoidance of having to pay unemployment benefits), and take an entirely different position in this Court (disclaiming negligence to avoid paying damages to the tort victim). Either WMATA's driver was negligent, or she was not. That fact does not change depending on the tribunal that WMATA finds itself before, or the end result it seeks. WMATA cannot, in good faith, take both positions.

Plaintiff, who attempted to settle this case without litigation but who never received a response from WMATA, should not have to undergo the expense and delay of proving an element that has already been conclusively judicially established by the Defendant itself. To do so would work a manifest injustice on Plaintiff, to WMATA's advantage. If WMATA is free to assert whatever position benefits its pocketbook at any time, then judicial integrity is eroded at the expense of both the taxpayers who fund WMATA, and the tort victims whose lives are forever affected by WMATA's negligent actions.[9]

Moreover, the effect of WMATA's insolence is clear. WMATA was so brazen in asserting this inconsistent position that it did not even disclose the fact of the Employment Services Litigation to Plaintiff in response to discovery questions. It then arranged, and

---

[9] After learning of this, Plaintiff's counsel sent a letter to WMATA on September 20, 2007, explaining that he was deeply troubled by WMATA's actions and offering WMATA the opportunity to withdraw its liability defenses or to explain the basis for its inconsistent positions, and explaining that if it did neither, Plaintiff intended to move for Rule 11 sanctions for the time and expense needlessly expended to date on proving liability. **Exhibit 8.** WMATA's counsel responded on September 24, 2007, providing no legal justification for its position, and refusing to withdraw its liability defenses. **Exhibit 9.** Rather, he simply pointed to the findings contained in the Accident Reconstruction Report. But that Report was issued before the ALJ's Final Order as evidenced by the fact that the ALJ, and the parties, relied on it in that proceeding. Plaintiff reserves the right to file a Rule 11 motion.

literally stood by, as Plaintiff incurred thousands of dollars in expenses aimed at proving liability. It similarly has continued to refuse to produce to Plaintiff the filings it submitted in that litigation. Simply put, to not apply judicial estoppel in this circumstance would provide WMATA with a tremendously unfair advantage. First, it would put Plaintiff through the unnecessary expense of re-proving liability. Second, it would countenance WMATA's continued flouting of the integrity of the process and of its discovery obligations.

Judicial estoppel exists to preserve the integrity of our judicial system. This case fits its parameters precisely.

## CONCLUSION

WMATA has twice successfully argued that its driver was at fault for causing the accident that killed Emily Fenichel. It now comes before this Court and claims that its driver was not at fault for Mrs. Fenichel's death. This strategic, inconsistent use of the judicial process, should not be countenanced by the Court, and both collateral estoppel and judicial estoppel exist for the very purpose of preventing litigants from misusing the process such as WMATA has tried to do.

WHERFORE, for these reasons and any other the Court deems relevant, Plaintiff respectfully requests that WMATA be prohibited from asserting a liability defense to this case.

Respectfully submitted,

BRUCE J. KLORES & ASSOCIATES, P.C.

By _____/s/ Scott Perry_____
Bruce J. Klores (358548)
Scott M. Perry (#459841)
1735 20th Street, N.W.
Washington, DC 20009
P: 202-628-8100
F: 202-628-1240
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT R. FENICHEL, M.D.     )
Individually, and as Personal     )
Representative of the     )
Estate and Next of Kin of     )
EMILY S. FENICHEL, Deceased,     )
          )
     Plaintiff,     )     Case No. **1:07-cv-00768-JR**
          )
v.     )
          )
WASHINGTON METROPOLITAN     )
AREA TRANSIT AUTHORITY, et al.     )
          )
     Defendants.     )
_____)

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

The Court, having considered Plaintiff's Motion for Partial Summary Judgment As To The Liability Of Defendant WMATA, and any opposition thereto, hereby ORDERS that the motion is;

GRANTED.

It is further ORDERED that WMATA is collaterally estopped and judicially estopped from defending this case on liability, and that partial summary judgment is entered in Plaintiff's favor on the issue of liability.

It is further ORDERED that this case shall proceed on damages only.

_____
United States District Judge

1845/sum.jdgmt2

22

# EXHIBIT 1

# Determination by Claims Examiner



RECEIVED FROM
DEPT OF EMPLOYMENT
SERVICES

2007 AUG 28 AM 11:41

OFFICE OF THE GENERAL
COUNSEL

# DISTRICT OF COLUMBIA
## DEPARTMENT OF EMPLOYMENT SERVICES
### CENTRAL ADJUDICATION BRANCH
### 609 H STREET, N.E. SUITE 341
### WASHINGTON, D.C. 20002

## DETERMINATION BY CLAIMS EXAMINER

**Social Security Number:** 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

**CLAIMANT:**                                    **EMPLOYER:**

MICHELLE N FERGUSON                WMATA
4020 LIVINGSTON ROAD SE #303       600 5TH ST NW RM 2D-05
WASHINGTON, DC - 20032-2906        WASHINGTON, DC - 20001-2610

**ISSUE:**
**DISCHARGED FOR MISCONDUCT**

You are hereby notified of the following determination disqualifying you from the receipt of benefits beginning 01/28/2007 to indefinite or until such time as you have been employed in each of ten (10) weeks (whether or not consecutive), have earnings from this employment equal to not less than ten (10) times your Weekly Benefit Amount, and become unemployed through no fault of your own.
**D.C. Code, Title 51-110(b)(1).**

**REASON FOR DETERMINATION:**
You were discharged from your job with your most recent employer because you were involved in a preventable major accident resulting in a fatality of a pedestrian. This major accident was not in the best interest of the employer. Therefore, it is considered that you were discharged for misconduct occurring in your most recent work.
**Gross misconduct has been established.**

**DECISION:**
**Therefore, the claimant listed herein has been determined ineligible for unemployment benefits.**

Antoinette Carter
Claims Examiner

I certify that a copy of this document was mailed to the employer/claimant at the above address on 2/12/2007.

_____
Signature

### SEE THE ENCLOSED NOTICE OF APPEAL RIGHTS

# EXHIBIT 2

# Final Order by Administrative Law Judge Moore

DISTRICT OF COLUMBIA
OFFICE OF
ADMINISTRATIVE HEARINGS

2007 APR -6  P 3: 43

**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**
941 North Capitol Street, NE Suite 9100
Washington, DC  20002
TEL: (202) 442-8167
FAX: (202) 442-9451

| | |
|---|---|
| MICHELLE N. FERGUSON<br>             Appellant/Claimant<br><br>       v.<br><br>WMATA<br>             Appellee/Employer | Case No.: ES-P-07-106712 |

**FINAL ORDER**

## I.    INTRODUCTION

Appellant/Claimant Michelle N. Ferguson filed an appeal of a Claims Examiner's Determination holding her ineligible for unemployment compensation benefits.  This appeal raises the issue whether Claimant was discharged for cause constituting "misconduct" as defined in 7 District of Columbia Municipal Regulations ("DCMR") 312, pursuant to the District of Columbia Unemployment Compensation Act, D.C. Code, 2001 Ed. § 51-110(b).

This administrative court issued a Scheduling Order and Notice of In-Person Hearing on February 28, 2007, scheduling the hearing for March 14, 2007, at 10:30 a.m.  At the request of Claimant, and for good cause shown, the matter was continued until later in the day, the hearing was held at 12:30 p.m.  At the hearing, Claimant was represented by Lolita Martin, Esq., Claimant Advocacy Program.  Appellee/Employer WMATA was represented by Kathleen Carey, Esq.  Claimant testified on her own behalf.  Robert Ballard, Transportation

Superintendent, testified on behalf of Employer.   During the hearing, Claimant's Exhibit ("Exh.") 100 and Employer's Exhs. 200 through 206 were admitted into the record.

At the hearing, Claimant's counsel advised Claimant that, pursuant to the 5th Amendment to the United States Constitution, Claimant had a right not to testify since her testimony could potentially give rise to criminal charges.   Claimant stated that she understood her rights, but voluntarily chose to testify at the hearing.

## II.    FINDINGS OF FACT

Claimant filed an appeal of the Claims Examiner's February 12, 2007 Determination on February 20, 2007.[1]

Claimant worked for Employer for three years and nine months as a bus operator.   On June 8, 2006, at approximately 10:45 p.m., Claimant, operating a twenty-foot bus, left the Western Avenue Bus Depot headed to Dupont Circle to begin her route.   Claimant stopped at a red light at the intersection of Jennifer Street and Wisconsin Avenue, N.W.   When the light changed, Claimant began to proceed into the intersection traveling east on Jennifer Street. Claimant intended to turn right to travel south on Wisconsin Avenue.   Claimant waited for pedestrians to cross, and began her turn.   While turning from Jennifer Street onto Wisconsin Avenue, the left front bumper of the bus Claimant was operating hit a pedestrian, dragging the pedestrian and running over her. Exhs. 100, 200.   The pedestrian had stepped off the curb into the crosswalk of the south side of Wisconsin Avenue and was hit in the center lane.   The

---

[1]   Nothing in the record below indicates any issue has been raised or preserved concerning factors under D.C. Code, 2001 Ed. § 51-109, such as base period eligibility or availability for work.

pedestrian approached the intersection and began crossing while Claimant was waiting to make her turn. When the pedestrian left the curb, the pedestrian walk light was flashing "Don't Walk," but the traffic light for Wisconsin Avenue traffic was red. It took the pedestrian five seconds to walk from the curb to the point of impact. The pedestrian died as a result of her injuries. *Id.*

Employer has Standard Operating Procedures that set forth the expected proper procedures for the operation of its buses. Exh. 203. Employer trains each bus driver on the proper procedures, using the Standard Operating Procedures as its training guide. *Id.* The procedures provide a bus operator with clearly defined bus operating procedures for making right turns, intersection operations, observations, and defensive driving. *Id.* This training includes procedures to minimize the effect of blind spots. *Id.*

Employer suspended Claimant pending an investigation into the accident. On June 29, 2006, Employer terminated Claimant's employment as a result of the June 8, 2006 accident.

## III.    CONCLUSIONS OF LAW AND DISCUSSION

In accordance with D.C. Code, 2001 Ed. § 51-111(b), any party may file an appeal from a Claims Examiner's Determination within ten (10) calendar days after the mailing of the Determination to the party's last-known address or, in the absence of such mailing, within ten (10) calendar days of actual delivery of the Determination. The Determination in this case contains a certificate of service dated February 12, 2007. Therefore, the parties had until February 22, 2007, to file an appeal. Claimant's appeal was filed on February 20, 2007. The appeal was timely filed and jurisdiction is established. D.C. Code, 2001 Ed. § 51-111(b).

Generally, any unemployed individual who meets certain statutory eligibility requirements is qualified to receive benefits. D.C. Code, 2001 Ed. § 51-109. The law, however, creates disqualification exceptions to the general rule of eligibility. If an employee is discharged for misconduct (either "gross" or "other than gross"), the employee is disqualified from receiving benefits for at least some period of time. D.C. Code, 2001 Ed. § 51-110.

The employer bears the burden of producing evidence and demonstrating that an employee has been discharged for misconduct. OAH Rule 2820.3 (burden of production on party arguing an exception to a statutory requirement); *see McCaskill v. D.C. Dep't of Employment Servs.*, 572 A.2d 443, 445-446 (D.C. 1990). An employee may, however, offer testimony or documents sufficient to satisfy the employer's burdens of production and persuasion on the issue of misconduct.

The District of Columbia's unemployment compensation statute recognizes two levels of disqualifying misconduct, "gross" and "other than gross." D.C. Code, 2001 Ed. § 51-110(b)(1) and (2). "Gross misconduct" is the more serious of the two levels and includes acts that "deliberately or willfully violate[] the employer's rules, deliberately or willfully threaten[] or violate[] the employer's interests, show[] a repeated disregard for the employee's obligation to the employer, or disregard[] standards of behavior which an employer has a right to expect of its employee." 7 DCMR 312.3. Applicable regulations describe specific acts that, among others, may constitute gross misconduct:

a. Sabotage;
b. Unprovoked assault or threats;
c. Arson;
d. Theft or attempted theft;
e. Dishonesty;
f. Insubordination;

g.  Repeated disregard of reasonable orders;
h.  Intoxication, the use of or impairment by an alcoholic beverage,
     controlled substance, or other intoxicant;
i.   Use or possession of a controlled substance;
j.   Willful destruction of property;
k.  Repeated absence or tardiness following warning.

7 DCMR 312.4.

Employees can also be disqualified from receiving unemployment benefits for conduct that is less egregious than gross misconduct but nevertheless "constitutes a breach of the employee's duties or obligations to the employer, a breach of the employment agreement or contract, or . . . adversely affects a material employer interest."  7 DCMR 312.5.  Such "other than gross" misconduct, also called "simple" misconduct, includes "acts where the severity, degree, or other mitigating circumstances do not support a finding of gross misconduct."  *Id; see Chase v. D.C. Dep't of Employment Servs.*, 804 A.2d 1119, 1122 (D.C. 2002).  Applicable regulations provide several examples of simple misconduct:

a.  Minor violations of employer rules;
b.  Conducting unauthorized personal activities during business hours;
c.  Absence or tardiness where the number of instances or their proximity in time
     does not rise to the level of gross misconduct;
d.  Inappropriate use of profane or abusive language.

7 DCMR 312.6.  The period of disqualification for simple misconduct is shorter than the period of disqualification for gross misconduct.

Whether the level of alleged misconduct is gross or simple, an employee cannot be disqualified from receiving unemployment benefits unless there has been a finding of "misconduct" (as the term is defined under the unemployment statute and regulations) "based fundamentally on the reasons specified by the employer for the discharge."  *See Chase*, 804 A.2d

at 1123 (internal citation omitted). Mr. Ballard testified that Employer terminated Claimant's employment as a result of the June 8, 2006 accident.

I find that there is sufficient evidence to support a determination that Claimant's discharge from employment was the result of an act which "disregards standards of behavior which an employer has a right to expect of its employee," and is thus gross misconduct. 7 DCMR 312.3.

Claimant was a professional bus driver. She was trained how to operate the bus to avoid accidents. She was trained how to traverse intersections, make right turns, look for pedestrians; she was trained to observe "every person, object, or vehicle within the traffic pattern." Exh. 203. This training includes procedures to be used to minimize the impact of both vehicle and environmental blind spots. Exh. 203.

Claimant admitted that she was aware of Employer's Standard Operating Procedures and that she had been trained using the Standard Operating Procedures. In fact, Claimant testified that she had followed all Standard Operating Procedures. Claimant argued that this was not a preventable accident: Claimant did not see the pedestrian, the pedestrian must have been in her blind spot. Claimant also argued that the pedestrian ran in front of her bus and she had no opportunity to see the pedestrian. I find these arguments to be unavailing.

Claimant testified that she was proceeding to make a right turn. Claimant was taught to look left, right, left, right, to make sure no pedestrians are in the road and traffic pattern, and then to proceed. Exh. 203. Claimant should have seen and avoided hitting a pedestrian walking

within the crosswalk and with the light.[2]  The Supplemental Police Report revealed that it "was possible for [Claimant] not to see [the pedestrian] prior to the impact" and that the pedestrian could have been in Claimant's blind spot.  Exh. 100.  However, that same police report stated that it took the pedestrian approximately five seconds to walk from the curb to the point of impact.  Clearly, the pedestrian did not just appear at the curb, she was on the sidewalk prior to crossing the street.  The pedestrian was within the traffic pattern for more than five seconds.  Therefore, there was additional time for Claimant to have observed the pedestrian.  Had Claimant been following the Standard Operating Procedures with which she was trained, and following the rules of careful driving, Claimant should have seen the pedestrian well before the pedestrian left the curb and entered the crosswalk.

Part of the training for WMATA bus drivers is how to limit the effect of blind spots.  Relying on a blind spot is not a sufficient excuse for a trained professional.  Failure to minimize the effects of a blind spot, and ultimately hitting a pedestrian, is disregarding a standard of behavior which an employer has a right to expect of its employee.  Accordingly, the Determination of the Claims Examiner shall be affirmed.  Claimant remains ineligible for unemployment compensation benefits.  D.C. Code, 2001 Ed. §§ 51-110(b) and 51-111(e); OAH Rule 2820.3.

## IV.    ORDER

Based upon the foregoing findings of fact and conclusions of law and the entire record in this matter, it is, this 6th day of April, 2007:

---

[2]    According to the Supplemental Police Report, the pedestrian left the curb and entered the intersection after the "Don't Walk" signal began.  However, even if true, that fact does not absolve Claimant.  The pedestrian was in the crosswalk walking with the traffic light.

**ORDERED**, that the Claims Examiner's Determination that Appellant/Claimant Michelle N. Ferguson is ineligible for unemployment compensation benefits is **AFFIRMED**; and it is further

**ORDERED**, that Appellant/Claimant Michelle N. Ferguson remains **INELIGIBLE** for unemployment compensation benefits, and it is further

**ORDERED**, that the appeal rights of any person aggrieved by this Order are stated below.

Wendy Hartmann Moore
Administrative Law Judge

# PETITION FOR REVIEW
## (APPEAL RIGHTS)

**THIS ORDER IS A FINAL ORDER. IF YOU WISH TO APPEAL THIS ORDER, YOU HAVE 30 CALENDAR DAYS FROM THE DATE IT IS MAILED TO YOU TO FILE A PETITION FOR REVIEW WITH THE D.C. COURT OF APPEALS.**

Pursuant to D.C. Code, 2001 Ed. § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may obtain judicial review by filing an original and six copies of a petition for review with the District of Columbia Court of Appeals at the following address:

Clerk
District of Columbia Court of Appeals
H. Carl Moultrie I Courthouse
500 Indiana Avenue NW
Sixth Floor
Washington, DC 20001

The petition for review (and required copies) may be mailed or delivered in person to the Clerk of the Court of Appeals, and must be received by the Clerk of the Court of Appeals within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a fee of $100 for filing a petition for review. Persons who are unable to pay the filing fee may file a Motion and Affidavit to proceed without the payment of the filing fee. Such motion and affidavit should be filed with the petition for review. Information on petitions for review to the Court of Appeals can be found in Title III of the Rules of the District of Columbia Court of Appeals, which are available in the Office of the Clerk of the Court of Appeals or online at www.dcappeals.gov .

If you are a member of the United States Armed Forces on active duty, you may have certain rights under the Servicemembers Civil Relief Act 50 U.S.C.S. Appx. §501 *et seq*. If you qualify for these rights and you have **LOST** this case because you were not present, you **MAY** be able to have this case reopened. If you think you may qualify under this law, you must notify this court promptly to ensure that your rights are protected.

- 9 -

Case No.:  ES-P-06-106712

## Certificate of Service:

**By First Class Mail (Postage Paid):**

Michelle N. Ferguson
4020 Livingston Road, SE, #303
Washington, DC  20032-2906

Lolita Martin, Esq.
Claimant Advocacy Program
888 16th Street, NW, Suite 520
Washington, DC 20006

Kathleen A. Carey, Esq.
WMATA
600 Fifth Street, NW
Washington, DC  20001

**By Inter-Agency Mail:**

Dorothy Jones
Department of Employment Services
609 H Street, NE
Washington, DC  20002

I hereby certify that on _April 6_, 2007, this document was caused to be served upon the above-named parties and upon DOES at the addresses listed and by the means stated.

_____
Clerk / Deputy Clerk

- 10 -

# EXHIBIT 3

# WMATA's Answer to Plaintiff's First Amended Complaint

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

ROBERT R. FENICHEL, M.D.          :
Individually, and as a Personal   :
Representative of the             :
Estate and Next of Kin of         :
EMILY S. FENICHEL, Deceased       :
                                  :
          Plaintiff,              :
                                  :
    v.                            :    Case No.: 1:07-cv-00768-JR
                                  :
WASHINGTON METROPOLITAN           :
  AREA TRANSIT AUTHORITY,         :
                                  :
    and                           :
                                  :
ORION BUS INDUSTRIES, INC.        :
                                  :
    and                           :
                                  :
DAIMLERCHRYSLER CORPORATION       :
                                  :
    and                           :
                                  :
DAIMLERCHRYSLER COMMERCIAL        :
BUSES NORTH AMERICA, INC.         :
                                  :
          Defendants.             :

## ANSWER OF DEFENDANT WMATA
## TO FIRST AMENDED COMPLAINT

### FIRST DEFENSE

The First Amended Complaint herein fails to state a cause of action against Defendant, the Washington Metropolitan Area Transit Authority ("WMATA"), for which relief may be granted.

**SECOND DEFENSE**

**JURISDICTION AND VENUE**

1.   WMATA admits that this Court has jurisdiction against WMATA only and as to Counts I and II only, pursuant to D.C. Code §§ 9-1107.01(81) and 9-1107.10. WMATA is without knowledge or information sufficient to admit or deny the other allegations of Paragraph One.

2.   WMATA admits only that  venue is proper.   All other allegations of Paragraph Two are denied.

**PARTIES**

3.   WMATA is without knowledge or information sufficient to admit or deny the allegations of Paragraph Three; therefore, they are denied.

4.   WMATA admits the allegation of the first sentence of Paragraph Four. WMATA denies the allegations of the second sentence of Paragraph Four.

5.   WMATA is without knowledge or information sufficient to admit or deny the allegations of Paragraph Five; therefore, they are denied.

6.   WMATA is without knowledge or information sufficient to admit or deny the allegations of Paragraph Six; therefore, they are denied.

7.   WMATA is without knowledge or information sufficient to admit or deny the allegations of Paragraph Seven; therefore, they are denied.

8.   WMATA is without knowledge or information sufficient to admit or deny the allegations of Paragraph Eight; therefore, they are denied.

9.   WMATA admits that on June 8, 2006 at approximately 11:00 p.m., Emily

Fenichel was a pedestrian crossing Wisconsin Avenue, N.W., at its intersection with Jenifer St., N.W. in the District of Columbia.  All other allegations of Paragraph Nine are denied.

10.  WMATA admits that Michelle Ferguson was operating a D.C. registered WMATA bus, tag B37901, and that Ms. Ferguson made a right turn onto Wisconsin Avenue from Jenifer Street, N.W.  All other allegations of Paragraph Ten are denied.

11-12.  WMATA denies the allegations of Paragraphs 11 and 12.

13-16.  WMATA is without knowledge or information sufficient to admit or deny the allegations of Paragraphs 13-16; therefore, they are denied.

17.  WMATA admits only that Michelle Ferguson was employed by WMATA and operating the WMATA bus within the scope of her employment of WMATA on June 8, 2006, as stated in Paragraph Seventeen.  The remainder of the allegations are legal conclusions to which no response is required; to the extent a response is required, they are denied.

18.  WMATA admits the allegations of Paragraph Eighteen.

## COUNT I

### (Wrongful Death As To WMATA)

19.  WMATA incorporates by reference all previous Paragraphs as if set forth in full herein.

20.  The first sentence of Paragraph Twenty is a statement of the nature of the claim to which no response is necessary.  WMATA is without information sufficient to admit or deny the remainder of the allegations of Paragraph Twenty; therefore, they

3

are denied.

21.  The allegations of Paragraph Twenty-one are legal conclusions to which no response is required; to the extent a response is required, they are denied.

22-27.  WMATA denies the allegations contained in Paragraphs Twenty-two through Twenty-seven.

## COUNT II

### (Survival Action As To WMATA)

28.  WMATA incorporates by reference all previous Paragraphs as if set forth in full herein.

29.  The allegation of Paragraph Twenty-nine is a statement of the nature of the claim to which no response is necessary.

30.  The allegations of Thirty are legal conclusions to which no response is required; to the extent a response is required, they are denied.

31-38.  WMATA denies the allegations of Paragraphs Thirty-one through Thirty-eight.

## COUNT III

### (Wrongful Death As To Defendants DaimlerChrysler: Negligence)

39-46.  Count III (Paragraphs Thirty-nine to Forty-six) pertains solely to the DaimlerChrysler Defendants, and requires no response from WMATA.  To the extent any answer is deemed necessary, WMATA denies the allegations.

4

## COUNT IV

### (Wrongful Death As To DaimlerChrysler:
### Strict Products Liability--Design Defect)

47-54.  Count IV (Paragraphs Forty-seven to Fifty-four) pertains solely to the DaimlerChrysler Defendants, and requires no response from WMATA.  To the extent any answer is deemed necessary, WMATA denies the allegations.

## COUNT V

### (Survival Action As To DaimlerChrysler:  Negligence)

_____55-61.   Count V (Paragraphs Fifty-five to Sixty-one) pertains solely to the DaimlerChrysler Defendants, and requires no response from WMATA.  To the extent any answer is deemed necessary, WMATA denies the allegations.

## COUNT VI

### (Survival Action As To DaimlerChrysler:
### Strict Products Liability)

_____62-70.   Count VI (Paragraphs Sixty-two to Seventy) pertains solely to the DaimlerChrysler Defendants, and requires no response from WMATA.  To the extent any answer is deemed necessary, WMATA denies the allegations.

## THIRD DEFENSE

_____WMATA reserves the right to assert the defense that, if the Plaintiff was injured as alleged in the First Amended Complaint, her injuries, if any, were the sole result of the acts of a person or persons other than WMATA or WMATA's servants, agents, or employees acting within the scope of their employment.

**FOURTH DEFENSE**

WMATA asserts that Plaintiff's action is barred in whole, or in part by WMATA's sovereign/governmental immunity and Section 80 of the WMATA Compact.

**FIFTH DEFENSE**

WMATA asserts Plaintiff injuries were caused by her sole and contributory negligence and/or her assumption of risk.

**SIXTH DEFENSE**

WMATA intends to rely on all defenses available from the evidence at the time of any trial and expressly reserves the right to assert such a defense as the facts become known.

Further answering the First Amended Complaint, WMATA denies all allegations of negligence and other improper conduct and further denies all allegations not specifically admitted or otherwise answered.

WHEREFORE, having fully answered the First Amended Complaint, WMATA respectfully requests that this matter be dismissed and that it be awarded costs.

Respectfully submitted,

WASHINGTON METROPOLITAN AREA
   TRANSIT AUTHORITY

Carol B. O'Keeffe #445277
General Counsel

/s/ Mark F. Sullivan
Mark F. Sullivan #430876
Deputy General Counsel

/s/ Gerard J. Stief
Gerard J. Stief #925933

6

Associate General Counsel
(202) 962-1463

/s/ Janice L. Cole
Janice L. Cole  #440351
Associate General Counsel
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-2543
Attorneys for Defendant WMATA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of June 2007, a copy of the foregoing

Answer of Defendant WMATA was electronically transmitted to:

Bruce J. Klores #358548
Scott M. Perry #459841
Bruce J. Klores & Associates
1735 20th Street, NW
Washington, DC 20009
202-628-8100
Attorneys for Plaintiffs

and a copy was sent by mail, first class, postage prepaid, to:

DaimlerChrysler Corporation and  Orion Bus Industries, Inc.
    c/o CT Corporation System
    1015 15th Street, N.W.
    Washington, D.C.  20005

DaimlerChrysler Commercial Buses North America, Inc.
    c/o The Corporation Trust Incorporated
    300 E. Lombard Street
    Baltimore, MD   21202

/s/ Janice L. Cole
Janice L. Cole #440351

7

# EXHIBIT 4

# Autopsy Report on Mrs. Emily Fenichel



# Government of the District of Columbia
## Office of the Chief Medical Examiner

### AUTOPSY REPORT

**CASE NUMBER:** 06-1373

**NAME OF DECEDENT:** EMILY S. FENICHEL

**AGE:** 64 YEARS        **RACE/ETHNICITY:** WHITE        **GENDER:** FEMALE

**DATE OF DEATH:** JUNE 8, 2006        **AUTOPSY DATE:** JUNE 9, 2006

**PERFORMED BY:** SARAH M. COLVIN, M.D.

**FINAL DIAGNOSES**

1. Blunt impact trauma of torso and extremities
    1. Multiple rib fractures with flail chest
    2. Lung lacerations and right hemothorax
    3. Avulsions of skin and subcutaneous tissue of right arm and forearm
    4. Pelvic fracture
    5. Small splenic lacerations

2. Blunt impact of head

3. Remote surgical procedures of bilateral knees, unknown indication

**CAUSE OF DEATH:**        BLUNT IMPACT TRAUMA OF TORSO AND EXTREMITIES

**MANNER OF DEATH:**        ACCIDENT

06-1373                                              Page 2 of 6
EMILY S. FENICHEL
_____

The autopsy is performed in the presence of Police Officer Brenda Floyd of the Mobile
Crime Laboratory of the Metropolitan Police Department.

## EXTERNAL EXAMINATION

Toe tags and an OCME identification band around the left ankle identify the body.

### CLOTHING

The body is received unclad, except for black nylon stocking socks.

The body is that of a normally developed, well-nourished white female measuring 5 feet
1 inch in length, weighing 162 lbs and appearing the reported age of 64 years.  The
body is cool with blanching, red-purple posterior livor mortis with Tardieu spots, except
overlying pressure points.  There is well-developed rigor mortis, which is difficult to
break.  The scalp hair is 3" in length, brown and straight to wavy with ¼" gray roots. The
irides are brown and there are no petechial hemorrhages of the bulbar or palpebral
surfaces of the conjunctivae. The nose and ears are unremarkable.  The external
auditory canals, external nares and oral cavity are free of foreign material and abnormal
secretions.  The teeth are natural and in fair condition and there is no evidence of
trauma to the lips or gums. The nasal and facial skeleton is intact by palpation.
Examination of the neck reveals no evidence of injury including furrows and fingernail
markings.  The chest and breasts are symmetrical without palpable masses.  The
abdomen is protuberant, without palpable masses or fluid retention.  The fingernails are
intact.  The neck, chest, abdomen, back and extremities are otherwise unremarkable
except for below noted medical therapy and injuries.  The external genitalia are those of
a normal, adult female.  The anus is unremarkable.

### SCARS/TATTOOS

There are no tattoos.  Each knee has a 5" well healed scar.

### MEDICAL THERAPY (EXTERNAL AND INTERNAL)

An endotracheal tube is in the mouth, secured with tape. Intravascular access catheters
are in the chest and in the left forearm.  A hard cervical collar is about the neck.
A hospital identification band is about the left wrist.

_____

**INJURIES (EXTERNAL AND INTERNAL)**

BLUNT TRAUMA

<u>Head and Neck:</u>
The right lateral side of the forehead has a 1" swelling, which subjacent to the swelling is a 2 x 1 ½" scalp hemorrhage. Along the right side of the neck is a ½ x 1" red abrasion. The right side of the face has scattered 1/8-1/4" red-pink abrasions. There are no skull fractures and no injury of the brain other than right-sided, thin (less than 1/16") non-adherent subdural hemorrhage, and a 2 x 1" faint subarachnoid hemorrhage over the vertices.

<u>Torso:</u>
The right side of the chest has a ½" blue contusion. The right upper back has a 6 x 6" area of light pink abrasions with a deeper 4 x 4" red abrasion. The left upper back/ shoulder has a 1 ½ x 1" light gray contusion. The right lower back has a 2 x ½" light gray contusion.
Internally, the right ribs 2-5 anterior, 1-7 lateral, 1-7 posterior lateral and 6-9 posterior are fractured and left ribs 4 anterior, 1-6 lateral and 3-4 posterior are fractured. The chest is flail. There is 800 mL of blood in the right chest cavity. The superior portion of the lower lobe of the left lung has lacerations. The right superior ramus of the pelvis has a ½" non-displaced fracture defect. The spleen has two ½" superficial lacerations of the capsule.

<u>Extremities:</u>
The back of the right arm has a 4 x 7" avulsion of skin and subcutaneous tissue. The anterior right forearm has a 1 x 7" avulsion of skin and subcutaneous tissue. The back of the right forearm has a 7" abrasion with scattered ¼-1/2" light pink surrounding abrasions and two 1 x 1" red-purple contusions at the wrist. The left arm has a 2" diameter and 3 x 1" light gray contusion. The right anterior thigh has a 2 x 1" light gray contusion with a 1" pink abrasion and the left thigh has a 2 x 1" light gray contusion, both at approximately 25" above the heel. The left anterior thigh, just superior to the knee, has a ¾" x ½" superficial pink gray contused abrasion. The right anterior thigh has a ¼" pink abrasion. The right anterior thigh has grease/ dirt on it.

The above findings will not be repeated in this report.

**EVIDENCE**

A blood sample and fingerprints are obtained at the time of autopsy.

---

## INTERNAL EXAMINATION

BODY CAVITIES:  The body cavities are opened using the usual Y-shaped incision with removal of the chest plate, revealing no excess fluids, secretions or hemorrhages in the pericardial or peritoneal cavities, or in the mediastinum or retroperitoneum.  The diaphragm is intact.  The thoracic and abdominal organs are in their usual anatomic locations.  The body cavities are lined by smooth surfaces, without adhesions.  There are no fractures of the spine.  There is no evidence of penetrating trauma in the body cavities.

CARDIOVASCULAR SYSTEM:  The heart weighs 320 grams.  The epicardium is smooth containing coronary arteries that follow normal courses and have minimal atherosclerotic changes.  Serial sections through the myocardium reveal brown and firm myocardium without scars, infarcts or other focal lesions.  The left ventricular free wall measures 1.0 cm and the septum measures 1.2 cm. The endocardium is unremarkable.  The cardiac valves, septae, and chambers are unremarkable.  The great vessels arise and branch normally.  The coronary ostia are patent.  The descending aorta shows mild atherosclerosis.  There are no antemortem thrombi in the chambers or great vessels.  The superior and inferior venae cavae follow their usual courses and show no evidence of thrombosis.

RESPIRATORY SYSTEM: See "injuries." The trachea, main-stem bronchi and primary branches are unobstructed.  The right lung weighs 290 grams; the left weighs 330 grams. The pleural surfaces are smooth and glistening, and there are the normal lobar divisions.  On sectioning, the uninjured pulmonary parenchyma is unremarkable.  No other focal lesions are found.  There are no mucous plugs in the bronchi.  The pulmonary arteries are free of thromboemboli.

HEPATOBILIARY SYSTEM:  The liver weighs 1620 grams.  The capsule is intact and the anterior margin is sharp.  The soft  red-brown parenchyma has the normal consistency and lobular pattern on sections and shows no fibrotic or cirrhotic changes.  The gallbladder has a thin muscular wall with dark, green velvety mucosa, and the lumen contains approximately 19 mL of bile, without stones.  The common bile duct and portal vein is unremarkable.

PANCREAS:  The pancreas is of the usual size, shape, color, texture and lobulated architecture, without abnormal fibrosis or calcification.

GASTROINTESTINAL SYSTEM:  The stomach contains approximately 400 mL of partially digested food, in which neither tablets nor capsules are identified.  After washing, the mucosae of the esophagus, stomach and proximal duodenum demonstrate no ulcers or tumors and are otherwise unremarkable except for autolysis.

06-1373                                                    Page 5 of 6
EMILY S. FENICHEL

_____

The appendix is present and the remainder of the small and large bowels is grossly normal. The rectum has unremarkable mucosa, containing feces but no foreign bodies.

GENITOURINARY SYSTEM: The kidneys weigh 230 grams together. The capsules strip with ease to reveal smooth cortical surfaces. Sections reveal normal renal architecture with distinct corticomedullary demarcation. The collecting systems and ureters are not dilated and free of calculi, emptying into a normal urinary bladder that contains approximately 7 mL of clear urine. The uterus, Fallopian tubes and ovaries are grossly unremarkable.

HEMOLYMPHATIC SYSTEMS: See "injuries." The spleen weighs 120 grams. The soft, purple parenchyma has the normal follicular pattern on sections. No enlarged or abnormal lymph nodes are found in the body.

MUSCULOSKELETAL SYSTEM: The skeletal muscles are brown and firm. There are no developmental abnormalities or palpable fractures of the long bones.

ENDOCRINE SYSTEM: The pituitary, thyroid and adrenal glands are unremarkable.

NECK: The neck is dissected in a layer-by-layer fashion, and there is no evidence of trauma to the great vessels, musculature or anterior soft tissues of the neck. The laryngeal cartilages, hyoid bone and cervical spine are intact. The mucosal surfaces of the larynx and pharynx are free of swelling or ulceration. No excess fluids or secretions, nor foreign bodies are found in the laryngeal lumen or hypopharynx. Serial transverse sections through the tongue reveal no evidence of injury.

HEAD AND CENTRAL NERVOUS SYSTEM: The scalp is reflected following the usual intermastoid incision revealing no subcutaneous or subgaleal hemorrhages. The calvarium and bones of the base of the skull are intact. The dura is intact, without epidural hemorrhages. The brain weighs 1350 grams and has symmetric hemispheres and a normal gyral pattern. The leptomeninges are glistening and translucent. The arteries at the base of the brain are normally distributed and free of atherosclerosis. The brainstem, cranial nerve roots and cerebellum are unremarkable externally. There is no evidence of herniation. Serial coronal sections through the cerebrum and horizontal sections through the brainstem and cerebellum reveal normal internal architecture and ventricular system.

06-1373                                                          Page 6 of 6
EMILY S. FENICHEL

_____

## SPECIMENS

Submitted for toxicological analyses are samples of blood, bile, urine, vitreous humor,
gastric contents, liver and brain. Representative sections are retained in formalin.   No
sections are submitted for histology.


_Sarah M Colvin, MD_ _____    _June 21, 2006_
Sarah M. Colvin, MD                                          Date Signed
Deputy Medical Examiner

# OFFICE OF THE CHIEF MEDICAL EXAMINER



DHR-312



**Toxicology Laboratory**

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**OFFICE OF THE CHIEF MEDICAL EXAMINER**
1910 Massachusetts Avenue, S.E., Bldg. 27
Washington, D.C. 20003

## TOXICOLOGY REPORT

### CASE IDENTIFICATION

| | | | |
|---|---|---|---|
| Agency: | OCME | Report Date: | 07-25-2006 |
| Agency Number: | **06-01373** | Toxicology Number: | TX06-0551 |
| Name: | FENICHEY, Emily | ME: | SMC |

### SPECIMEN(S) RECEIVED

Femoral blood (2), heart blood (2), urine, bile, vitreous, liver, brain, gastric
Date Received:          06-12-2006

### RESULTS

Femoral blood was analyzed by headspace gas chromatography for the presence of ethanol, acetone, methanol, and isopropanol. The following volatile(s) were detected:
**None were detected**


Femoral blood was screened by enzyme immunoassay for the presence of amphetamines, barbiturates, benzodiazepines, cocaine metabolites, methadone, methamphetamines, opiates, phencyclidine and propoxyphene. The following drug(s) were detected:
**None were detected**


Femoral blood was screened by gas chromatography-mass spectrometry for the presence of basic drugs. The following drug(s) were detected:
**Venlafaxine**
**Norvenlafaxine**
**Lamotrigine**
**Trazodone**


RORY M. DOYLE, M.Sc.
Deputy Chief Toxicologist, OCME

FIONA J. COUPER, Ph.D.
Chief Toxicologist, OCME

# EXHIBIT 5

# Plaintiff's First Set of Interrogatories and First Request for Production of Documents to Defendant WMATA

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT R. FENICHEL, M.D.<br>Individually, and as Personal<br>Representative of the<br>Estate and Next of Kin of<br>EMILY S. FENICHEL, Deceased,<br><br>      Plaintiff,<br><br>v.<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY, et al.<br><br>      Defendants. | Case No. **1:07-cv-00768-JR** |

## PLAINTIFF'S FIRST INTERROGATORIES
## TO DEFENDANT WMATA

Plaintiffs, by and through undersigned counsel, pursuant to Fed.R.Civ.P. 33, request that Defendant Washington Metropolitan Area Transit Authority (WMATA) timely answer separately and fully in writing under oath the interrogatories hereinafter set forth.

### INSTRUCTIONS

(a)  Your response should set forth the Interrogatory and its Answer, and "shall answer each interrogatory separately and fully in writing under oath, or shall state fully the grounds for refusal to answer any interrogatory."  The response shall be signed by you.

(b)  Your answer shall include all information available to you or your agents, representatives, or attorneys.

(c)  These Interrogatories are continuing in character so as to require you to promptly amend or supplement your answers if you obtain further or different information.

(d)  If, pursuant to Rule 2-421(c), you elect to specify and produce business records of yours in answer to any Interrogatory, then according to Rule 2-421(c), your specifications

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3088
www.klores.com

"shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained."

(e)  If in answering these Interrogatories, you encounter any ambiguities construing either a question, instruction, or definition, set forth the matter deemed ambiguous and the construction used in answering.

(f)  No part of an Interrogatory shall be left unanswered merely because an objection is interposed to another part of the Interrogatory.

(g)  Where an objection is made to any Interrogatory, or any sub-part thereof, the objection shall state with specificity all grounds.

(h)  Where a claim of privilege is asserted in objecting to any Interrogatory, or sub-part thereof, and an answer is not provided because of such assertion, you are directed to provide a statement of the basis for the claim of privilege, including specific identification of any state privilege rule or statute being invoked.

## DEFINITIONS

**As used in these Interrogatories,** the following terms are to be interpreted according to these definitions:

(a)  The term "**person**" includes any individual, trust, estate, unincorporated association or society, partnership, municipal or other corporation, the State, its agencies or political subdivision, any court, or any other governmental entity, and including all predecessors and successors in interest.

(b)  The terms "**you**" and "**your**" include the person(s) to whom these Interrogatories are addressed, and all that person's agents, employees, representatives, attorneys, family members and all other persons or entities acting on that person's behalf or under his/her control.  The term **"you"** also includes  Michelle Ferguson.

(c)  The terms "**and**" and "**or**" shall be construed conjunctively or disjunctively as necessary to make each interrogatory inclusive rather than exclusive.

(d)  The terms "**include(s)**" and "**including**" shall be construed to mean "without limitation."

(e)  The terms "**document**" or "**documents**" includes all writings, letters, memoranda, agreements, contracts, invoices, bills, receipts, checks, drawings, graphs, charts, photographs, recordings, and other data compilations from which information can be obtained, translated, if necessary, into reasonable form.

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

2

(f) The terms "**identify**", **identity**", or "**identification**", when used in reference to a natural person, require you to state that person's full name, last known address, home and business telephone numbers, present employment, business affiliation, and relation, if any, to you. When used in reference to a person other than a natural person, the terms "**identify**", "**identity**", or "**identification**", require you to describe the nature of such person (that is, whether it is a corporation, partnership, etc. under the definition of "person" above), and to state that person's last known address, telephone number, and principal place of business. Once any person has been identified properly, it shall be sufficient after that, when identifying that same person, to state the name only. When used in reference to a document, the term "**identify**," "**identity**", or "**identification**," means to set forth its title and subject matter, date, author, designated and actual recipients, type of document (e.g., letter, memorandum), number of pages, and the identity (as outlined above) of its present or last known custodian.

(g) As used in these interrogatories, the terms " **communication**" or "**communications**" shall be deemed to include any transmission of documents, conversations, discussions, meetings, negotiations, or any other oral or written exchange arising out of or concerning the subject matter addressed, whether with representatives or third persons.

## INTERROGATORIES

**INTERROGATORY NO. 1**       Identify every person who was consulted or who otherwise participated in preparing the answers to these Interrogatories, identify all documents either consulted in answering these Interrogatories or otherwise relating to the information requested in these Interrogatories, and identify each person who presently has possession, custody or control of each document.

**ANSWER:**

**INTERROGATORY NO. 2**       If you contend that the Plaintiff, through any act or omission, either caused or contributed to the cause of the incident, please identify all facts upon which you intend to rely to support this contention and provide the names, last known address and telephone numbers of all individuals who have any information that supports or contradicts your contention in this respect. Please also provide any statements made by Plaintiff.

**ANSWER:**

**INTERROGATORY NO. 3**       Please state the name, business and residence address, business and residence telephone number, and current occupation of each and every individual, known to you, who has any knowledge of the incident or who has taken any photographs or has actual or constructive possession of any photographs of the scene of the Incident. (Please note the term photograph includes still photographs, video recordings or motion pictures of any kind.)

Bruce J. Klores
& Associates
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

ANSWER:

**INTERROGATORY NO. 4**        If you have possession, custody, control, access to or knowledge of the existence of any maps, plats, drawings, diagrams, surveys, measurements, reports or statements describing, depicting or concerning the Incident, then as to each such item please state the nature or character of the item, its present location and the name, address and phone number of the individual having possession, control, access to or knowledge of the described item.

ANSWER:

**INTERROGATORY NO. 5**        Give the names and addresses of all persons known to you or your attorney who were eyewitnesses to the accident complained of and state the location of each eyewitness at the time of the accident, so far as is known to you or your attorney.

ANSWER:

**INTERROGATORY NO. 6**        Give a complete statement of the facts as to how the bus operator contends that the occurrence took place including the exact location of the occurrence and the direction in which all operators were proceeding.

ANSWER:

**INTERROGATORY NO. 7**        If a report with respect to the occurrence was made in the ordinary course of business, including investigative reports, state the date of the report and identify the person who made the report and the report's custodian.

ANSWER:

**INTERROGATORY NO. 8**        State whether the bus operator or any WMATA employees gave any written statements about the happening of the accident and if so, state to whom such statement was given and the date; unless you claim privilege, attach a copy of such statement to your answers.

**INTERROGATORY NO. 9**        Identify all persons who have given statements that relate in any way to this case.

ANSWER:

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3088
www.klores.com

**INTERROGATORY NO. 10**    Identify the bus number and route for the WMATA bus that is the subject of this lawsuit as well as the bus manufacturer, vehicle identification number, year of manufacturer and size of bus. Please include the last date and time the bus underwent a safety inspection and describe what that inspection consisted of.

**ANSWER:**

**INTERROGATORY NO. 11**    If the bus operator consumed any alcoholic beverage, drugs (prescriptive or otherwise), and/or medication within the 24 hour period immediately before the collision, state the nature thereof, the purpose therefore, the name and address of the doctor who prescribed the medication, if any, the dosage prescribed, the amount taken or which was to be taken within such period. As to alcohol, state the amount consumed, when and where consumed, and identify all persons present during said consumption.

**ANSWER:**

**INTERROGATORY NO. 12**    If the bus operator was charged with any offenses or was disciplined/terminated by WMATA arising out of the occurrence, state the nature of the charges, the court and case number, and the disposition of the charges/discipline.

**ANSWER:**

**INTERROGATORY NO. 13**    State whether at any time during the fifteen year period preceding the date of your answers to these interrogatories, the bus operator has been convicted of any crime, including minor traffic offenses. If so, for each conviction identify the court in which the bus operator was convicted and state the amount of any fine and the date and length of any incarceration imposed.

**ANSWER:**

**INTERROGATORY NO. 14**    If you are covered by any liability insurance policy which may, or does, indemnify Defendant for any of the allegations contained in the Complaint in this action, for each such insurance policy, including any and all excess or umbrella liability policies, please provide the following information:

a.    the name of each insurance company providing such policies;
b.    the effective date of each policy; and,
c.    the policy limits or amount of each such policy.

**ANSWER:**

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100
TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

5

**INTERROGATORY NO. 15**    Please state the date upon which you hired Bus Driver Ferguson and describe the process through which she was hired, including all training provided by WMATA and all courses taken by Ferguson.

**ANSWER:**

**INTERROGATORY NO. 16**    Identify each expert witness that you will call as a witness in this litigation. State in complete detail the substance of what each expert will testify to including each and every opinion each expert will give; and the facts underlying each such opinion, and identify all documents that your expert will rely upon.

**ANSWER:**

**INTERROGATORY NO. 17**    Describe in detail any property damage to the WMATA vehicle as a result of this incident.

**ANSWER:**

**INTERROGATORY NO. 18**    If at any time since the date of the Plaintiff's injuries you ever requested or conducted an investigation into the bus accident referred to in the Complaint, please state the name and address of all such investigators you have contacted, the dates of such investigations and please state whether you received a written or oral report from any such investigator or investigators.

**ANSWER:**

**INTERROGATORY NO. 19**    Please identify any policies, rules, procedures, regulations or protocols of the Defendant relating to the screening and hiring of new employees and identify the reason for any such policy, rule, procedure, regulation or protocol and the individual(s) responsible for promulgating such policy, procedure, regulation or protocol.

**ANSWER:**

**INTERROGATORY NO. 20**    Please identify any policies, rules, procedures, regulations or protocols of the Defendant relating to the training of new employees and any ongoing or in-service training for employees and identify the reason for any such policy, rule, procedure, regulation or protocol and the individual(s) responsible for promulgating such policy, procedure, regulation or protocol.

**ANSWER:**

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

6

**INTERROGATORY NO. 21**    Please identify any policies, rules, procedures, regulations, standards or protocols of the Defendant relating to employee performance reviews, evaluations and/or appraisals and identify the reason for any such policy, rule, procedure, regulation or protocol and the individual(s) responsible for promulgating such policy, procedure, regulation or protocol.

**ANSWER:**

**INTERROGATORY NO. 22**    Please state whether any complaints were filed against Bus Driver Ferguson in the five (5) years preceding the incident and, if so, describe the nature of those complaints. In doing so, please describe any investigations conducted by WMATA regarding any complaints filed against Bus Driver Ferguson in the five (5) years preceding the incident and please describe any disciplinary action taken by you.

**ANSWER:**

**INTERROGATORY NO. 23**    Please identify all WMATA drivers that have been cited for infractions for moving violations over the past three years and provide the number of infractions and the nature of the infractions.

**ANSWER:**

**INTERROGATORY NO. 24**    Was the bus operator using her cell phone or other PDA at or near the time of the accident? Regardless of the answer, please provide Mrs. Ferguson's cell phone number and the cellular provider at the time.

**ANSWER:**

**INTERROGATORY NO. 25**    Please identify all lawsuits currently pending against WMATA where a WMATA bus operator is alleged to have caused a fatality or other permanent injury. Provide the case name, number, court and attorneys involved.

**ANSWER:**

**INTERROGATORY NO. 26**    Are you aware of any prior accidents/incidents at the intersection of Jennifer Street N.W. and Wisconsin Avenue, N.W. involving a WMATA employee?

**ANSWER**

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

Respectfully submitted,

BRUCE J. KLORES & ASSOCIATES, P.C.

By _____

Bruce J. Klores (#358548)
Scott M. Perry (#459841)
1735 20th Street, N.W.
Washington, DC 20009
P: 202-628-8100
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served by mail on the _____ day of July, 2007, on the following counsel:

Gerard Joseph Stief, Esquire
Janice Lynn Cole, Esquire
WMATA
600 5th Street, NW
Washington, DC 20001

David P. Durbin, Esquire
JORDAN COYNE & SAVITS, LLP
1100 Connecticut Avenue NW
Suite 600
Washington, DC 20036
(202)496-2804

_____
Scott M. Perry

K:1845/Rogs.WMATA

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

8

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT R. FENICHEL, M.D. )<br>Individually, and as Personal )<br>Representative of the )<br>Estate and Next of Kin of )<br>EMILY S. FENICHEL, Deceased, )<br>)<br>       Plaintiff, )<br>)<br>v. )<br>)<br>WASHINGTON METROPOLITAN )<br>AREA TRANSIT AUTHORITY, et al. )<br>)<br>      Defendants. )<br>_____ ) | Case No. **1:07-cv-00768-JR** |

## PLAINTIFF'S FIRST REQUEST FOR THE PRODUCTION
## OF DOCUMENTS TO DEFENDANT WMATA

Plaintiffs, pursuant to F.R.Civ P. 34, by and through undersigned counsel, request that

Defendant Washington Metropolitan Area Transit Authority (WMATA) timely respond to the

following requests for documents, and that it produce and permit Plaintiffs to inspect, copy and

photograph all documents and things in its possession, custody or control as described below or,

in the alternative, produce all documents and things requested at 1735 20th Street, N.W.,

Washington, D.C. 20009.

## INSTRUCTIONS

    A.    The term "document" has the meaning described in Fed.R. Civ. 34 and includes,
but is not limited to, all writings and/or other tangible or electronic records, including but not
limited to any written, printed, typed, recorded, filmed, punched, transcribed or taped records
and other graphic matter of any kind or nature held or produced or reproduced, whether sent or
received, including the original, draft, copies and non-identical copies bearing notation or marks
not found on the original, which are in your custody, possession and/or control or to which you
otherwise have access. Examples of these items include, but are not limited to, all records,
drawings, medical reports, charts, correspondence, minutes, inventory records, payroll records,

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

corporate records, bank records, accounting records, logs, work reports, files, hearing or trial transcripts, depositions, calculations, memoranda, reports, financial statements, telegrams, cable, telex messages, tabulations, studies, analyses, evaluations, projections, work appointment books, diaries, lists, comparisons, questionnaires, surveys, graphs, books, pamphlets, booklets, articles, magazines, newspapers, microfilm, microfiche, photographs, tapes or other recordings, punched cards, magnetic tapes, discs, data sales, drums, printouts, computer-generated reports and printouts, other data compilations from which information can be obtained and any other documents, as defined under the Federal Rules of Civil Procedure.

B.    As used herein, the word "document" includes all copies unless such copies (including any notations and marks thereon) are exact duplicates of documents that are produced.

C.    As used herein, the words "you" or "your" mean defendant WMATA, and any of your agencies, divisions, departments, agents, employees, representatives, attorneys, and/or any person acting for or on your behalf.

D.    This request is directed at all documents within your possession, custody or control, and also includes documents in the possession, custody or control of agents, persons or entities in privity with you, including past or present attorneys.

E.    As used herein, the term "relating to" means containing, recording, discussing, mentioning, noting, summarizing, referring to, commenting upon, describing, digesting, reporting, listing, analyzing or studying the subject matter identified in the request.

F.    To the extent a privilege is claimed with respect to any document covered by this request for production of documents, you are requested to state with respect to such document the following:

    i.      the basis for the claim of privilege;
    ii.     the author of the document;
    iii.    to whom the document is addressed;
    iii.    the date on which the document was prepared;
    iv.     the title or heading of the document;
    v.      the type of document (e.g., handwritten note, memorandum, tape recording, journal, desk calendar, book of accounts, etc.);
    vi.     any other information that might be necessary to describe such a document sufficiently for designation thereof; and
    vii.    the document's present location and custodian.

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

G.    These requests shall be deemed to be continuing in nature.  You are therefore required to produce additional documents if you obtain or discover additional responsive documents prior to trial.

H.    When producing documents, you should organize and label them where appropriate to correspond to the numbered categories in this request.

2

## REQUESTS

**REQUEST NO.1**     All WMATA Standard Operating Procedures that relate to, in any way whatsoever, the facts and circumstances of this accident, including, but not limited to, interaction with pedestrian.

**RESPONSE:**


**REQUEST NO. 2**     Each document subpoenaed by you in this case.

**RESPONSE:**


**REQUEST NO. 3**     Each subpoena issued by you in this case.

**RESPONSE:**


**REQUEST NO. 4**     Any and all documents of any nature, including invoices, checks, correspondence, reports, or documents of any type which pertain to medical record reviews and/or peer reviews conducted by the Defendant WMATA or at the request of the Defendant WMATA with respect to the medical records of Emily Fenichel.

**RESPONSE:**


**REQUEST NO. 5**     Any and all insurance policies, including umbrella or excess policies, which may or do provide WMATA with insurance coverage for the allegations set forth in this lawsuit.

**RESPONSE:**


**REQUEST NO. 6**     A copy of all reports made in the ordinary course of business including, but not limited to unredacted WMATA Motor Vehicle Accident Report, Street Supervisor Accident Report(s), and the like.

**RESPONSE:**


**REQUEST NO. 7**     Original color photographs of the location of the incident, the parties to the lawsuit and/or the vehicle(s) involved in the incident.

**RESPONSE:**

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3088
www.klores.com

**REQUEST NO. 8**    A copy of any and all statements allegedly made by Emily Fenichel.

**RESPONSE:**
**REQUEST NO. 9**    Any handwritten and/or typed statement made by the WMATA bus operator relating to the incident that is the subject of this lawsuit.

**RESPONSE:**

**REQUEST NO. 10**    A copy of any and all statements of any person claimed to be a witness to all or part of the accident in question.

**RESPONSE:**

**REQUEST NO. 11**    Any and all documents, photographs, claims evaluations, or copies of checks for loss or damage, pertaining to Plaintiffs' claim.

**RESPONSE:**

**REQUEST NO. 12**    Any and all documents of any nature, including repair estimates, photographs, invoices, checks, or other documents of any type which pertain to claims for damage in connection with the incident in question.

**RESPONSE:**

**REQUEST NO. 13**    A copy of any and all photographs, plats, and/or diagrams made concerning the accident in question, including but not limited to the vehicles involved, the persons involved, the persons involved and/or the location involved.

**RESPONSE:**

**REQUEST NO. 14**    A copy of any and all reports, films, audiotapes, videotapes, photography, and/or tracings relating to this accident including the results of any police investigation obtained by WMATA.

**RESPONSE:**

**REQUEST NO. 15**    A copy of the police report relating to this accident and all accompanying materials.

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

4

RESPONSE:


**REQUEST NO. 16**    Any videotapes or depictions of the Plaintiff or the accident that are in your possession or that are attainable by you, including any surveillance videotapes.

RESPONSE:


**REQUEST NO. 17**    Copies of property damage estimates.

RESPONSE:


**REQUEST NO. 18**    Photocopy of front and back of the WMATA bus operator's driver's license and/or CDL License and a copy of the operators medical certificate in effect at the time.

RESPONSE:


**REQUEST NO. 19**    Copy of any other document that you intend to refer to at trial. Compliance herewith can be accomplished by mailing copies of all documents to Plaintiff's counsel.

RESPONSE:


**REQUEST NO. 20**    All correspondence between WMATA and/or its attorneys and any expert that you intend to call as a witness at trial.

RESPONSE:


**REQUEST NO. 21**    All reports from any expert that you intend to call as a witness at trial.

RESPONSE:

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3088
www.klores.com

**REQUEST NO. 22**    All documents consulted and/or relied upon in responding to Plaintiffs' First Set of Interrogatories.

RESPONSE:

**REQUEST NO. 23**    All exhibits that you intend to introduce at trial.

**RESPONSE:**
    **REQUEST NO. 24**    A complete copy of the file maintained by WMATA pertaining to the claims made by the Plaintiff and/or the incident in question.

**RESPONSE:**

    **REQUEST NO. 25**    Any and all documents and records pertaining to the purchase of the vehicle involved in the incident.

**RESPONSE:**

    **REQUEST NO. 26**    Any and all documents pertaining to the repair and/or maintenance of the vehicle that was involved in the incident for the three (3) years prior to and including the date of the incident.

**RESPONSE:**

    **REQUEST NO. 27**    Any and all documents or materials of any nature pertaining to any and all repairs and/or maintenance performed on the subject vehicle at any time between the incident and the present.

**RESPONSE:**

    **REQUEST NO. 28**    Any and all safety inspections that were performed on the vehicle in question during the six (6) months prior to and including the incident.

**RESPONSE:**

    **REQUEST NO. 29**    Any and all "line sheets" or similar documents maintained on the vehicle in question.

**RESPONSE:**

    **REQUEST NO. 30**    The complete personnel file of the Bus Driver Michelle Ferguson. This includes all employment applications, disciplinary actions taken while a WMATA employee, performance reviews, test scores, photographs and any other materials of any nature maintained in this individual's personnel file and/or which otherwise pertain in any manner to this individual.

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

6

RESPONSE:

**REQUEST NO. 31**   Any and all documents of any nature that contain facts upon which WMATA intends to rely to support any of the defenses set forth in this defendant's answer to Plaintiff's Complaint.

RESPONSE:

**REQUEST NO. 32**   Any training manuals, policies, procedures, guidelines or other similar materials which were provided to Bus Driver Michelle Ferguson at the time she was hired to work for the WMATA.

RESPONSE:

**REQUEST NO. 33**   Any training materials, guidelines, rules, regulations or similar materials which were designed to pertain to employees such as Mrs. Ferguson who were employed at the WMATA.

RESPONSE:

**REQUEST NO. 34**   Any statistics maintained by WMATA that details or summarizes motor vehicle accidents or traffic violations by all WMATA drivers in the last five years.

RESPONSE:

**REQUEST NO. 35**   Copies of any materials given to WMATA drivers in the last five yeas regarding driver safety.

RESPONSE:

Respectfully submitted,

BRUCE J. KLORES & ASSOCIATES, P.C.

By_____

Bruce J. Klores (358548)
Scott M. Perry (#459841)
1735 20th Street, N.W.
Washington, DC 20009
P: 202-628-8100
Attorneys for Plaintiffs

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served by mail on the /3th day of July 2007, on the following counsel:

Gerard Joseph Stief, Esquire
Janice Lynn Cole, Esquire
WMATA
600 5th Street, NW
Washington, DC 20001

David P. Durbin, Esquire
JORDAN COYNE & SAVITS, LLP
1100 Connecticut Avenue NW
Suite 600
Washington, DC 20036
(202)496-2804

_____
Scott M. Perry

K:1845/RPDs.WMATA

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

# EXHIBIT 6

# WMATA's Answer To First Set of Interrogatories

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
AUG 2 4 2007
BY: ------------------

|  |  |  |
|---|---|---|
| ROBERT R. FENICHEL, M.D., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: 1:07-cv-00768-JR |
| | : | |
| WASHINGTON METROPOLITAN | : | |
| AREA TRANSIT AUTHORITY, et al. | : | |
| | : | |
| | : | |
| Defendants. | : | |

## DEFENDANT WMATA'S ANSWERS TO
## PLAINTIFF ROBERT FENICHEL'S INTERROGATORIES

Defendant Washington Metropolitan Area Transit Authority ("WMATA") submits its Answers to Plaintiff Fenichel's Interrogatories as follows:

### PRELIMINARY STATEMENT

WMATA reserves the right to rely on any facts, documents, or other evidence which may develop or come to WMATA's attention. WMATA's Answers are set forth herein without prejudice to WMATA's right to assert additional objections or supplemental answers should WMATA discover additional information or grounds for objections. WMATA reserves the right to supplement or amend these answers at any time prior to trial of this action.

### INTERROGATORIES

1. Identify every person who was consulted or who otherwise participated in preparing the answers to these Interrogatories, identify all documents either consulted in answering these Interrogatories or otherwise relating to the information requested in these Interrogatories, and identify each person who presently has possession,

custody or control of each document.

**ANSWER:**

These Interrogatories are being answered by Pamela C. Wilkins, Acting Director Office of Risk Management and Designated WMATA Representative, located at 600 Fifth Street, NW, Washington, DC 20001. The Answers are not based on Ms. Wilkins' personal knowledge, as he is answering solely as WMATA's designated representative. WMATA objects to the extent this interrogatory seeks additional information on grounds of attorney-client privilege, attorney work product of counsel or the claims office, or WMATA's self-evaluative privilege. Without waiving these objections, <u>see</u> the accompanying documents.

2. If you contend that the Plaintiff, through any act or omission, either caused or contributed to the cause of the incident, please identify all facts upon which you intend to rely to support this contention and provide the names, last known address and telephone numbers of all individuals who have any information that supports or contradicts you contention in this respect. Please also provide any statements made by Plaintiff.

**ANSWER:**

Decedent Emily Fenichel, caused or contributed to this incident by entering the crosswalk against a flashing "don't walk" signal; walking into the path of the bus that was so close it was impossible for the driver to yield, and otherwise not keeping an appropriate lookout for her own safety.

3. Please state the name, business and residence address, business and

2

residence telephone number, and current occupation of each and every individual,

known to you, who has any knowledge of the incident or who has taken any

photographs or has actual or constructive possession of any photographs of the scene

of the Incident.  (Please note the term photograph includes still photographs, video

recordings or motion pictures of any kind.)

ANSWER:

The following persons may have been witnesses to the incident or its immediate

aftermath:

(1)  Michelle N. Ferguson

(2)  MPD Detective Michael Miller (Major Crash Unit)

(3)  MPD Officer Sandra Connor, Badge #3700

(4)  MPD Officer William Belton, Badge #4272

(5)  Mr. Mathew Clark, 2712 Wisconsin Ave., NW #406, Washington, D.C.

(6)  Mr. Chris McGuire, 4313 Yuma Street, NW, Washington, D.C.

(7)  Mr. Luis Urbina, 4001 Nebraska Ave., NW, Washington, D.C.

(8)  Jackie Benson, WRC News Reporter

WMATA Street Supervisors Norman Williams and Paul Ways took photographs

of the scene on the date of the accident. The photographs are currently in the

possession of the undersigned counsel for WMATA.  Jim Redding and Darryl Suggs

from WMATA's Office of Safety were also at the scene.  To WMATA's knowledge,

Officers from Metropolitan Police Department also took photographs of the scene of

the accident.  A Mr. Kelley and Transit Police Officer Shukri Pettigrue were also at the

3

scene after the incident occurred. See also the persons listed on the accompanying Transit Police Event Report. WMATA objects to the extent this Interrogatory seeks additional information on grounds of overbreadth.

4. If you have possession, custody, control, access to or knowledge of the existence of any maps, plats, drawings, diagrams, surveys, measurements, reports of statements describing, depicting or concerning the Incident, then as to each such item please state the nature or character of the item, its present location and the name, address and phone number of the individual having possession, control, access to or knowledge of the described item.

ANSWER:

See the accompanying documents. WMATA objects to the extent this Interrogatory, or any other discovery request, seeks any documents or any other material protected by the attorney-client privilege, work product of counsel or the claims office, or WMATA's self-evaluative privilege.

5. Give the names and addresses of all persons known to you or your attorney who were eyewitnesses to the accident complained of and state the location of each eyewitness at the time of the accident, so far as is known to you or your attorney.

ANSWER:

Upon information and belief, Ms. Ferguson, Officer Connor, Officer Belton, Mr. Clark, Mr. McGuire, and Mr. Urbina may have been eyewitnesses to the incident itself. See also Answer to No. 3, supra.

6. Give a complete statement of the facts as to how the bus operator contends

4

that the occurrence took place including the exact location of the occurrence and the direction in which all operators were proceeding.

**ANSWER:**

**Metrobus Operator Michelle Ferguson exited WMATA garage onto 44th Street and made a right turn on Jenifer Street heading eastbound. As she entered the intersection of Wisconsin Avenue from Jenifer Street, she had a green light. Decedent Emily Fenichel, had a "don't walk" signal with only several seconds left at the time she left the curb. Despite making appropriate observations, the bus operator could not see the decedent prior to the accident because of the particular interplay of the interior of the bus, the height and location of Decedent at particular times relevant to the position of the Ms. Ferguson. (See report of Michael Miller, Detective, Major Crash Unit, attached hereto). The Metrobus was completing a right turn onto southbound Wisconsin Avenue when the accident occurred.**

7. If a report with respect to the occurrence was made in the ordinary course of business, including investigative reports, state the date of the report and identify the person who made the report and the report's custodian.

**ANSWER:**

**See the accompanying reports (redacted where indicated). WMATA does not concede that these reports were made in the ordinary course of business.**

8. State whether the bus operator or any WMATA employees gave any written statements about the happening of the accident and if so, state to whom such statement was given and the date; unless you claim privilege, attach a copy of such

statement to your answers.

ANSWER:

Yes. See the accompanying documents (redacted where indicated) and Answer No. 4, supra.

9. Identify all persons who have given statements that relate in any way to this case.

ANSWER:

See the accompanying reports and Answer No. 4, supra.

10. Identify the bus number and route for the WMATA bus that is the subject of this lawsuit as well as the bus manufacturer, vehicle identification number, year of manufacturer and size of bus. Please include the last date and time the bus underwent a safety inspection and describe what that inspection consisted of.

ANSWER:

Bus # 3916, 1997 Orion Model 05.501, Tag # B37901. The Metrobus was not operating on any revenue routes. See the accompanying Vehicle Maintenance Record.

11. If the bus operator consumed any alcoholic beverage, drugs (prescriptive or otherwise), and/or medication within the 24 hour period immediately before the collision, state the nature thereof, the purpose therefore, the name and address of the doctor who prescribed the medication, if any, the dosage prescribed, the amount taken or which was to be taken within such period. As to alcohol, state the amount consumed, and identify all persons present during said consumption.

ANSWER:

6

**WMATA is unaware of any such usage.**

12. If the bus operator was charged with any offenses or was disciplined/terminated by WMATA arising out of the occurrence, state the nature of the charges, the court and case number, and the disposition of the charges/discipline.

**ANSWER:**

**The bus operator was not charged with any offense. WMATA objects based on its self-evaluative privilege and relevancy to the extent this interrogatory, or any other discovery request, seeks information related to WMATA's internal disciplinary process.**

13. State whether at any time during the fifteen year period preceding the date of your answers to these interrogatories, the bus operator has been convicted of any crime, including minor traffic offenses. If so, for each conviction identify the court in the which the bus operator was convicted and state the amount of any fine and the date and length of any incarceration imposed.

**ANSWER:**

**WMATA is unaware of any such convictions.**

14. If you are covered by any liability insurance policy which may, or does, indemnify Defendant for any of the allegations contained in the Complaint in this action, for each such insurance policy, including any and all excess or umbrella liability policies, please provide the following information.

a.    the name of each insurance company providing such policies;

b.    the effective date of each policy; and,

7

c.    the policy limits or amount of each such policy.

**ANSWER:**

**WMATA is self-insured for the purposes of this litigation.**

15. Please state the date upon which you hired Bus Driver Ferguson and describe the process through which she was hired, including all training provided by WMATA and all courses taken by Ferguson.

**ANSWER:**

**Ms. Ferguson was hired on September 6, 2002 after an application and interview process. She successfully completed WMATA orientation process and six weeks of training. WMATA objects to the extent this Interrogatory seeks additional information because it is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. WMATA enjoys immunity from suit for its governmental/discretionary decisions related to all employment related decisions, such as hiring, training, and supervision. See Beebe v. WMATA, 129 F.3d 1283 (D.C. Cir. 1997); Burkhart v. WMATA, 112 F.3d 1207, 1215 (D.C. Cir. 1997); Dove v. WMATA, 402 F. Supp. 2d 91 (D.D.C. 2005).**

17. Identify each expert witness that you will call as a witness in this litigation. State in complete detail the substance of what each expert will testify to including each and every opinion each expert will give; and the facts underlying each such opinion, and identify all documents that your expert will rely upon.

**ANSWER:**

**WMATA has not yet determined what experts it will call in this litigation, but**

will identify such experts in accordance with the Court's scheduling order.

18. Describe in detail any property damage to the WMATA vehicle as a result of this incident.

**ANSWER:**

**None.**

19. If at any time since the date of the Plaintiff's injuries you ever requested or conducted any investigation into the bus accident referred to in the Complaint, please state the name and address of all such investigators you have contacted, the dates of such investigations or investigators.

**ANSWER:**

See the accompanying documents and Answer No. 4, supra.

20. Please identify any policies, rules, procedures, regulations or protocols of the Defendant relating to the screening and hiring of new employees and identify the reason for any such policy, rule, procedure, regulation or protocol and the individual(s) responsible for promulgating such policy, procedure, regulation or protocol.

**ANSWER:**

**WMATA objects to this Interrogatory because it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. WMATA enjoys immunity for claims of negligent hiring, training, supervision. See Beebe; Burkhart; and Dove, supra.**

20. Please identify  policies, rules, procedures, regulations or protocols of the

Defendant relating to the training of new employees and any ongoing or in-service training for employees and identify the reason for any such policy, rule procedure, regulation or protocol and the individual(s) responsible for promulgating such policy, procedure, regulation or protocol.

ANSWER:

See the accompanying documents. WMATA objects to the extent this Interrogatory seeks additional information because it is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. WMATA enjoys immunity for claims of negligent hiring, training, and supervision. See, Beebe; Burkhart; and Dove, supra.

21. Please identify any policies, rules, procedures, regulations, standards or protocols of the Defendant relating to employee performance reviews, evaluations and/or appraisals and identify the reason for any such policy, rule, procedure, regulation or protocol and the individuals(s) responsible for promulgating such policy, procedure, regulation or protocol.

ANSWER:

WMATA objects to the extent this Interrogatory seeks additional information because it is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. WMATA enjoys immunity for claims of negligent hiring, training, and supervision . See Beebe; Burkhart; and Dove, supra. Subject to and without waiving the objection, see also the accompanying documents.

22. Please state whether any complaints were filed against Bus Driver Ferguson

10

in the five (5) years preceding the incident and, if so, describe the nature of those complaints. In doing so, please describe any investigations conducted by WMATA regarding any complaints filed against Bus Driver Ferguson in the five (5) years preceding the incident and please describe any disciplinary action taken by you.

ANSWER:    WMATA objects to the extent this Interrogatory seeks additional information because it is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. WMATA enjoys immunity for claims of negligent hiring, training, and supervision. See Beebe; Burkhart; and Dove, supra.

23. Please identify all WMATA drivers that have been cited for infractions for moving violations over the past three years and provide the number of infractions and the nature of the infractions.

ANSWER:

WMATA objects to the extent this Interrogatory seeks additional information that is irrelevant, immaterial, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

24. Was the bus operator using her cell phone or other PDA at or near the time of the accident? Regardless of the answer, please provide Mrs. Ferguson's cell phone number and the cellular provider at the time.

ANSWER:

To WMATA's knowledge, no. WMATA is not in control or possession of Mrs.

11

Ferguson's cell phone number and/or cellular provider at the time of the accident.

25. Please identify all lawsuits currently pending against WMATA where a WMATA bus operator is alleged to have caused a fatality or other permanent injury. Provide the case name, number, court and attorneys involved.

**ANSWER:**

WMATA objects to the extent this Interrogatory seeks additional information that is irrelevant, immaterial, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

26. Are you aware of any prior accidents/incidents at the intersection of Jennifer Street, N.W. and Wisconsin Avenue, N.W. involving a WMATA employee?

**ANSWER:**

WMATA objects to the extent this Interrogatory seeks additional information that is irrelevant, immaterial, not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this request is overly broad, unduly burdensome, and not reasonably limited in time or scope.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING ANSWERS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. EXECUTED ON AUGUST 24ᵗʰ, 2007.**

*Pamela C. Wilkins*

Pamela C. Wilkins, Acting Director, Office of Risk Management,
Third Party Liability and
Designated WMATA Representative
600 Fifth Street, N.W.
Washington, DC 20001

12

Gerard J. Stief #925933
Associate General Counsel
(202) 962-1463

Janice L. Cole #440351
Associate General Counsel
(202) 962-2548
600 Fifth Street, N.W.
Washington, D.C. 20001
Attorneys for Defendant WMATA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24 day of August 2007, a copy of the

foregoing **WMATA's Answers to Interrogatories** was mailed to:

Bruce J. Klores #358548
Scott M. Perry #459841
Bruce J. Klores & Associates
1735 20th Street, NW
Washington, DC 20009
202-628-8100
Attorneys for Plaintiffs

David P. Durbin #928655
1100 Connecticut Avenue, NW
Suite 600
Washington, DC 20036
202-496-2804
Attorney for Defendant DaimlerChrysler
Commercial Buses North America, Inc.
f/k/a Orion Bus Industries, Inc.

William J. Cremer, Esq.
Bradley M. Burd, Esq.
Cremer, Kopon, Shaughnessy & Spina, LLC
Suite 3300
180 North LaSalle Street
Chicago, IL 60601

13

312-276-3818
Attorneys for Defendant DaimlerChrysler
Commercial Buses North America, Inc.
f/k/a Orion Bus Industries, Inc.

_____
Janice L. Cole #440351

# EXHIBIT 7

# Plaintiff's Subpoena to DOES Re: Ms. Ferguson's Unemployment Claim

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

V.

Fenichel v. WMATA, et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    1:07-cv-00768-JR

TO:  Eugene Irvin, Esquire
D.C. Unemployment Compensation Program
64 New York Avenue NE, Suite 3000, Room 3133
Washington, DC 20002

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
The entire unemployment file for Michelle Ferguson's Unemployment Compensation claim, which occurred after she was terminated from the Washington Metropolitan Area Transit Authority in June of 2006.  The file should include, but not be limited to, all documents that were filed by any party and the written decisions granting/denying benifits.

| PLACE    Bruce J. Klores & Associates<br>1735 20th Street, N.W., Washington, DC 20009 | DATE AND TIME<br>9/24/2007 10:30 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)   *Attorney for Plaintiff* | DATE<br>8/24/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Scott M. Perry, Esquire
Bruce J. Klores & Associates, 1735 20th Street, N.W., Washington, DC 20009 -- (202) 628-8100

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | 8/24/07 | D.C. Unemployment Compensation Program 64 NY Ave, N.E., Suite 3000, Room 8133 Washington, DC 20002 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Eugene Irvin, Esq. | Hand |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Lawrence L. Mattier | Paralegal |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on   8/24/07
_____
DATE

_____
SIGNATURE OF SERVER

1735 20th St. NW
Washington, DC 20009
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
  (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
  (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
  (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
  (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
    (i) fails to allow reasonable time for compliance;
    (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
    (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) If a subpoena
    (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
    (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
    (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
  (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
  (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
  (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
  (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
  (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
  (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT 8

# Plaintiff's Letter

BRUCE J. KLORES & ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

BRUCE J. KLORES
(D.C., MD., VA.)

SCOTT M. PERRY
(D.C., MD.)

THOMAS W. MITCHELL
(D.C., MD., VA.)

ANNE D. PILE, RN, CCRN, LNC
(NURSE CONSULTANT)

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
WWW.KLORES.COM

VIRGINIA OFFICE
——
1700 NORTH MOORE STREET
SUITE 1010
ARLINGTON, VIRGINIA 22209
(703) 519-0789

September 20, 2007

**SENT VIA FACSIMILE AND FIRST CLASS MAIL**
**202-962-2550**
Gerard Joseph Stief, Esquire
Janice Lynn Cole, Esquire
WMATA
600 5th Street, NW
Washington, DC 20001

Re:    **Fenichel v. WMATA, et al.**

Dear Counsel:

Prior to filing the Rule 11 motion for which I have put you on notice, I am making this good faith attempt at resolving the issues.

Preliminarily I note that while you have admitted that Ms. Ferguson was acting in the course and scope of her employment with WMATA (see paragraph 4 of plaintiff's Amended Complaint), you deny that WMATA is vicariously liable for all of her tortious acts or omissions in causing Mrs. Fenichel's death. We agreed to dismiss Ms. Ferguson based upon the stipulation that was filed with the Court stating "WMATA acknowledges that Ms. Ferguson was operating the Metrobus in issue within the scope of her employment with WMATA at the time of the accident in issue." What is the basis for the denial that you are not fully vicariously liable? (See also your denial of Paragraph 17 of plaintiff's Amended Complaint on this issue.)

You have also denied the duty of care owed in Paragraph 21. What is the basis of that denial, even if the averment seeks a legal conclusion?

With respect to the issue at hand, you have denied every allegation in the plaintiff's First Amended Complaint of negligence, including failing to pay full time and attention; failing to keep a proper lookout; failing to maintain proper control of the WMATA bus; failing to yield right of way to a pedestrian; failing to operate the bus safely; failing to timely apply the brakes; failure to operate the bus at a proper speed to avoid collision; failure to sound the horn; failure to adhere to the applicable motor vehicles laws and regulations of the District of Columbia; and

BRUCE J. KLORES & ASSOCIATES

Gerard Joseph Stief, Esquire
Janice Lynn Cole, Esquire
September 20, 2007
Page Two

failing to exercise due care.  You have also raised as an affirmative defense contributory negligence and/or assumption of the risk (see Affirmative Defense Five in defendant WMATA's answer to plaintiff's First Amended Complaint).

In the underlying Unemployment Compensation case however, WMATA took the exact opposite position.  The record in that case indicates you terminated Ms. Ferguson for causing a "preventable fatality."  At the subsequent evidentiary hearing where both WMATA and Ms. Ferguson were represented by counsel, the Administrative Law Judge issued Findings of Fact as to the cause of the accident.  These Findings of Fact were of course the findings that WMATA proposed in support of its denial of unemployment compensation.  The Administrative Law Judge in that case found that "there is sufficient evidence to support a determination that claimant's discharge from employment was the result of an act which disregards standards of behavior which an employer has a right to expect of its employee."  Although Ms. Ferguson argued that this was not a preventable accident, the Administrative Law Judge found that argument unavailing.  The ALJ found *"claimant should have seen and avoided hitting the pedestrian within the crosswalk and within the light."*  The Court went on to say *"had claimant been following the standard operating procedures with which she was trained and following the rules of careful driving, claimant should have seen the pedestrian well before the pedestrian left the curb and entered the crosswalk."*  The Court finally noted *"that the claimant's failure to minimize the effect of a blind spot and ultimately hitting the pedestrian is disregarding a standard of behavior which an employer has a right to expect of its employee."*

The position taken by WMATA in the Unemployment Compensation case mandates that it abandon the affirmative defense of contributory negligence and admit liability, reserving only the question of damages for the finder of fact in this case.

Please accept this letter as furtherance of my discussion on Rule 11, and let me hear your response by the close of business, Monday, September 24, 2007.

Very truly yours,

BRUCE J. KLORES & ASSOCIATES, P.C.

Bruce J. Klores

cc: Scott M. Perry, Esquire
1845\l-wmata.rule11

# EXHIBIT 9

# WMATA's Letter



**By Telefax (202-628-1240) and First Class Mail**

RECEIVED
SEP 2 6 2007
BY:_____

September 24, 2007

Bruce J. Klores, Esq.
Scott M. Perry, Esq.
1735 20th Street, NW
Washington, DC 20009

Re: **Fenichel v. WMATA**

Dear Counsel:

Reference is made to your September 19 and 20, 2007 letters. The "accusations" which you make related to WMATA's position in Ms. Ferguson's unemployment compensation claim are unfounded, as that proceeding, although stemming from the tragic June 8, 2006 accident involving Mrs. Fenichel, involved different issues and standards.

As is apparent from the limited discovery conducted to date, there is strong evidence that WMATA should prevail on the issue of liability. The D.C. Metropolitan Police Major Crash Unit investigative report, which we provided to you in discovery, concluded that "the pedestrian entered the crosswalk during the 'don't walk' stage of the light timing process." For you to infer that WMATA is somehow not acting in good faith by defending this case under the circumstances, before the first deposition has even been taken, is disingenuous at best.

You mention Rule 11 in your letter. Perhaps you should pay attention to that rule's Advisory Committee Notes for Subdivisions (b) and (c), which state, in relevant part:

> [Rule 11 motions] should not be employed as a discovery devise or to test the legal sufficiency or efficiency of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate and adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine.

**Washington
Metropolitan Area
Transit Authority**

600 Fifth Street, NW
Washington, DC 20001
202/962-1234

By Metrorail:
Judiciary Square—Red Line
Gallery Place-Chinatown—
Red, Green and
Yellow Lines
By Metrobus:
Routes D1, D3, D6, P6,
70, 71, 80, X2

*A District of Columbia,
Maryland and Virginia
Transit Partnership*

Page 2
Bruce J. Klores, Esq.
September 24, 2007

With respect to your September 20, 2007 letter, you have misconstrued what we stated in WMATA's Answer to your Amended Complaint.  We have been consistent in our position that Ms. Ferguson was acting within the scope of her employment at all relevant times.  We denied several allegations because of your explicit and/or implicit allegations of negligence.

Please feel free to call Janice L. Cole (202-962-2543) or myself if you have any questions.

Sincerely,

Gerard J. Stief
Associate General Counsel
202-962-1463

cc:   Janice L. Cole