## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT R. FENICHEL, M.D.** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **Case No.: 1:07-cv-00768-JR** |
| : | |
| **WASHINGTON METROPOLITAN** : | |
| **AREA TRANSIT AUTHORITY** : | |
| : | |
| **Defendant.** : | |
| : | |

## DEFENDANT WMATA'S OPPOSITION
## TO PLAINTIFF'S MOTION FOR PARTIAL
## <u>SUMMARY JUDGMENT AS TO WMATA</u>

Defendant Washington Metropolitan Area Transit Authority ("WMATA") hereby submits its Opposition to Plaintiff's Motion for Partial Summary Judgment as to WMATA. Specifically, Plaintiff argues that the position taken by WMATA in an unemployment compensation hearing regarding the bus operator should collaterally or judicially estop WMATA from contesting liability in the instant case. For the following reasons, Plaintiff's arguments are without merit and the instant motion should be denied:

(1) Plaintiff has violated D.C. Code § 51-113 by utilizing information improperly obtained from an unemployment compensation hearing.

(2) Neither collateral nor judicial estoppel apply to bar claims by governmental entities. Moreover, the elements of collateral and judicial estoppel have not otherwise been met in this situation. Furthermore, unemployment compensation proceedings

serve a totally different purpose, with different burdens of proof, so that positions taken therein cannot form the basis for either collateral or judicial estoppel.

(3)   Except for a fleeting reference on another point in footnote 9 at page 20 of Plaintiff's Memorandum, Plaintiff has neglected to inform the Court of the conclusions of the D.C. Metropolitan Police Major Crash Unit investigative report (Excerpt attached as Exhibit A) which recommends that the bus operator should not be prosecuted because of the fact, inter alia, that the decedent first "entered the crosswalk during the 'don't walk' stage of the light timing sequence."  This report provides cogent evidence that the sole, or alternatively contributory, proximate cause of this tragic accident was the decedent's own actions.

### Factual Background

This case presents a wrongful death and survival claim brought by the husband of Emily Fenichel.  Mrs. Fenichel sustained fatal injuries at approximately 11:00 p.m. on June 8, 2006 while attempting to cross Wisconsin Avenue, N.W. at Jennifer Street.  She left the curb during the "don't walk" stage of the pedestrian traffic signal and walked into the path of a Metrobus which was attempting to make a right turn from Jennifer Street onto Wisconsin Avenue.  She was pronounced dead at the Washington Hospital Center at 11:50 p.m.

WMATA elected to terminate the bus operator involved in this accident.[1]    The

---

[1]For the reasons set forth in Section I, infra, this information should not be before the Court under § 51-113(f).  WMATA only provides a basic outline of the facts concerning the unemployment proceedings so that the Court has the proper framework in which to rule.

2

bus operator filed for unemployment compensation benefits. After the Claims Examiner found the bus operator ineligible for unemployment compensation benefits, the bus operator filed an administrative appeal. Following a hearing, the Office of Administrative Hearings found that the bus operator remained ineligible for unemployment compensation benefits. The bus operator has appealed this decision to the D.C. Court of Appeals, and the appeal is currently pending there.

## ARGUMENT

I.    **Plaintiff Violated D.C. Code § 51-113 By Utilizing Improperly Obtained Information From An Unemployment Compensation Hearing**.

Plaintiff's Motion is premised on two decisions by the District of Columbia's Department of Employment Services ("DOES") related to a claim for unemployment compensation by the bus operator involved in the accident in issue: (1) a February 12, 2007 Determination by the Claims Examiner (Exhibit 1 to Plaintiff's Motion); and (2) an April 6, 2007 Final Order by the Administrative Law Judge on the appeal. (Exhibit 2 to Plaintiff's Motion). Plaintiff admitted at page 4 of his Memorandum that he obtained these two documents by subpoena to DOES.

D.C. Code § 51-113 (2001) deals with the disclosure of information in unemployment compensation proceedings. Section 51-113(f) specifically addresses the confidentiality mandated in these proceedings, providing in relevant part:

> Except as hereinafter otherwise provided, information obtained from any employing unit or individual pursuant to the administration of this subchapter and determinations as to the benefit rights of any individual shall be held confidential and shall not be disclosed or be open to public

3

> inspection in any manner, whether by subpoena or otherwise, revealing the individual's or employing unit's identity. . . .

Thus, § 51-113(f) specifically prohibits disclosure of the identity of both the employer and the employee by subpoena or otherwise.  Here, information specifically identifying both the employer and the employee by name and address was improperly obtained from DOES through subpoena issued by Plaintiff in violation of § 51-113(f). To make matters worse, Plaintiff then spread the improperly released information into the electronic filing system of this Court, making this confidential information available to anyone through the PACER system.

Had Plaintiff and DOES complied with § 51-113(f), there would be absolutely no grounds for Plaintiff's Motion on this basis alone.  Plaintiff cannot be "rewarded" for his complicity in the violation of § 51-113(f) by allowing him to fashion an argument based on information improperly disclosed.  Aside from the direct violation of § 51-113(f), that statute underscores the limited nature of, and confidentiality associated with unemployment compensation hearings, further undermining Plaintiff's claims of estoppel, as discussed below.

## II.   WMATA Is Not Collaterally Estopped From Disputing Liability In This Case.

At pages 8-15 of his Memorandum, Plaintiff argues that WMATA is collaterally estopped from asserting that the bus operator was not negligent.  Specifically, Plaintiff argues at page 8 that "[t]he doctrine of non-mutual offensive collateral estoppel precludes a defendant from re-litigating issues that the defendant has previously

litigated against another plaintiff."

        A.     Non-mutual Offensive Collateral Estoppel Cannot
              Be Used Against Governmental Entities.

In Jack Faucett Assoc., Inc. v. American Tel. and Tel. Co., 744 F.2d 118, 124

(D.C. Cir. 1984), the D.C. Circuit held that the District Court abused its discretion in

allowing the plaintiffs to invoke offensive collateral estoppel, stating:

> Under the doctrine of offensive collateral estoppel or issue
> preclusion, a defendant is precluded from re-litigating
> identical issues that the defendant litigated and lost against
> another plaintiff. . . . The doctrine is detailed, difficult, and
> potentially dangerous.  In Parklane Hosiery Co. v. Shore,
> 439 U.S. 322 (1979), the Supreme Court refused to
> prohibit offensive collateral estoppel altogether, saying
> instead that "the preferable approach . . . is not to preclude
> the use of offensive collateral estoppel, but to grant trial
> courts broad discretion to determine when it should be
> applied."  439 U.S. at 331.  Recently, the Court again
> acknowledged the existence of offensive collateral estoppel,
> at least against non-governmental defendants.  See United
> States v. Mendoza, 464 U.S. 154 (1984) (holding the
> offensive collateral estoppel cannot be used against the
> government).

In Mendoza, an immigration case, the Court held "that the Court of Appeals was

wrong in applying non-mutual collateral estoppel against the Government." 464 U.S.

at 164.

These federal court cases are consistent with District of Columbia Court of

Appeals decisions holding that estoppel generally is not applicable to governmental

entities.  In  Mamo v. District of Columbia, 2007 D.C. App. LEXIS 591, ___ A.2d

____(D.C. Oct. 18, 2007) (slip op. at 18-19), the Court in an eminent domain case

rejected the plaintiff's promissory estoppel argument, stating:

> Nor has Mr. Mamo shown any misconduct on the part of Mr. Teasley or other District government official for the nonpayment of such damages; but, as we have stated, "'the doctrine of equitable estoppel, if applicable against the government at all, may be invoked only where there is a showing of some type of affirmative misconduct by a government agent.'" Leekley v. District of Columbia Dept. of Employment Servs., 726 A.2d 678, 680 (D.C. 1999) (quoting Robinson v. Smith, 683 A.2d 481, 492 (D.C. 1996).

Mamo in turn was cited in Judge Steadman's concurring opinion in Fairman v. District of Columbia, 2007 D.C. App. LEXIS 640, ___ A.2d ____(D.C. Oct. 25, 2007) (slip op. at 17):

> Principles of judicial and equitable estoppel applicable to private parties do not translate readily where the government is a litigant and considerations of protection of the public fisc and the public interest are involved. See e.g., District of Columbia v. Gould, 852 A.2d 50, 56-57 (D.C. 2004); Mamo v. District of Columbia, No. 06-CV-845, slip op. at 17-19 (Oct. 18, 2007).

In Gould, 852 A.2d at 56, the Court of Appeals declined to apply offensive collateral estoppel against the District of Columbia, stating:

> Moreover, "decisions of the Supreme Court . . . make clear that the estoppel can rarely be asserted against the government." . . . This is because "the government is never disabled from protecting the public interest by reason of the past mistakes of its agents." Udall v. Oelschlaeger, 129 U.S. App. D.C. 13, 389 F.2d 974, 977 (D. C. Cir. 1978). . . . "Estoppels against the public are little favored, and they generally cannot be asserted against, and are not applicable to, the government or governmental entities."

In the instant case, it is established law that WMATA is a governmental entity

6

possessing sovereign immunity by virtue of the immunity extended to it by Maryland, Virginia, and Congress on behalf of the District of Columbia. See Watters v. WMATA, 295 F.3d 36, 39-40 (D.C. Cir. 2002); Morris v. WMATA, 781 F.2d 218, 220 (D.C. Cir. 1986). The same principles discussed in the cases cited above demonstrate that neither collateral estoppel, nor any other type of estoppel, can be used against WMATA in this case under either federal or District of Columbia law.

B. Assuming Arguendo That Collateral Estoppel Could Be Applied Against A Governmental Entity Such As WMATA, Plaintiff Has Failed To Demonstrate That It Should Be Applied In This Case.

Even if the Court were to look past the rule that collateral estoppel should not be applied against governmental entities, Plaintiff's motion simply fails to meet the requisite elements for collateral estoppel. In Jack Faucett Assoc., Inc. v. AT&T, 744 F.2d at 125, the D.C. Circuit listed three conditions that must be satisfied before collateral estoppel can apply:

(1) The issue must have been actually litigated, that is contested by the parties and submitted for determination by the court.

(2) The issue must have been "actually and necessarily determined by a court of competent jurisdiction" in the first trial.

(3) Preclusion in the second trial must not work on unfairness.

Failure to meet any of the three elements defeats applicability of collateral estoppel.

In the instant case, Plaintiff fails to meet all three of the elements. With respect to the first element, the issue which Plaintiff claims DOES performed, "determine

liability for the accident," was not "actually litigated." (Plaintiff's Memo at 9). Rather, unemployment compensation proceedings serve a totally different purpose, with different burdens of proof. The issue in unemployment compensation proceedings is whether a former employee is entitled to statutory pay following separation from a job. By contrast, Plaintiff improperly seeks to expand the narrow issue before DOES into a broad finding of breach of duty, proximate cause, and contributory negligence. These basic elements related to a tort claim simply were not resolved in the proceedings before DOES. Morever, should the Court even be inclined to consider the finding made by the Administrative Law Judge, she clearly held the bus driver to a higher standard of care than is applicable under District of Columbia law. Compare quotes from p. 18 of Plaintiff's Motion with D.C. Standardized Civil Jury Instruction 5.04 (2002)("Extreme Caution or Exceptional Skill Not Required")

Additionally, contributory negligence by the decedent is not determinative, or relevant, in an unemployment compensation context. However, it is crucially relevant in a tort claim under District of Columbia law, where contributory negligence is an absolute defense. See District of Columbia v. Brown, 589 A.2d 384, 388 (D.C. 1991); D.C. Standardized Civil Jury Instruction 5.15 (2002)("Contributory Negligence Defined"). Plaintiff incorrectly states in footnote 4 at page 10 of his Memorandum that "the evidence is that Mrs. Fenichel was not contributorily negligent." The attached Major Crash Unit Police Report specifically concluded that the decedent began crossing the street in the dark of night after the "Don't Walk" signal began to

8

flash.  According to DCMR Title 18 § 2302.3, "no pedestrian shall start to cross the roadway in the direction of a "DON'T WALK or "WAIT" signal." Although Plaintiff may have the opportunity through discovery to attempt to undermine these factual conclusions, it is disingenuous for Plaintiff to suggest at this early stage of discovery that decedent  was not contributorily negligent in light of the strong evidence reflected in the police report to the contrary.

Similarly, and for substantially the same reasons, Plaintiff cannot meet the second element.  The essential elements related to a tort claim were not "actually and necessarily determined by a court of competent jurisdiction in the first trial."  Although in certain circumstances collateral estoppel may emanate from an administrative proceeding, the fact that unemployment compensation proceedings do not involve discovery, and only entail a limited, brief hearing, further counsels against application of collateral estoppel.

Plaintiff cannot meet the third element in that the application of collateral estoppel would "work an unfairness" to WMATA and the riding public and taxpayers who support it.  As noted above, the findings of the Major Crash Unit Report provides a strong basis for a jury to find that the bus operator was not negligent or that the decedent's action in walking against the pedestrian traffic control signal was the proximate and arguably sole cause of this tragic accident.  Plaintiff's claim of "unfairness" is without foundation.  Plaintiff is trying to take advantage of a proceeding designed for a limited purpose in an attempt to avoid what is his burden --

proving a case of negligence and defending a strong argument of contributory negligence.

Plaintiff's claim that WMATA somehow failed to disclose the unemployment proceeding in answers to interrogatories is baseless. The Interrogatory (No. 12) he cites makes no reference to requesting information regarding any unemployment proceedings. Plaintiff overlooks the fact that WMATA answered the question in part and raised a proper objection to the extent the question sought information related to WMATA's internal disciplinary process in this case.

Finally, Plaintiff's reliance on Rutter v. Rivera, 74 Fed. Appx. 182 (3d Cir. 2003) is inapposite. Rutter, an unpublished decision, involved a negligence action arising from an automobile collision. In a related proceeding, a workers' compensation judge had denied a claim for benefits. Expert testimony was allowed at the workers' compensation hearing.[2]  The Third Circuit remanded the tort action for a new trial on damages on the grounds that, under Pennsylvania law, the workers' compensation decision precluded relitigation of the wage loss claim, but not other damages recoverable in the tort action. This decision is a far cry and easily distinguishable from the instant case, in which Plaintiff is seeking to apply non-mutual offensive collateral estoppel to the liability aspect of the instant case, where elements crucial to a negligence action, as discussed above, were not present. See also Hutchinson v.

---

[2]By contrast, in the instant case, there is no recourse to discovery at unemployment hearings and thus no recourse to expert testimony such as accident reconstructionists, which the parties anticipate they will provide for the jury.

District of Columbia Office of Employee Appeals, 710 A.2d 227, 236 (D.C. 1998) ("'Issue preclusion does not apply when the issues in the prior and current litigation are not identical, even though similar'").

**III.    WMATA Is Not Judicially Estopped From Disputing Liability.**

At pages 15-21 of his Memorandum, Plaintiff argues that WMATA is judicially estopped from asserting that its bus operator was not negligent.    WMATA incorporates by reference, and will not repeat, the arguments and cases in Section II (A) that estoppel generally cannot be used against governmental entities.  The rationale of these cases applies equally to judicial estoppel.  See Fairman v. District of Columbia, supra, slip op. at 17. (Steadman, J. concurring) ("Principles of judicial and equitable estoppel applicable to private parties do not translate readily where the government is a litigant and consideration of protection of the public fisc and the public interest are involved").  However, the following cases specifically address the nonapplicability of judicial estoppel to governmental entities.

In State of New Hampshire v. State of Maine, 532 U.S. 742 (2001), the Supreme Court did hold that judicial estoppel barred New Hampshire from asserting a completely inconsistent position on the very same point in a river boundary case than the position taken in an earlier Supreme Court case. However, these cases involved a dispute between two states over which the Supreme Court had original jurisdiction.  The Supreme Court specifically noted the normal rule "that 'ordinarily the doctrine of estoppel or that part of it which precludes inconsistent positions in judicial

11

proceedings is not applied to states,'" citing to <u>Illinois ex rel. Gorden v. Campbell</u>, 329 U.S. 362, 369 (1946).  <u>See</u> <u>also</u> <u>Disability Rights Council v. WMATA</u>, 239 F.R.D. 9, 24 (D.D.C. 2006) ("Nor could the putative class members take advantage of judicial estoppel, which is generally unavailable as to government litigants").

Plaintiff recognizes, at page 16 of his Memorandum, case law that the D.C. Circuit does not recognize judicial estoppel.  <u>See</u> <u>United Mine Workers 1974 Pension</u> <u>v. Pittston Co.</u>, 984 F.2d 469, 477 (D.C. Cir. 1993) ("we have not previously embraced the doctrine of judicial estoppel [footnote omitted] in this circuit and we decline to do so in this case").  In footnote 12 of that decision, the D.C. Circuit cited <u>Konstantinidis v. Chen</u>, 626 F.2d 933, 938 (D.C. Cir. 1980) for the proposition that "far from endorsing judicial estoppel as the most appropriate means of effectuating that policy, we expressed a preference for the 'determination of cases on the basis of the true facts as they might be established ultimately.'" 984 F.2d at 477 n.12. Plaintiff argues that the Supreme Court's 2001 decision in <u>State of Maine</u> overrides prior D.C. Circuit decisions such as <u>UMW v. Pittston Co.</u> <u>supra</u>, regarding the recognition of judicial estoppel.  At first blush, Plaintiff's argument has some appeal regarding the existence of  judicial estoppel in federal courts  in general.  However, such reliance by Plaintiff overlooks the fact that <u>State of Maine</u> cites <u>Konstantinidis</u> with approval.  532 U.S. at 750.  Consequently, the D.C. Circuit's statement in <u>Konstantinidis</u> regarding a preference for "determination of cases on the basis of the true facts" is still clearly the law of the Circuit and supports WMATA's position.  In

any event, the issue raised by Plaintiff is a "red herring," because <u>State of Maine</u> and the other decisions cited above strongly support WMATA's argument that, regardless of whether or not judicial estoppel exists in general in this Circuit, it should not be applied against a governmental entity.

The remainder of the points raised by Plaintiff in his section on judicial estoppel cannot overcome this overriding principle, that even if judicial estoppel is otherwise cognizable in this Circuit, it should not be applied to a governmental entity, particularly under the facts of this case. Therefore, WMATA will avoid unnecessary rebuttal of irrelevant points or issues adequately addressed elsewhere in this Opposition. However, a few points must be briefly addressed. <u>First</u>, Plaintiff's reference to settlement discussions at page 20 is clearly improper. <u>See, e.g.</u>, Fed. R. Evid. 408. <u>Second</u>, Plaintiff seems to treat "liability" and "negligence" as co-extensive. As noted above, a negligence case also involves issues of proximate cause and contributory negligence, and is not limited to the Defendant's primary negligence. <u>Third</u>, Plaintiff seeks to have this Court conclusively determine liability at this early stage of discovery, although most eyewitnesses remain to be deposed.

## CONCLUSION

For the foregoing reasons, WMATA respectfully requests that Plaintiff's Motion for Partial Summary Judgment be denied.

Respectfully submitted,

**WASHINGTON METROPOLITAN AREA
    TRANSIT AUTHORITY**

Carol B. O'Keeffe #445277
General Counsel

 /s/ Mark F. Sullivan
Mark F. Sullivan #430876
Deputy General Counsel

 /s/ Gerard J. Stief
Gerard J. Stief  #925933
Associate General Counsel
(202) 962-1463

 /s/ Janice L. Cole
Janice L. Cole  #440351
Associate General Counsel
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-2543
Attorneys for Defendant WMATA

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of November a copy of WMATA's Opposition

to Plaintiff's Motion for Summary Judgment, Statement of Genuine Issues in Dispute,

Order and Exhibit were sent via the Court's electronic filing service to:

Bruce J. Klores                          David P. Durbin
Scott M. Perry                           1100 Connecticut Ave, NW
Bruce J. Klores & Associates             Suite 600
1735 20th Street, NW                    Washington, DC 20036
Washington, DC 20009

 /s/ Janice L. Cole
Janice L. Cole

14

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ROBERT R. FENICHEL, M.D.** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | :   **Case No.: 1:07-cv-00768-JR** |
| | : |
| **WASHINGTON METROPOLITAN** | : |
|   **AREA TRANSIT AUTHORITY** | : |
| | : |
| **Defendant.** | : |
| | : |

## STATEMENT OF GENUINE
## <u>ISSUES IN DISPUTE</u>

Defendant Washington Metropolitan Area Transit Authority ("WMATA") hereby submits its Statement of Genuine Issues in Dispute pursuant to Local Rule 7(h). WMATA notes that it does not challenge Paragraph Nos. 1, 2, and 5 of Plaintiff's Statement of Undisputed Material Facts ("SMF"). WMATA notes that Paragraphs 6-11 of Plaintiff's SMF are improperly presented to the Court in violation of D.C. Code § 51-113, and should be stricken from the record. WMATA further challenges Paragraph Nos. 3 and 4 for the reasons set forth below.

**<u>Genuine Issues In Dispute</u>**

_____1. Whether the bus operator was negligent in proceeding with her right turn at night and not seeing the decedent and whether the decedent began to the cross the street when the "Don't Walk" signal was flashing, as found by the official police investigation? (Exhibit A).

2.  Whether the decedent was contributorily negligent by beginning to cross the street at nighttime when the "Don't Walk" sign was flashing? (Exhibit A).

3.  Whether the actions of the bus operator and/or the decedent were the proximate cause of the accident?  (Exhibit A).

Respectfully submitted,

**WASHINGTON METROPOLITAN AREA
  TRANSIT AUTHORITY**

Carol B. O'Keeffe #445277
General Counsel

 /s/ Mark F. Sullivan
Mark F. Sullivan #430876
Deputy General Counsel

 /s/ Gerard J. Stief
Gerard J. Stief  #925933
Associate General Counsel
(202) 962-1463

 /s/ Janice L. Cole
Janice L. Cole  #440351
Associate General Counsel
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-2543
Attorneys for Defendant WMATA

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT R. FENICHEL, M.D.** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | :    **Case No.: 1:07-cv-00768-JR** |
| | : |
| **WASHINGTON METROPOLITAN** | : |
| **AREA TRANSIT AUTHORITY** | : |
| | : |
| **Defendant.** | : |
| | : |

## <u>ORDER</u>

Upon consideration of Plaintiff's Motion for Partial Summary Judgment to the

Liability of Defendant WMATA, and the Opposition thereto, it is by the Court this

_____ day of _____, 2007:

ORDERED, that the motion is denied.

_____
United States District Judge

Electronic copies to:

Gerard J. Stief and Janice L. Cole, Counsel for Defendant WMATA

Bruce J. Klores and Scott M. Perry, Counsel for Plaintiff

David P. Durbin, Counsel for Defendant Daimler/Chrysler



    

## OFFICE OF THE CHIEF OF POLICE
### Office of Security Services
### Special Operations Division
### Traffic Safety & Special Enforcement Branch
### Vehicle Homicide Investigations Unit/Motor Carrier Safety Unit

---

**501 New York Avenue, N.W., Washington, D.C. 20001 Fax (202) 727-8240**

SUBJECT:          Case Closure: Traffic Death# 06-22 Fenichel, Emily, at Wisconsin
                  Avenue and Jenifer Street, N.W.

<u>Overview:</u>

On Thursday, June 8, 2006, at approximately 2259 hours, Ms. Emily Fenichel, W/F,
DOB of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was walking
eastbound in the south cross walk, across the intersection of Wisconsin Avenue and
Jenifer Street, N.W.  At approximately 21 feet into the crosswalk, Ms. Fenichel was
struck by a 1997 Orion TBU Washington Metropolitan Area Transit Authority
(WMATA) bus, bearing D.C. registration B37901, which was operated by Ms. Michelle
N. Ferguson, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
The bus was traveling eastbound on Jenifer Street and making a right turn onto
southbound Wisconsin Avenue when the collision occurred.  After the impact, Ms.
Fenichel was "run over" by the left front tire and pushed forward.  Ms. Fenichel's right
arm and right chest area was pinned between the tire and the roadway.  The impingement
caused severe tearing of her flesh from that area.  The bus continued to turn and came to
stop approximately 24 feet south of the impact area.  Ms. Fenichel, who was trapped
underneath the tire was removed and transported to Washington Hospital Center MED-
STAR Unit in critical condition.  At 2350 hours, Ms. Fenichel was pronounced dead by
Dr. Boyer of staff.

The collision scene is a "plus" type intersection.  Wisconsin Avenue traverses northwest
and southeast bound, and Jenifer Street traverses east and westbound.  Wisconsin Avenue
has three lanes of travel in each direction, separated by a double yellow line.  The
individual travel lanes are separated by broken white lines.  East and westbound traffic
Jenifer Street is separated by a double yellow line.  There are crosswalks located at all
four sides of the intersection.  The intersection is controlled by traffic control signals
located on the northeast, northwest, southeast, and southwest corners.  The asphalt paved
roadway was dry and free of any debris.  Overhead lighting was in effect at the time of
the collision.  The temperature was warm with medium humidity.  There were no adverse
atmospheric conditions at the time of the crash.  The posted speed limit for this area is 25
miles per hour.  The undersigned marked the scene for future usage of Total Station.

*EXHIBIT A*

19. A time distance reconstruction was completed using the identical WMATA bus which was involved in the collision. The bus was positioned on Jenifer Street so that all four tires would roll over the same markings on the roadway that was marked at time of the initial crash. The placement of the bus in the intersection was also corroborated by Officer Connor, who was on the scene of the reconstruction. The bus made several turns from eastbound Jennifer Street to southbound Wisconsin Avenue. After several runs with the bus stopping at the same markings on the road, the left front and rear tires were marked with different color chalk. These markings would allow the tires' path to be followed for measurement. The left front tire had a path distance of approximately 47 feet to the area of impact. The distance from the left front tire to the front bumper was then subtracted from the 47 feet total distance. This "bumper" distance traveled was calculated to be approximately 40 feet. For the bus to travel 40 feet in approximately 5 seconds revealed an 8 feet per second velocity. Once this velocity was established, then the bus was "backed up" in "time" to correspond to the "time" placement of Ms. Fenichel. (Meaning, as Ms. Fenichel moved in one second of time, the bus would move corresponding in that same one second of time. Ms. Fenichel and the WMATA bus would move at different velocities, but in the same time sequence.) The bus and Ms. Fenichel were then placed in position at the four second time mark. Ms. Fenichel was at the curb and the bus was positioned approximately 40 feet back (in an arc) in the intersection.

20. According to Ms. Ferguson's statement, she did not see the pedestrian until after impact. Therefore, using a corresponding braking percentage for inner city transit buses of 70 to 85 percent, using a coefficient of friction of .75, and assigning a perception and reaction time of 1.6 seconds (80th percentile), revealed a maximum speed of 8.5 miles per hour for the WMATA bus. This speed then correlates to approximately 12 feet per second.

21. An exemplar individual (An on-duty MPD Officer who was approximately 5 feet two inches in height) was used as a stand in for Ms. Fenichel.

22. Photographs were taken from three different positions during the time distance reconstruction: The first, from the seated bus operator's position. (Facing left, facing forward, and facing right). The second position was from Officers' position facing westbound on Jenifer Street. And the third, from the position facing northbound Wisconsin Avenue, south of the intersection, in the northbound lanes of travel.

- At time "5 seconds", Ms. Fenichel was on the west sidewalk and the bus was 40 feet back from the area of impact. The bus had already broken the plane of the intersection and was turned facing southeast. The bus operator could not have seen Ms. Fenichel because of the frame of the bus.
- At time "4 seconds", Ms. Fenichel was 4.1 feet in the roadway and the bus was still in its turn. At this point, Ms. Fenichel could not be seen because of the bus frame.
- At time "3 seconds", Ms. Fenichel was 8.2 feet in the road and the bus was further in the intersection. Ms. Fenichel can be seen briefly because she is in between the "A pillar" and the center door frame.
- At time "2 second", Ms. Fenichel is 12.3 feet in the road and the bus has broken the plane of the north crosswalk bar. Only the extreme front portion can be seen of Ms. Fenichel because of the "A pillar" blocking the line of sight.

- At time "1 second", Ms. Fenichel is 16.4 feet in the road and the bus's left front tire has crossed into the crosswalk. Ms. Fenichel cannot be seen because of the fare box, the interior hand rail, and the height of the lower frame of the front windshield.
- At time "0 second" (impact), Ms. Fenichel is already struck and pushed forward.

23. According to DCMR Title 18, Section 2300.2, it states "every driver of a vehicle shall....exercise due care to avoid colliding with any pedestrians upon any roadway" According to Section 2302.2, it states "pedestrians facing a "WALK" signal my proceed across the roadway ...and shall be given the right-of-way by the drivers of all vehicles". According to Section 2302.3, it states "no pedestrian shall start to cross the roadway in the direction of a "DON'T WALK" or "WAIT" signal. According to Section 2303.2, it states "no pedestrian shall suddenly leave a curb.....and walk ...into a path of a vehicle which is so close that it is impossible for the driver to yield". And according to Section 2305.1, it states "whenever possible, pedestrians shall walk on the right half of crosswalks".

Conclusions:

1. Ms. Ferguson currently possesses a valid Class B commercial driver's license (CDL) with a passenger endorsement.



4. Multiple witnesses explained that the WMATA bus was not speeding. This fact is supported by the maximum speed of 8 miles per hour by utilizing the slide to stop formula and perception and reaction time stopping distance.
5. Matching the injury area on Ms. Fenichel's legs to the height of the front bumper of the bus revealed that it was the front bumper that struck Ms. Fenichel's legs.
6. Conducting a time distance reconstruction revealed that it was possible for Ms. Ferguson not to see Ms. Fenichel prior to the impact. Ms. Ferguson explained that she "looked right-left-right-left", before the impact. During this turning of the head, Ms. Fenichel could have entered one of several blind spots located on the front of the bus. The blinds spots are created by the nomenclature of the bus frame itself and the additional placement of the fare box, the route number box, and the interior hand rail.
7. The traffic light timing sequence revealed that the pedestrian walk signal begin at 27 seconds and then counts down to zero. At 15 seconds, the walk signal changes color to amber and the symbol changes to a hand signal. Using the 5 seconds in which Ms. Fenichel traveled in the roadway, and the fact that Officer Connor observed the pedestrian signal at "4 seconds" at the time of impact, revealed that if Ms. Fenichel started to walk off the curb at 9 seconds, the pedestrian signal would have been flashing the amber hand signal.

Final Recommendations:

The collision resulted in the impact of a WMATA bus and a pedestrian.  The bus was traveling eastbound on Jenifer Street and turning southbound onto Wisconsin Avenue., N.W.  The pedestrian was crossing eastbound Wisconsin Avenue in the south crosswalk. A time distance reconstruction of the collision revealed that the operator of the bus most likely did not see the pedestrian prior to impact.  Also, the pedestrian entered the crosswalk during the "don't walk" stage of the light timing sequence.

Therefore, with all the facts stated above, the undersigned recommends that this case be classified as CLOSED and forwarded to the United States Attorney's Office for review and declination of criminal charges on the part of the operator of the bus, Ms. Ferguson.


Michael Miller
Detective
Major Crash Unit