**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ROBERT R. FENICHEL, M.D.
Individually, and as Personal
Representative of the
Estate and Next of Kin of
EMILY S. FENICHEL, Deceased,

Plaintiff,

v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY, et al.

Defendants.

Case No. 1:07-CV-00768-JR

**PLAINTIFF'S REPLY TO WMATA'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

Plaintiff Robert R. Fenichel, M.D., Individually, and as Personal Representative of the Estate and Next of Kin of Emily S. Fenichel, Deceased, through counsel, submits his Reply to Defendant Washington Metropolitan Area Transit Authority's ("WMATA's) Opposition to Motion for Partial Summary Judgment as To Liability.

WMATA argues that: (1) the elements of collateral estoppel/judicial estoppel have not been established; (2) that as a "quasi-governmental" entity it is exempt from estoppel principles; (3) that pursuant to D.C. Code § 51-113 the Court should pretend that liability has not been determined; and (4) judicial estoppel does not apply. None of these arguments defeat application of summary judgment.

As to WMATA's claim that the estoppel elements are not met, the Department of Employment Services ("DOES") Examiner's Decision and the Administrative Law Judge's Final Order establish that liability was "actually litigated" in a competent forum, and it is fair to

apply estoppel against WMATA. With regard to WMATA's argument that it is exempt from estoppel principles, the law does not support WMATA's position, and no court has held that the limited estoppel exception applies to WMATA. Regarding D.C. Code § 51-113, Plaintiff appropriately obtained the Examiner's Decision and Final Order after WMATA failed to reveal the existence of the Employment Services Litigation in its discovery responses. Nothing in § 51-113 allows the Court to ignore the result of these proceedings. Finally, judicial estoppel is appropriate here as its purpose – to prevent WMATA from taking advantage of the judicial machinery – would be well served.

## ARGUMENT

### I. THE THREE ELEMENTS REQUIRED FOR APPLICATION OF ESTOPPEL ARE MET

WMATA does not deny that its position in this litigation is irreconcilable with the position it took in the Employment Services Litigation. Instead, it asserts that the three elements required for application of nonmutual offensive collateral estoppel are lacking here. WMATA is incorrect.[1]

#### A. Liability Was Actually Litigated

Relying on no authority, WMATA claims that because Ms. Ferguson's liability was determined in the unemployment context, it was not "actually litigated." The courts have rejected this "nomenclature" argument. *See, e.g., Walker v. City of New York*, 1999 U.S. Dist. LEXIS 7937, *8 (S.D.N.Y. May 24, 1999) ("Nomenclature does not govern the application of collateral estoppel."). As the *Walker* opinion recognized in applying collateral estoppel, "the

[1] Because Plaintiff's moving brief established that all three elements exist here, Plaintiff responds only to the specific arguments made by WMATA as to each element. As to the establishment of each element, Plaintiff respectfully refers the Court to his moving brief at pp. 8-15.

federal complaint contains the identical *issues and underlying facts raised and necessarily decided* in the state court proceedings" regardless of what theory the plaintiff sued under. *Id.* at *8 (emphasis added); *see also Rutter v. Rivera,* 73 Fed. Appx. 182 (3d Cir. 2003) (finding of no disability in unemployment hearing precludes wage-loss claim in tort case).

### *1. The Administrative Law Judge Found Negligence*

While the purpose of an unemployment hearing may be to determine whether the former employee is entitled to benefits, in this case that decision could only be made by determining whether Mrs. Ferguson, the WMATA bus driver, negligently caused Ms. Fenichels's death.

The sole reason that WMATA terminated Ms. Ferguson was for causing Mrs. Fenichel's death. Specifically, WMATA argued that Ms. Ferguson caused Mrs. Fenichel's death by failing to follow WMATA's Standard Operating Procedures ("SOPs") for safe operation of a bus.[2] To make the determination that WMATA was entitled to terminate Ms. Ferguson on that basis, the Administrative Law Judge relied upon the SOPs (calling them "standards of behavior") to determine whether Ms. Ferguson acted with the requisite degree of care. Relying on the SOPs, and the other evidence presided by both sides' counsel, the Administrative Law Judge found negligence.

One need only to substitute the phrase "negligent conduct" for the phrase "standard of behavior" used by the Administrative Law Judge in several of her findings to demonstrate that

[2] The Court will recall that on November 1, 2007, it held an informal discovery-dispute conference among the parties. After hearing from each side, the Court noted that it strongly favored Plaintiff's view that documents related to the Employment Services Litigation were discoverable. Despite the Court's statement, WMATA has continued to refuse to produce any documents to Plaintiff. Thus, Plaintiff is constrained in this Motion to rely only on the two documents produced by DOES. It safely can be assumed that WMATA's continued intransigence is designed to hide that fact that the withheld documents support Plaintiff's argument that liability was decided.

negligence was actually litigated. For example, the Administrative Law Judge found that "[f]ailure to minimize the effects of a blind spot, and ultimately hitting a pedestrian, is [negligent conduct]." Final Order at 6 (substituting "negligent conduct" for "disregarding a standard of behavior"), **Exhibit 1**. She further held that "I find that there is sufficient evidence to support a determination that [Ms. Ferguson's] discharge from employment was the result of an act which [is negligence]," Final Order at 6, (substituting "is negligence" for "disregards standards of behavior which an employer has a right to expect of its employee"). Indeed, the Court need not even substitute "negligence" as the Administrative Law Judge also held that "[h]ad [Ms. Ferguson] been following the Standard Operating Procedures with which she was trained, and following the rules of careful driving, [Ms. Ferguson] should have seen the pedestrian well before the pedestrian left the curb and entered the crosswalk." Final Order at 7 (emphasis added). The "rules of careful driving" are the standard upon which a jury would use to determine negligence. D.C. Pattern Jury Instruction § 5.02 defines negligence as "[t]o use the same caution, attention or skill that a reasonable person would use under similar circumstances."

At the hearing, the Administrative Law Judge was tasked with determining whether Ms. Ferguson abided by WMATA's SOPs. Those SOPs define how a WMATA bus driver must act under specific circumstances; they are evidence of the standard of care. *See WMATA v. Young*, 731 A.2d 389, 398 (D.C. 1999). Indeed, there is a specific SOP for making a right-hand turn, the maneuver in this case. *See id.* (recognizing that WMATA's right-hand-turn SOP can be considered by finder of fact as evidence of the degree of care required); Metro SOP 5, **Exhibit 2.** The Administrative Law Judge found, just as a jury would be charged to determine, that Ms. Ferguson had not acted with the requisite care. The Administrative Law Judge further found

that this "gross misconduct" caused a "preventable major accident." Final Order; Claims Examiner's Decision, **Exhibit 3**.

WMATA also claims that estoppel should not apply because by relying on the SOPs, the Administrative Law Judge held Ms. Ferguson to a higher standard than would be required at trial. *See* WMATA Opp'n at 8; *see also WMATA v. Young*, 731 A.2d 389, 398 (D.C. 1999) (WMATA admits that the SOPs impose an "extraordinary duty of care"). What it fails to recognize in conceding this point is that, *ipso facto*, Ms. Ferguson had to have been negligent because the Administrative Law Judge found her liable under the higher standard of care that that WMATA imposes on its drivers via the SOPs. A finding of "gross misconduct" in violating WMATA's higher standard of care necessarily establishes the lesser standard required to prove negligence.[3] Moreover, under District of Columbia unemployment law, "gross misconduct," as opposed to "simple misconduct," requires a deliberate or willful act. *See* 7 DCMR 312.3. Thus, the Administrative Law Judge, as did the Claims Examiner, found that Ms. Ferguson acted with deliberation or willfulness, which subsume negligence.

In short, it cannot be seriously questioned that Ms. Ferguson's negligence was actually litigated. As the Administrative Law Judge held:

> [Ms. Ferguson] was a professional bus driver. She was trained how to operate a bus to avoid accidents. She was trained how to traverse intersections, make right turns, look for pedestrians; she was trained to observe 'every person, object, or vehicle within the traffic pattern. . . . This training includes procedures to be used to minimize the impact of both vehicles and environmental blind spots.
> . . .
> [Ms. Ferguson] should have seen and avoided hitting a pedestrian walking within the crosswalk and with the light."

Final Order, at 6-7.

---

[3] Plaintiff reserves the right to argue at trial that the SOPs establish the standard of care and, thus, are not a higher standard of care.

This is negligence.

### *2. The Administrative Law Judge Found That Mrs. Fenichel Was Not Contributorily Negligent*

WMATA similarly argues that because the phrase "contributory negligence" does not appear in the Final Order, that issue was not actually litigated. This is the same nomenclature argument. While the nomenclature may be different, the Administrative Law Judge considered, and rejected, the argument that Mrs. Fenichel's contributory negligence was the proximate cause of the accident. As the Administrative Law Judge wrote:

> [Ms. Ferguson] argued that this was not a preventable accident: [Ms. Ferguson] did not see the pedestrian, the pedestrian must have been in her blind spot. [Ms. Ferguson] also argues that the pedestrian ran out in front of her bus and she had no opportunity to see the pedestrian. I find these arguments to be unavailing.
> . . .
> The pedestrian was within the traffic pattern for more than five seconds. Therefore, there was additional time for [Ms. Ferguson] to have observed the pedestrian. Had [Ms. Ferguson] been following the Standard Operating Procedures with which she was trained, and following the rules of careful driving, [Ms. Ferguson] should have seen the pedestrian well before the pedestrian left the curb and entered the crosswalk.

Final Order at 6-7 (emphasis added). The Administrative Law Judge then specifically considered the Major Crash Unit Police Officer's hearsay conclusion that Mrs. Fenichel entered the intersection when the "Don't Walk" signal had begun to flash. Final Order at 7 n.2. Recognizing that for contributory negligence to absolve liability it must be a proximate cause, the Administrative Law Judge found that "even if true, the fact does not absolve [Ms. Ferguson.] The pedestrian was in the crosswalk walking with the traffic light." *Id.* (emphasis added). In other words, even if one were to find that Mrs. Fenichel was contributorily negligent, her negligence was not a proximate cause of the accident.

Contributory negligence, too, was actually litigated.

**B. Liability Was Determined By A Court Of Competent Jurisdiction**

WMATA cites no authority for its one-paragraph argument that findings by an administrative law judge do not constitute a court of competent jurisdiction for application of collateral estoppel. Plaintiff relies on the authority cited in his moving brief, which hold otherwise. *See, e.g., Kovach v. D.C.*, 805 A.2d 957, 962 (D.C. 2002) (Collateral estoppel "applies not only to judicial adjudications, but also to determinations made by agencies other than courts, when such agencies are acting in a judicial capacity.").

**C. Applying Collateral Estoppel Would Not Work An Unfairness To WMATA**

As to this prong, WMATA claims that it would be unfair to "the riding public and taxpayers" to apply collateral estoppel. WMATA fails to recognize that Mrs. Fenichel, the decedent and a D.C. resident, was also part of the riding public and a taxpayer.[4] Moreover, the riding public and taxpayer will not be served by a long, expensive and unnecessary trial as to liability that has a high likelihood of resulting in a plaintiff's verdict. Furthermore, to the extent that the "riding public's" interests can somehow be considered in the fairness analysis -- which the case law does not support -- Plaintiff reiterates that he sought to settle with WMATA pre-suit. After months of telling Plaintiff not to file suit because WMATA wanted to settle, WMATA then changed course and refused to offer one cent. As a result, the fairness to Plaintiff of <u>not</u> applying collateral estoppel also must be considered. It is Plaintiff who needlessly has expended tens of thousands of dollars establishing liability, unaware that WMATA had already established it.

Finally, WMATA's fairness argument should not obscure the basic duty that we, as officers of the Court, owe to the Court and to the jurisprudential system. Collateral estoppel and judicial estoppel recognize that a party cannot be permitted to take one position as to facts

[4] Mrs. Fenichel had just exited the Metrorail Station when she was struck and killed.

and to law in one proceeding, and then take the contrary position in another proceeding arising from the same facts. Judicial integrity is what is at issue here when considering fairness.

## II. WMATA HAS NO IMMUNITY FROM ESTOPPEL

WMATA alternatively argues that pursuant to *United States v. Mendoza*, 464 U.S 154 (1984), estoppel cannot be applied against the government, and that as a quasi-governmental entity estoppel cannot be applied against WMATA. A thorough reading of *Mendoza*, the cases upon which WMATA relies and subsequent authority applying *Mendoza*, establishes that neither of these claims is correct.

In considering whether to apply the *Mendoza* exception to WMATA, the Court starts with the assumption that ordinary common-law principles apply to WMATA, as its enabling statute ensures. *See* D.C. Code Ann. § 1-2431(80). There is no dispute that the common law firmly embraces the use of nonmutual offensive collateral estoppel. As the D.C. Circuit has held, "it is beyond peradventure that the doctrine of offensive collateral estoppel or issue preclusion is firmly fixed in the firmament of federal jurisdiction." *Jack Faucett Assocs. v. American Tel. & Tel. Co.*, 744 F.2d 118, 125 (D.C. Cir. 1984). Thus, only if WMATA meets the elements of *Mendoza*, which it clearly does not, can it be exempted from the common law.

### A. *Mendoza* Held That Estoppel Cannot Be Applied To The *Federal* Government Because Of Its Unique Role As a Litigant

WMATA's estoppel argument is premised on the Supreme Court's holding in *United States v. Mendoza*, 464 U.S 154 (1984), where the Court held that nonmutual offensive collateral estoppel does not apply to the federal government. In *Mendozo*, the Supreme Court found that estoppel should not apply to the federal government for several important reasons: (1) the federal government litigates issues of national importance for which divergent views are essential; (2) the federal government's geographic breadth, and the nationwide effect of its

policies; (3) estoppel would deprive the Supreme Court of the benefit it gains from reviewing differing courts of appeals' opinions as to matters of constitutional importance; (4) the federal government's decisions whether to appeal cases is often driven by various bureaucratic factors not applicable to private litigants; and (5) the fact that government attorneys are beholden to the views of the Executive Department officials, which change depending on the party in power. *See id.* at 160-62.

None of these factors apply to WMATA.

As the Supreme Court of Alaska held in declining to adopt *Mendoza* to exempt state agencies from estoppel principles, "the exception to [the estoppel doctrine] which the *Mendoza* court created was one especially fashioned for the federal government as a litigant." *State of Alaska v. United Cook Inlet Drift, Ass'n,* 895 P.2d 947, 951 (Ala. 1995). The Second Circuit, which applied estoppel to a state agency after *Mendoza* was decided, similarly recognized that *Mendoza* applied only to the federal government: "The major policy interests outlined in *Mendoza* were avoidance of premature estoppel and assurance of an opportunity for the government to consider the administrative concerns that weigh against initiation of the appellate process." *Benjamin v. Coughlin,* 905 F.2d 571, 576 (2d Cir. 1990); *see also Lopez v. Huff,* 2007 U.S. Dist. LEXIS 67798, *11 (D. D.C. Sept. 14, 2007) (Walton, J.) (recognizing that the *Mendoza* exception applies to the "United States").

In *Kronheim & Co. v. District of Columbia,* 91 F.3d 193 (D.C. Cir. 1996), our Circuit Court of Appeals was faced with the *Mendoza* argument as it applies to the District of Columbia, but decided the case on another basis. In a strongly-worded dissent, however, Judge Henderson described precisely why *Mendoza* has no application to state governments, and certainly would have no application to WMATA, which is not akin to a state government :

> The [District's] argument is grounded in the Supreme Court's decision in [*Mendoza*], a due process case involving the federal government.
> . . .
> The crux of the [Mendoza] opinion is its observation that allowing nonmutual offensive collateral estoppel to be used against the federal government would have two adverse consequences. First, and most important, it 'would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue,' thereby 'depriving the Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before the Court grants certiorari.' [citation omitted.] Second, 'the Solicitor General's policy for determining when to appeal an adverse decision would also require substantial revision' because the Solicitor General would, in effect, have 'to appeal every adverse decision in order to avoid foreclosing further review.' [citations omitted.]
> . . .
> *Mendoza's* rationale is inapplicable to the District.

*Id*. at 208-09 (Henderson, J, dissenting) (emphasis added). Judge Henderson went on to explain that neither of these rationales had any applicability to the District and, thus, "no legitimate public policy would be served by immunizing the District from nonmutual offensive collateral estoppel here." *Id*. at 209.

**B. Even If District of Columbia Procedural Law Applied Here, Estoppel Is Appropriate**

Although WMATA cites no authority to apply District of Columbia procedural law, it also cites several District of Columbia Court of Appeals cases to support its argument. But even if those cases had any precedential value in this Court -- which they do not -- they are inapposite.

First, WMATA points to Judge Steadman's one-paragraph concurrence in *Fairman v. District of Columbia*, __ A.2d __, 2007 D.C. App. LEXIS 640 (Oct. 25, 2007) in which he noted that judicial and equitable estoppel do not "readily" translate to the government. Far from supporting WMATA's argument, the *Fairman* majority applied estoppel to the District of Columbia in that case. *See id.* at *10 ("We agree with Fairman that [judicial or equitable

estoppel] precludes the District from taking the position on appeal, contrary to its position in the trial court . . . .").

Second, in *Mamo v. District of Columbia*, __ A.2d __, 2007 D.C. App. LEXIS 591 (Oct. 18, 2007), the appellant tried to utilize promissory estoppel against the District of Columbia based on a letter he received from a project manager of a D.C. agency. There had been no prior judicial adjudication. The court of appeals noted that in that circumstance, in which the appellant was trying to hold the District to a promise that it never made, it would not apply estoppel absent "affirmative misconduct" by a government agent. *See id.* at *27-28.

These cases have no application here, which presents a classic case for the use of nonmutual offensive collateral estoppel. Here, WMATA is trying to game the system by taking whatever position it likes before whatever tribunal it finds itself in front of, regardless of the integrity of its arguments. This is precisely what estoppel is designed to prevent.

**C. Nonmutual Offensive Collateral Estoppel and Judicial Estoppel Apply to WMATA**

It is clear that *Mendoza* only applies to the federal government. But even if the Court were to find that collateral estoppel and judicial estoppel do not apply to state governments, no court has extended that public-policy decision to a transportation authority such as WMATA. The rationale supporting non-application of estoppel principles to the federal and to state governments simply has no application in a tort suit against WMATA.

WMATA possesses none of the characteristics of a federal or state government that resulted in the *Mendoza* opinion. No matters of national interest are at stake. Application of estoppel has no effect on the Solicitor General or on a state attorney general's policy decision driven by the executive branch. Neither the Supreme Court, nor any other court is benefited by allowing WMATA to take inconsistent positions.

WMATA's position in this litigation is no different than if Dr. Fenichel had sued Greyhound Bus for negligence. Either its driver was at fault for the accident, or she was not, and either Greyhound took the position that its driver was negligent in a prior judicial proceeding, or it did not. The *Mendoza* exception has no application here.

## III. D.C. CODE § 51-113 HAS NO EFFECT ON WHETHER SUMMARY JUDGMENT IS APPROPRIATE

In a last-ditch effort to avoid the consequences of its contrary positions, WMATA tries to place blame on Plaintiff for utilizing ordinary discovery devices to obtain information.[5] Simply put, the DOES documents were properly requested by Plaintiff, and properly produced by DOES.

When Plaintiff learned of the Employment Services Litigation through his own efforts, he issued a subpoena to the DOES, pursuant to Fed. R. Civ. P. 45, seeking information regarding that litigation. **Exhibit 4.** Plaintiff sent a copy of the subpoena to WMATA. WMATA took no action in response. It did not seek to quash the subpoena; it did not seek a protective order. It did nothing.

In response to the subpoena, Eugene Irvin, DOES General Counsel, provided Plaintiff with the Examiner's Decision and with the Final Order, and stated in his accompanying September 13, 2007 letter that these documents "constitutes [sic] the full extent of requested materials that are legally releasable." (Emphasis added.), **Exhibit 5.** Thus, the DOES General Counsel determined that the documents were "legally releasable," and because WMATA continues to refuse to produce any other documents, these are the only DOES documents that Plaintiff has relied upon in this motion.

---

5 It should be remembered that Plaintiff only had to resort to a subpoena because WMATA failed to even inform Plaintiff of the Employment Services Litigation in its discovery responses.

## IV. JUDICIAL ESTOPPEL IS APPROPRIATE

WMATA argues that the *Mendoza* exception applies to judicial estoppel as well. For the same reasons that WMATA cannot rely upon *Mendoza* to avoid application of collateral estoppel, it cannot do so with regard to judicial estoppel either. *See* Section II, *supra*.

With regard to the applicability of judicial estoppel in the D.C. Circuit, WMATA incorrectly asserts that the Supreme Court cited *Konstantinidis v. Chen*, 626 F.2d 933 (D.C. 1980) (which declined to use judicial estoppel in our Circuit), "with approval." In fact, the Supreme Court did not cite *Chen* with approval. Rather, in holding that judicial estoppel was a principle that should be applied in federal courts, the Supreme Court quoted a portion of one sentence from *Chen* noting that "[b]ecause [judicial estoppel] is intended to prevent 'improper use of the judiciary machinery,'" it is an equitable doctrine that federal courts are free to invoke. *See State of Maine v. State of New Hampshire*, 532 U.S. 742, 750 (2001).

Far from endorsing *Chen's* holding that judicial estoppel is not appropriate, the Court was explaining precisely why it is an essential equitable doctrine. Moreover, the partial quote from *Chen* could not better explain why judicial estoppel should apply here. Judicial estoppel should be applied to prevent WMATA from making improper use of the judicial machinery.

## CONCLUSION

WMATA has twice successfully argued that its driver was at fault for causing the accident that killed Emily Fenichel. It now comes before this Court and claims that its driver was not at fault for Mrs. Fenichel's death. This strategic, inconsistent use of the judicial process, should not be countenanced by the Court, and both collateral estoppel and judicial estoppel exist for the very purpose of preventing litigants from misusing the process such as WMATA has tried to do.

WHERFORE, for these reasons and any other the Court deems relevant, Plaintiff respectfully requests that WMATA be prohibited from asserting a liability defense to this case.

Respectfully submitted,

BRUCE J. KLORES & ASSOCIATES, P.C.

By_______/s/ Scott Perry__________

Bruce J. Klores (358548)
Scott M. Perry (#459841)
1735 20th Street, N.W.
Washington, DC 20009
P: 202-628-8100
F: 202-628-1240
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ROBERT R. FENICHEL, M.D. )
Individually, and as Personal )
Representative of the )
Estate and Next of Kin of )
EMILY S. FENICHEL, Deceased, )
)
Plaintiff, ) Case No. **1:07-cv-00768-JR**
)
v. )
)
WASHINGTON METROPOLITAN )
AREA TRANSIT AUTHORITY, et al. )
)
Defendants. )
______________________________)

**ORDER GRANTING PARTIAL SUMMARY JUDGMENT**

The Court, having considered Plaintiff's Motion for Partial Summary Judgment As To The Liability Of Defendant WMATA, and any opposition thereto, hereby ORDERS that the motion is;

GRANTED.

It is further ORDERED that WMATA is collaterally estopped and judicially estopped from defending this case on liability, and that partial summary judgment is entered in Plaintiff's favor on the issue of liability.

It is further ORDERED that this case shall proceed on damages only.

______________________________
United States District Judge

1845/sj.reply

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ROBERT R. FENICHEL, M.D. )
Individually, and as Personal )
Representative of the )
Estate and Next of Kin of )
EMILY S. FENICHEL, Deceased, )
)
Plaintiff, ) Case No. 1:07-CV-00768-JR
)
v. )
)
WASHINGTON METROPOLITAN )
AREA TRANSIT AUTHORITY, et al. )
)
Defendants. )
______________________________________)

**PLAINTIFF'S RESPONSE TO WMATA'S**
**STATEMENT OF GENUINE ISSUES IN DISPUTE**

Plaintiff Robert R. Fenichel, M.D., Individually, and as Personal Representative of the Estate and Next of Kin of Emily S. Fenichel, Deceased, through counsel, submits his Response to Defendant Washington Metropolitan Area Transit Authority's ("WMATA's) Statement of Genuine Issues in Dispute.

Plaintiff disputes Paragraphs 1-3 of WMATA's Statement for the reasons set forth in his accompanying Reply brief.

Respectfully submitted,

BRUCE J. KLORES & ASSOCIATES, P.C.

By________/s/ Scott Perry___________

Bruce J. Klores (358548)
Scott M. Perry (#459841)
1735 20th Street, N.W.
Washington, DC 20009
P: 202-628-8100
F: 202-628-1240
Attorneys for Plaintiffs

1845/SoF

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ROBERT R. FENICHEL, M.D.
Individually, and as Personal
Representative of the
Estate and Next of Kin of
EMILY S. FENICHEL, Deceased,

Plaintiff,

v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY, et al.

Defendants.

Case No. **1:07-cv-00768-JR**

**ORDER GRANTING PARTIAL SUMMARY JUDGMENT**

The Court, having considered Plaintiff's Motion for Partial Summary Judgment As To The Liability Of Defendant WMATA, and any opposition thereto, hereby ORDERS that the motion is;

GRANTED.

It is further ORDERED that WMATA is collaterally estopped and judicially estopped from defending this case on liability, and that partial summary judgment is entered in Plaintiff's favor on the issue of liability.

It is further ORDERED that this case shall proceed on damages only.

__________________________
United States District Judge

1845/sj.reply

DISTRICT OF COLUMBIA
OFFICE OF
ADMINISTRATIVE HEARINGS

2007 APR -6 P 3:43

DISTRICT OF COLUMBIA
OFFICE OF ADMINISTRATIVE HEARINGS
941 North Capitol Street, NE Suite 9100
Washington, DC 20002
TEL: (202) 442-8167
FAX: (202) 442-9451

MICHELLE N. FERGUSON
Appellant/Claimant

v.

WMATA
Appellee/Employer

Case No.: ES-P-07-106712

# FINAL ORDER

## I. INTRODUCTION

Appellant/Claimant Michelle N. Ferguson filed an appeal of a Claims Examiner's Determination holding her ineligible for unemployment compensation benefits. This appeal raises the issue whether Claimant was discharged for cause constituting "misconduct" as defined in 7 District of Columbia Municipal Regulations ("DCMR") 312, pursuant to the District of Columbia Unemployment Compensation Act, D.C. Code, 2001 Ed. § 51-110(b).

This administrative court issued a Scheduling Order and Notice of In-Person Hearing on February 28, 2007, scheduling the hearing for March 14, 2007, at 10:30 a.m. At the request of Claimant, and for good cause shown, the matter was continued until later in the day, the hearing was held at 12:30 p.m. At the hearing, Claimant was represented by Lolita Martin, Esq., Claimant Advocacy Program. Appellee/Employer WMATA was represented by Kathleen Carey, Esq. Claimant testified on her own behalf. Robert Ballard, Transportation

Superintendent, testified on behalf of Employer. During the hearing, Claimant's Exhibit ("Exh.") 100 and Employer's Exhs. 200 through 206 were admitted into the record.

At the hearing, Claimant's counsel advised Claimant that, pursuant to the 5th Amendment to the United States Constitution, Claimant had a right not to testify since her testimony could potentially give rise to criminal charges. Claimant stated that she understood her rights, but voluntarily chose to testify at the hearing.

## II. FINDINGS OF FACT

Claimant filed an appeal of the Claims Examiner's February 12, 2007 Determination on February 20, 2007.[1]

Claimant worked for Employer for three years and nine months as a bus operator. On June 8, 2006, at approximately 10:45 p.m., Claimant, operating a twenty-foot bus, left the Western Avenue Bus Depot headed to Dupont Circle to begin her route. Claimant stopped at a red light at the intersection of Jennifer Street and Wisconsin Avenue, N.W. When the light changed, Claimant began to proceed into the intersection traveling east on Jennifer Street. Claimant intended to turn right to travel south on Wisconsin Avenue. Claimant waited for pedestrians to cross, and began her turn. While turning from Jennifer Street onto Wisconsin Avenue, the left front bumper of the bus Claimant was operating hit a pedestrian, dragging the pedestrian and running over her. Exhs. 100, 200. The pedestrian had stepped off the curb into the crosswalk of the south side of Wisconsin Avenue and was hit in the center lane. The

---

[1] Nothing in the record below indicates any issue has been raised or preserved concerning factors under D.C. Code, 2001 Ed. § 51-109, such as base period eligibility or availability for work.

pedestrian approached the intersection and began crossing while Claimant was waiting to make her turn. When the pedestrian left the curb, the pedestrian walk light was flashing "Don't Walk," but the traffic light for Wisconsin Avenue traffic was red. It took the pedestrian five seconds to walk from the curb to the point of impact. The pedestrian died as a result of her injuries. *Id.*

Employer has Standard Operating Procedures that set forth the expected proper procedures for the operation of its buses. Exh. 203. Employer trains each bus driver on the proper procedures, using the Standard Operating Procedures as its training guide. *Id.* The procedures provide a bus operator with clearly defined bus operating procedures for making right turns, intersection operations, observations, and defensive driving. *Id.* This training includes procedures to minimize the effect of blind spots. *Id.*

Employer suspended Claimant pending an investigation into the accident. On June 29, 2006, Employer terminated Claimant's employment as a result of the June 8, 2006 accident.

## III. CONCLUSIONS OF LAW AND DISCUSSION

In accordance with D.C. Code, 2001 Ed. § 51-111(b), any party may file an appeal from a Claims Examiner's Determination within ten (10) calendar days after the mailing of the Determination to the party's last-known address or, in the absence of such mailing, within ten (10) calendar days of actual delivery of the Determination. The Determination in this case contains a certificate of service dated February 12, 2007. Therefore, the parties had until February 22, 2007, to file an appeal. Claimant's appeal was filed on February 20, 2007. The appeal was timely filed and jurisdiction is established. D.C. Code, 2001 Ed. § 51-111(b).

Generally, any unemployed individual who meets certain statutory eligibility requirements is qualified to receive benefits. D.C. Code, 2001 Ed. § 51-109. The law, however, creates disqualification exceptions to the general rule of eligibility. If an employee is discharged for misconduct (either "gross" or "other than gross"), the employee is disqualified from receiving benefits for at least some period of time. D.C. Code, 2001 Ed. § 51-110.

The employer bears the burden of producing evidence and demonstrating that an employee has been discharged for misconduct. OAH Rule 2820.3 (burden of production on party arguing an exception to a statutory requirement); *see McCaskill v. D.C. Dep't of Employment Servs.*, 572 A.2d 443, 445-446 (D.C. 1990). An employee may, however, offer testimony or documents sufficient to satisfy the employer's burdens of production and persuasion on the issue of misconduct.

The District of Columbia's unemployment compensation statute recognizes two levels of disqualifying misconduct, "gross" and "other than gross." D.C. Code, 2001 Ed. § 51-110(b)(1) and (2). "Gross misconduct" is the more serious of the two levels and includes acts that "deliberately or willfully violate[] the employer's rules, deliberately or willfully threaten[] or violate[] the employer's interests, show[] a repeated disregard for the employee's obligation to the employer, or disregard[] standards of behavior which an employer has a right to expect of its employee." 7 DCMR 312.3. Applicable regulations describe specific acts that, among others, may constitute gross misconduct:

a. Sabotage;
b. Unprovoked assault or threats;
c. Arson;
d. Theft or attempted theft;
e. Dishonesty;
f. Insubordination;



Exhibit 1

g. Repeated disregard of reasonable orders;
h. Intoxication, the use of or impairment by an alcoholic beverage, controlled substance, or other intoxicant;
i. Use or possession of a controlled substance;
j. Willful destruction of property;
k. Repeated absence or tardiness following warning.

7 DCMR 312.4.

Employees can also be disqualified from receiving unemployment benefits for conduct that is less egregious than gross misconduct but nevertheless "constitutes a breach of the employee's duties or obligations to the employer, a breach of the employment agreement or contract, or . . . adversely affects a material employer interest." 7 DCMR 312.5. Such "other than gross" misconduct, also called "simple" misconduct, includes "acts where the severity, degree, or other mitigating circumstances do not support a finding of gross misconduct." *Id; see Chase v. D.C. Dep't of Employment Servs.*, 804 A.2d 1119, 1122 (D.C. 2002). Applicable regulations provide several examples of simple misconduct:

a. Minor violations of employer rules;
b. Conducting unauthorized personal activities during business hours;
c. Absence or tardiness where the number of instances or their proximity in time does not rise to the level of gross misconduct;
d. Inappropriate use of profane or abusive language.

7 DCMR 312.6. The period of disqualification for simple misconduct is shorter than the period of disqualification for gross misconduct.

Whether the level of alleged misconduct is gross or simple, an employee cannot be disqualified from receiving unemployment benefits unless there has been a finding of "misconduct" (as the term is defined under the unemployment statute and regulations) "based fundamentally on the reasons specified by the employer for the discharge." *See Chase,* 804 A.2d

at 1123 (internal citation omitted). Mr. Ballard testified that Employer terminated Claimant's employment as a result of the June 8, 2006 accident.

I find that there is sufficient evidence to support a determination that Claimant's discharge from employment was the result of an act which "disregards standards of behavior which an employer has a right to expect of its employee," and is thus gross misconduct. 7 DCMR 312.3.

Claimant was a professional bus driver. She was trained how to operate the bus to avoid accidents. She was trained how to traverse intersections, make right turns, look for pedestrians; she was trained to observe "every person, object, or vehicle within the traffic pattern." Exh. 203. This training includes procedures to be used to minimize the impact of both vehicle and environmental blind spots. Exh. 203.

Claimant admitted that she was aware of Employer's Standard Operating Procedures and that she had been trained using the Standard Operating Procedures. In fact, Claimant testified that she had followed all Standard Operating Procedures. Claimant argued that this was not a preventable accident: Claimant did not see the pedestrian, the pedestrian must have been in her blind spot. Claimant also argued that the pedestrian ran in front of her bus and she had no opportunity to see the pedestrian. I find these arguments to be unavailing.

Claimant testified that she was proceeding to make a right turn. Claimant was taught to look left, right, left, right, to make sure no pedestrians are in the road and traffic pattern, and then to proceed. Exh. 203. Claimant should have seen and avoided hitting a pedestrian walking

within the crosswalk and with the light.[2] The Supplemental Police Report revealed that it "was possible for [Claimant] not to see [the pedestrian] prior to the impact" and that the pedestrian could have been in Claimant's blind spot. Exh. 100. However, that same police report stated that it took the pedestrian approximately five seconds to walk from the curb to the point of impact. Clearly, the pedestrian did not just appear at the curb, she was on the sidewalk prior to crossing the street. The pedestrian was within the traffic pattern for more than five seconds. Therefore, there was additional time for Claimant to have observed the pedestrian. Had Claimant been following the Standard Operating Procedures with which she was trained, and following the rules of careful driving, Claimant should have seen the pedestrian well before the pedestrian left the curb and entered the crosswalk.

Part of the training for WMATA bus drivers is how to limit the effect of blind spots. Relying on a blind spot is not a sufficient excuse for a trained professional. Failure to minimize the effects of a blind spot, and ultimately hitting a pedestrian, is disregarding a standard of behavior which an employer has a right to expect of its employee. Accordingly, the Determination of the Claims Examiner shall be affirmed. Claimant remains ineligible for unemployment compensation benefits. D.C. Code, 2001 Ed. §§ 51-110(b) and 51-111(e); OAH Rule 2820.3.

## IV. ORDER

Based upon the foregoing findings of fact and conclusions of law and the entire record in this matter, it is, this 6th day of April, 2007:

---

2 According to the Supplemental Police Report, the pedestrian left the curb and entered the intersection after the "Don't Walk" signal began. However, even if true, that fact does not absolve Claimant. The pedestrian was in the crosswalk walking with the traffic light.

**ORDERED**, that the Claims Examiner's Determination that Appellant/Claimant Michelle N. Ferguson is ineligible for unemployment compensation benefits is **AFFIRMED**; and it is further

**ORDERED**, that Appellant/Claimant Michelle N. Ferguson remains **INELIGIBLE** for unemployment compensation benefits, and it is further

**ORDERED**, that the appeal rights of any person aggrieved by this Order are stated below.

Wendy Hartmann Moore
Administrative Law Judge

# PETITION FOR REVIEW
# (APPEAL RIGHTS)

**THIS ORDER IS A FINAL ORDER. IF YOU WISH TO APPEAL THIS ORDER, YOU HAVE 30 CALENDAR DAYS FROM THE DATE IT IS MAILED TO YOU TO FILE A PETITION FOR REVIEW WITH THE D.C. COURT OF APPEALS.**

Pursuant to D.C. Code, 2001 Ed. § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may obtain judicial review by filing an original and six copies of a petition for review with the District of Columbia Court of Appeals at the following address:

Clerk
District of Columbia Court of Appeals
H. Carl Moultrie I Courthouse
500 Indiana Avenue NW
Sixth Floor
Washington, DC 20001

The petition for review (and required copies) may be mailed or delivered in person to the Clerk of the Court of Appeals, and must be received by the Clerk of the Court of Appeals within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a fee of $100 for filing a petition for review. Persons who are unable to pay the filing fee may file a Motion and Affidavit to proceed without the payment of the filing fee. Such motion and affidavit should be filed with the petition for review. Information on petitions for review to the Court of Appeals can be found in Title III of the Rules of the District of Columbia Court of Appeals, which are available in the Office of the Clerk of the Court of Appeals or online at www.dcappeals.gov .

If you are a member of the United States Armed Forces on active duty, you may have certain rights under the Servicemembers Civil Relief Act 50 U.S.C.S. Appx. §501 *et seq*. If you qualify for these rights and you have **LOST** this case because you were not present, you **MAY** be able to have this case reopened. If you think you may qualify under this law, you must notify this court promptly to ensure that your rights are protected.

## Certificate of Service:

**By First Class Mail (Postage Paid):**

Michelle N. Ferguson
4020 Livingston Road, SE, #303
Washington, DC 20032-2906

Lolita Martin, Esq.
Claimant Advocacy Program
888 16th Street, NW, Suite 520
Washington, DC 20006

Kathleen A. Carey, Esq.
WMATA
600 Fifth Street, NW
Washington, DC 20001

**By Inter-Agency Mail:**

Dorothy Jones
Department of Employment Services
609 H Street, NE
Washington, DC 20002

I hereby certify that on April 6, 2007, this document was caused to be served upon the above-named parties and upon DOES at the addresses listed and by the means stated.

[signature]
Clerk / Deputy Clerk

# TABLE OF CONTENTS

| | | PAGE |
|---|---|---|
| A. | STANDARD OPERATING PROCEDURES | |
| 1. | PRE-TRIP INSPECTION | 1-1 |
| 2. | MIRROR ADJUSTMENT | 2-1 |
| 3. | STARTING AND STOPPING | 3-1 |
| 4. | LEFT TURN | 4-1 |
| 5. | RIGHT TURN | 5-1 |
| 6. | FOLLOWING MOVING TRAFFIC | 6-1 |
| 7. | CHANGING LANES - PASSING - BEING PASSED | 7-1 |
| 8. | INTERSECTION OPERATION | 8-1 |
| 9. | SERVICE STOPS | 9-1 |
| 10. | SCHOOL BUS ZONES | 10-1 |
| 11. | DRIVING ON EXPRESSWAYS | 11-1 |
| 12. | OBSERVATIONS | 12-1 |
| 13. | DEFENSIVE DRIVING | 13-1 |
| 14. | ADVERSE DRIVING CONDITIONS | 14-1 |
| 15. | BACKING AND PARKING | 15-1 |
| 16. | SECURING A BUS | 16-1 |
| 17. | ARTICULATED BUS OPERATION | 17-1 |
| B. | APPENDIX | |
| 1. | BUS SERVICE FOR ELDERLY AND DISABLED PASSENGERS | 18-1 |
| 2. | ELECTRONIC REGISTERING FAREBOX | 19-1 |
| 3. | ELECTRONIC DESTINATION SIGNS | 20-1 |
| 4. | BUS COMMUNICATIONS SYSTEM | 21-1 |

Exhibit 2

## MAKING A RIGHT TURN

When a turning bus clears the curb at the corner, creates no hazard and maneuvers safely past all obstacles while staying as near as possible in its own lane, a correct right turn has been accomplished.

SIGNAL

1. Activate right turn indicator 150 feet from the intersection.
2. Signal continuously through the turn.
3. Cancel signal after turn is complete.

POSITION

1. Curb lane right turn:

    a. When the front of the bus is clear of fixed objects on the curb and about 40 feet from the intersection angle to within 18 inches of the curb, the bus will travel approximately 15 feet forward to smoothly complete this maneuver.

NOTE: IF A BUS STOP IS REQUIRED PRIOR TO THE TURN, ANGLE WITHIN 6 INCHES OF THE CURB TO SERVICE THE STOP. COMPLETE ALL FARE TRANSACTIONS BEFORE CONTINUING TURN PROCEDURES.

    b. About 25 feet from the intersection, wait for a break in traffic and begin to angle left.

    c. Continue to angle left as you move forward until the front door is about 4-feet from the curb at the point you can sight down the curb line of the street you are turning onto.

NOTE: ON LONG WHEEL BASE POWER STEERING EQUIPPED BUSES, CONTINUE 3-FEET BEYOND THE CURB LINE OF THE STREET YOU ARE TURNING ONTO.

    d. On wide rounded turns, maintain 3-feet curb clearance approaching the turn. Let the arch of the corner curve widen the distance between the front doors of the bus and the right curb to 4-feet at the starting point of the turn.

2. Second lane right turn alongside parked vehicles:

    a. Proceed straight forward and maintain 3-feet clearance from parked vehicles until you can sight down the curb line of the street you are turning onto.

b. To maintain 3-feet clearance between the right rear wheel of the bus and the left front bumper of a vehicle parked close to the corner may require moving beyond the curb line to start the turn.

c. Vehicles parked about a bus length from the intersection will require the start of a lane change prior to the turn. In this situation, clear the last parked vehicle, than angle toward the curb until the front door is about 4-feet from the curb when you can sight down the curb line of the street you are turning onto.

NOTE: BE PREPARED TO MAKE A SERVICE STOP SHORT OF THE CROSSWALK.

OBSERVATIONS

1. Approaching the intersection, observe the turning situation:

   a. Narrow streets - space to complete the turn.
   b. Intersecting streets - crosswalks/sidewalks.
   c. Traffic signals - lane indicators

NOTE: BE VERY CAUTIOUS WHEN TWO RIGHT TURN LANES ARE INDICATED.

   d. Islands - dividers.

2. Preparing to turn, observe:

   a. Pedestrians, vehicles and obstacles in the path of the turn.

   b. Adjacent left lane in front and along side for vehicles intending to make a right turn.

   c. Ahead for steady movement of traffic in front and vehicles turning left from the opposite direction.

3. While turning, observe:

   a. Left and left front for approaching vehicles or pedestrians in the crosswalks.

   b. Watch for front overhang; be especially cautious and prepared to stop if front of the bus crosses the center line of street you are turning onto.

   c. Use right side and interior mirrors to check clearance from curb, fixed objects and pedestrians.

d. Narrow streets and close clearances require special caution to distribute attention between left front corner and right rear side of the bus.

NOTE: THE LEFT FRONT CORNER AND RIGHT REAR SIDE OF THE BUS ARE POINTS OF IMMINENT DANGER IN A RIGHT TURN. TAKE NO CHANCES; STOP AND CHECK IF UNSURE OF CLEARANCES.

SPEED

1. Reduce speed and be prepared for service stop approaching the turn.

2. Use brake or accelerator to smoothly control speed at 3-5 miles per hour in the turn.

3. Have foot on the brake pedal if speed exceeds 3 miles per hour.

4. Resume operating speed after completion of the turn.

STEERING

1. Start turning right when you can sight down the curb lane of the street you are turning onto.

REMEMBER: The right rear wheel must clear parked vehicles and other obstacles even if it requires moving beyond the curb line before starting the turn.

2. On wide rounded turns, start turning right when the arch of the corner curve widens the curb clearance to 4-feet.

3. Use steady hand-over-hand steering motion to time and coordinate rate of turn to speed of the bus.

4. Achieve maximum turning angle when right rear wheel clears the corner by 6-12 inches or parked vehicles by 3-feet.

5. Begin to straighten out:

   a. In the curb lane when the center divider of the bus windshield is over the white line to the left of the curb line, the right front corner of the bus will be approximately 6-feet from the right curb.

   OR

   b. In the second lane when the right rear wheel of the bus safely clears the left rear of the last parked vehicle on the street you are turning onto.

6. Continue to straighten out in your driving lane and maintain 3-feet clearance from curb or parked vehicles after completion of the turn.

90° Right Turn



Wide Rounded Right Turn



Parked Vehicles Before The Turn



Parked Vehicles Before And After The Turn



Parked Vehicle After The Turn

120° Right Turn





These illustrations are examples of right turns under normal traffic conditions. Parked vehicles, narrow streets, traffic islands and obstacles may affect the angle of the turn.



RECEIVED FROM
DEPT OF EMPLOYMENT
SERVICES

2007 AUG 28 AM 11:41

OFFICE OF THE GENERAL
COUNSEL

**DISTRICT OF COLUMBIA**
**DEPARTMENT OF EMPLOYMENT SERVICES**
**CENTRAL ADJUDICATION BRANCH**
**609 H STREET, N.E. SUITE 341**
**WASHINGTON, D.C. 20002**

## DETERMINATION BY CLAIMS EXAMINER

**Social Security Number:** 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

**CLAIMANT:**

MICHELLE N FERGUSON
4020 LIVINGSTON ROAD SE #303
WASHINGTON, DC - 20032-2906

**EMPLOYER:**

WMATA
600 5TH ST NW RM 2D-05
WASHINGTON, DC - 20001-2610

**ISSUE:**
**DISCHARGED FOR MISCONDUCT**

You are hereby notified of the following determination disqualifying you from the receipt of benefits beginning 01/28/2007 to indefinite or until such time as you have been employed in each of ten (10) weeks (whether or not consecutive), have earnings from this employment equal to not less than ten (10) times your Weekly Benefit Amount, and become unemployed through no fault of your own.
**D.C. Code, Title 51-110(b)(1).**

**REASON FOR DETERMINATION:**
You were discharged from your job with your most recent employer because you were involved in a preventable major accident resulting in a fatality of a pedestrian. This major accident was not in the best interest of the employer. Therefore, it is considered that you were discharged for misconduct occurring in your most recent work.
**Gross misconduct has been established.**

**DECISION:**
**Therefore, the claimant listed herein has been determined ineligible for unemployment benefits.**

Antoinette Carter
Claims Examiner

I certify that a copy of this document was mailed to the employer/claimant at the above address on 2/12/2007.

Signature

SEE THE ENCLOSED NOTICE OF APPEAL RIGHTS

Exhibit 3

6/28/06

004733

Government of the District of Columbia

Department of Employment Services

Office of Unemployment Compensation o 609 H Street, N.E. o Washington, D.C. 20002

# REQUEST FOR SEPARATION INFORMATION

Date: 2-1-07

The individual named below has filed an initial claim for unemployment benefits effective 1-28-07 and indicated that you are the employer for whom his/her last performed 30 days work.

Claimant's Name: Michelle Ferguson SSN: 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

The claimant indicated that the reason for separation was: Misconduct

Under D.C. Code 46-111, a claimant will be disqualified if it is determined that he/she left the last 30 work day employer voluntarily without good cause connected with the work or was discharged for misconduct occurring in the course of the work for the last 30 work day employer.

Please complete items 1 through 3, sign, date and return by mail or fax within 7 days of the date displayed above to:

CENTRAL ADJUDICATION BRANCH
609 H STREET NE - ROOM 304
WASHINGTON, D.C. 20002
TELEPHONE : (202) 698-~~5199~~ 8182
FAX: (202) 698-5707

[illegible]

1. Dates of Employment: First Day Worked 9/6/02; Last Day Worked 6/8/06

2. Reason for Separation: (Check One):

☐ Laid Off for Lack of Work ☐ Left Voluntarily ☒ Discharged for Cause ☐ Labor Dispute

☐ Other If reason for separation checked is other than lack of work, explain in detail.

Ms Ferguson was involved in a preventable major accident resulting in a fatality of pedestrian.

[illegible] If additional space is needed, please attach a separate sheet. Note: You may also attach any documents relating to the reason for separation.

3. Did this person receive, or is he/she entitled to receive Severance Pay? Yes ☐ No ☒

If yes, indicate Total Amount ______; period covered by severance: From ______ To ______

Signature: [signature]

Print Name: Roberta Hamilton

Title: HR Admin

Date: 2-7-07

Telephone: 202 962 2397

JOB SERVICE "Helping People Help Themselves"

ESREQA.FRM

Exhibit 3






## Separation Case Notes - T1 Transaction

| SSN: 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 | Name: MICHELLE N FERGUSON |
| --- | --- |

per call to claimant 2-2-07 202-561-0904 10:55am stated she was terminated because she was a bus driver and she hit and killed a pedestrian, claimant stated it wasnt her fault. the pedestrian ran infront of the bus. they call this preventable major. any accident you are terminated from metro. a.carter.

per fax from employer roberta hamilton (hr admin)202-962-2397 2-7-07 states the claimant was terminated because she was involved in a preventable major accident resulting in a fatality of a pedestrian. a.carter

Save | Cancel






Exhibit 3

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

**SUBPOENA IN A CIVIL CASE**

V.

Fenichel v. WMATA, et al.

Case Number:[1] 1:07-cv-00768-JR

TO: Eugene Irvin, Esquire
D.C. Unemployment Compensation Program
64 New York Avenue NE, Suite 3000, Room 3133
Washington, DC 20002

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
The entire unemployment file for Michelle Ferguson's Unemployment Compensation claim, which occurred after she was terminated from the Washington Metropolitan Area Transit Authority in June of 2006. The file should include, but not be limited to, all documents that were filed by any party and the written decisions granting/denying benifits.

| PLACE | DATE AND TIME |
|---|---|
| Bruce J. Klores & Associates<br>1735 20th Street, N.W., Washington, DC 20009 | 9/24/2007 10:30 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] Attorney for Plaintiff | 8/24/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Scott M. Perry, Esquire
Bruce J. Klores & Associates, 1735 20th Street, N.W., Washington, DC 20009 -- (202) 628-8100

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

Exhibit 4

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 8/24/07 | D.C. Unemployment Compensation Program 64 NY Ave., N.E., Suite 3000, Room 3133 Washington, DC 20002 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Eugene Irvin, Esq. | Hand |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Lawrence L. Mattier | Paralegal |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 8/24/07
DATE

[signature]
SIGNATURE OF SERVER

1735 20th St. NW
Washington, DC 20009
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# GOVERNMENT OF THE DISTRICT OF COLUMBIA

**Department of Employment Services**



**Office of the General Counsel**




**September 13, 2007**

Mr. Scott M. Perry, Esquire
Bruce J. Klores & Associates
1735 20th Street, N.W.
Washington, D.C. 20009

**Re: Fenichel v. WMATA, et al**
**Subpoena for Unemployment Compensation Records**

Dear Mr. Perry:

This will respond to the subpoena issued in the above referenced case on August 24, 2007 directing the District of Columbia Department of Employment Services to produce the entire unemployment compensation claim file for Michelle Ferguson, formerly employed by the Washington Metropolitan Area Transit Authority, by September 24, 2007.

Enclosed are copies of the District of Columbia Office of Administrative Hearings Final Order and the Determination by the Claims Examiner in the Ferguson case... This constitutes the full extent of requested materials that are legally releasable. D.C. Official Code §51-113(f) (2001) (copy enclosed) generally precludes disclosure of employment compensation records outside of the unemployment process. This request does not include any indication that the records are being sought for use in an unemployment claim or that the case noted above is litigation between the identical parties involved in an unemployment claim filed by Ms. Ferguson. *Cf Herrod v. Peoples Drug Stores*, 417 F. Supp. 747 (D.C. 1976).

If you have contrary or additional factual information that is relevant to this matter, please submit it to me and the matter will be reviewed.

Exhibit 5

If you have any questions concerning this response, please contact me directly at (202) 671-1195.

Sincerely,

Eugene E. Irvin
General Counsel
Department of Employment Services

Enclosures