UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBERT R. FENICHEL, M.D. | ) | |
| Individually, and as Personal | ) | |
| Representative of the | ) | |
| Estate and Next of Kin of | ) | |
| EMILY S. FENICHEL, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07-CV-00768-JR |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON METROPOLITAN | ) | |
| AREA TRANSIT AUTHORITY, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT
WMATA'S MOTION FOR PROTECTIVE ORDER**

Plaintiff, through counsel and pursuant to Fed. R. Civ. P. 26, hereby opposes Defendant

Washington Metropolitan Area Transit Authority's ("WMATA's") motion for a protective

order. The issues raised in WMATA's motion were discussed with the Court during a

telephone conference on November 1, 2007. Despite the Court's ruling that it was "strongly

inclined" to agree with Plaintiff's position, WMATA continues to refuse to produce the

withheld and redacted documents.

WMATA asserts two bases for its continued refusal to produce relevant information

prepared in the ordinary course of business. First, WMATA asserts that Plaintiff's plainly-

worded discovery requests do not encompass the Employment Services Litigation.[1] Second,

---

[1] Plaintiff has a pending motion for partial summary judgment arising from the Employment
Services Litigation. In summary, WMATA terminated the bus driver after Mrs. Fenichel's
death, and denied the driver unemployment benefits because she exhibited "gross misconduct"
in causing Mrs. Fenichel's death. The driver fought this finding before an Unemployment
Claims Examiner, and again on appeal before an Administrative Law Judge. WMATA won at

WMATA claims that the so-called "self-evaluative" privilege gives it blanket authority to withhold damaging documents.  As Plaintiff demonstrates within, his discovery requests encompass the Employment Services Litigation, and the "self-evaluative" privilege, to the extent it exists at all, provides no shield for WMATA.  In short, WMATA's motion provides no basis for the Court to reverse the opinion it expressed at the teleconference allowing for discovery of the withheld information.

**Factual Statement**

Plaintiff has issued discovery to WMATA seeking ordinary business records and information relating to the death of Mrs. Fenichel.[2]  Plaintiff has not requested any documents prepared by a WMATA safety committee, and WMATA makes no claims that a safety committee was formed to examine this death.  Rather, Plaintiff merely seeks documents that are prepared in the ordinary course of business after any WMATA incident.

Given that the Court is well aware of the facts of this case, Plaintiff briefly restates only the salient facts.  On June 8, 2006, as Emily Fenichel was walking within the crosswalk (undisputed) across Wisconsin Avenue, N.W., WMATA bus driver Michelle Ferguson made a right-hand turn onto Wisconsin Avenue and ran Mrs. Fenichel over (undisputed).  Wedged under the bus, but conscious (undisputed), Mrs. Fenichel suffered horrifically before dying approximately one hour later.  WMATA fired Ms. Ferguson for her role in causing Mrs. Fenichel's death.  WMATA determined that the bus driver violated WMATA driving rules and regulations, and the principles of safe driving.  After reviewing the evidence, the Department of

---

both levels, arguing that its bus driver ignored safety rules and regulations, thereby causing the death.  Plaintiff refers to this litigation as the "Employment Services Litigation."

[2]  Plaintiff's discovery requests, and WMATA's answers thereto, are attached as **Exhibit A.**

Employment Services and, subsequently on appeal an Administrative Law Judge, upheld the

termination on this basis.  Yet, in this lawsuit WMATA denies any negligence by its driver.

<u>**ARGUMENT**</u>

I.    **PLAINTIFF'S DISCOVERY REQUESTS PLAINLY ENCOMPASS DOCUMENTS FROM THE EMPLOYMENT SERVICES LITIGATION**

WMATA first argues that it is not required to provide documents and information

regarding the Employment Services Litigation because Plaintiff has not requested them.  This

argument borders on the frivolous.  The wording of Plaintiff's Interrogatory No. 12 and

Request No. 11 encompass those documents.

Interrogatory No. 12 asked:

> If the bus operator was charged with any offenses **or was disciplined/terminated** by WMATA arising out of the occurrence, state the nature of the charges, the court and case number, and the disposition of the charges/discipline.

(Emphasis added.)

WMATA responded to the Interrogatory by stating that its driver "was not charged with

any offense," and then otherwise objected.  WMATA ignores the portion of the interrogatory

seeking information about "discipline" and "termination."  The Employment Services

Litigation arose from, and concerned nothing other than, the bus driver's discipline and

termination.  There can be no question that this interrogatory seeks information regarding the

Employment Services Litigation.

Document Request No. 11 sought:

> **Any and all documents**, photographs, claims evaluations or copies of checks for loss or damage, **pertaining to Plaintiff's claim**.

This plainly-worded request seeks all documents related to Plaintiff's claim. Documents from the Employment Services Litigation, in which WMATA discusses the facts of the accident and its causes, clearly "pertain" to Plaintiff's claim.

Even if it could be argued that the Employment Services Litigation documents are not encompassed by this Interrogatory and by this Request, WMATA ignores the fact that Plaintiff specifically asked for the Employment Services Litigation information in its Second Set of Document Requests. Specifically, Document Request 2 states:

> Produce the entire unemployment file with regard to Ms. Ferguson [the bus driver] including all documents in which you, or anyone on your behalf, took a position as to whether Ms. Ferguson should be entitled to unemployment benefits. This should include all briefs, related documents filed or received by you, and any decisions rendered.

This document request specifically asked for the "unemployment file," and all documents relating to the Employment Services Litigation. WMATA never even responded to this request. Plaintiff has properly asked for the requested documents.[3]

## II.    TO THE EXTENT THAT A "SELF-EVALUATIVE" PRIVILEGE EXISTS, IT DOES NOT PROVIDE A BASIS TO WITHHOLD THE REQUESTED DOCUMENTS

WMATA next argues that it is entitled to withhold and redact numerous unidentified documents pursuant to the "self-evaluative" privilege. WMATA relied on this "privilege" to refuse to respond to, or object to, Interrogatories 1, 4, 8, 9, 12, 19, and Requests 6, 9, 10, 11 and 24. WMATA argues that public policy supports application of the "privilege" in this case, but

---

[3]    Plaintiff must note that these interrogatories and document requests were issued to WMATA on July 13, 2007 and on August 24, 2007. In the ensuing months, Plaintiff has sent several letters to WMATA seeking to revolve this dispute, he initiated multiple phone calls to resolve it, and then set up a conference with the Court to resolve the issue. All to no avail. All along, Plaintiff has informed WMATA that its position is delaying timely completion of discovery because Plaintiff cannot depose its witnesses until he receives these documents. Plaintiff asks that the Court consider this if, as he expects, Plaintiff seeks a discovery extension.

it provides the Court and Plaintiff with no information as to why the privilege should attach to the particular documents withheld. Rather, it appears that WMATA has simply withheld/redacted those documents that are detrimental to WMATA's case by claiming they are privileged.

In short, WMATA has not met its heavy burden of establishing that public policy justifies denying Plaintiff his proof.

### A. The Privilege, To The Extent It Is Recognized, Does Not Shield The Withheld Documents

Analysis of the "self-evaluative" privilege begins with Federal Rule of Evidence 501, which provides that unless statutory, privileges "shall be governed by the principles of common law as they may be interpreted by the courts of the United States in the light of reason and experience." As the Supreme Court has recognized, non-statutory privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 709 (1974); *see also Martin v. PEPCO,* 1990 U.S. Dist. LEXIS 11784, *1-2 (D. D.C. May 25, 1990) ("Courts . . .have long recognized that privileges contravene the fundamental principle that the public . . . has a right to every man's evidence . . . .").

No statute, federal or District of Columbia, creates a privilege for "self-evaluative" documents outside the medical arena.[4] Thus, to the extent that such a privilege exists, it is based on court decisions. While the D.C. Circuit has not squarely addressed the issue presented here, its opinions regarding the self-evaluative privilege note that its application is extremely

---

[4] For this reason, WMATA's multiple citations to medical malpractice cases in which peer review is at issue are inapposite because that privilege is engrained in law. *See, e.g.,* D.C. Code Ann. §44-805.

limited and rarely recognized. *See FTC v. TRW, Inc.*, 628 F.2d 207, 210 (D.C. Cir. 1980).[5]  In

*TRW,* the Court noted that:

> courts have appeared reluctant to enforce a qualified 'self-evaluative' privilege.  They typically concede its possible application in some situations, but then proceed to find a reason why the documents in question do not fall within its scope.

*Id.* at 210.  Indeed, it appears that the only occasion in which the D.C. Circuit might recognize

the narrow "privilege" is when it would truly affect future public-safety deliberations, and even

then, only when the Plaintiff's important need for the discovery is outweighed. *See*

*Mergentime Corp. v. WMATA,* 1991 U.S. Dist. LEXIS 11080, *10 (D. D.C. Aug. 6, 1991); *see*

*also Webb v. Westinghouse Elec. Co.,* 81 F.R.D. 431, 434 (E.D. Pa. 1978) (noting that courts

"have denied discovery only where the policy favoring exclusion of the materials <u>clearly</u>

<u>outweighed</u> the plaintiff's need.").  In other words, "the self-evaluative privilege is only to be

applied in <u>an extremely limited set of circumstances</u>. . . ."  *See Wade v. WMATA,* 2006 U.S.

Dist. LEXIS 16447, *16 (D. D.C. Apr. 5, 2006) (emphasis added).

        In order to avoid production of damaging documents, WMATA seeks to use the

privilege under the guise that disclosure would "chill" public safety changes.  But it provides

no support for its argument that a public, quasi-Governmental entity could ignore its

responsibility to the public simply to avoid compensating tort victims.  Moreover, there is no

evidence in this particular case that the withheld/redacted documents deal with anything other

than the facts of the accident and the actions taken by WMATA.

---

[5]  The *TRW* opinion also recognizes that the "self-evaluative" privilege arises from a D.C. medical malpractice case, *Bredice v. Doctors Hospital,* 50 F.R.D. 249 (D. D.C. 1970).  As explained in footnote 4, the "self-evaluative" privilege as to medical peer review is engrained in statutory law.

First, while any pedestrian death caused by a WMATA employee will, of course, touch upon public safety, were that sufficient to trigger the "self-evaluative" privilege, then WMATA could withhold all documents requested. Instead, the courts have made clear that the privilege will apply, if at all, only to those documents that truly are prepared to improve safety in the future, such as documents authored by a safety committee. *See, e.g., Laws v. Georgetown Univ. Hosp.,* 656 F. Supp. 824 (D. D.C. 1987) (noting that "self-evaluative" privilege extends to peer-review meetings whose sole purpose is to improve patient safety).

The documents and information requested here are ordinary business documents recording what took place, and what WMATA did as a result of what took place *to this particular driver*. WMATA has provided no evidence that the redacted/withheld information deal with *future* safety improvements. Indeed, the claim that disclosure of this information would "chill" public safety changes conflicts with WMATA's claim that it bears no responsibility for Mrs. Fenichel's death. If WMATA is arguing that it was not at fault for causing the accident, then no safety improvements need be made.

Second, as the Court has already pointed out, there is a difference between discoverability and admissibility. At this point, Plaintiff is merely seeking to discover the documents so that he can conduct depositions and expert discovery. *See Fann v. Giant Food, Inc.,* 115 F.R.D. 593, 596 (D. D.C. 1987) ("[E]ven if plaintiff's broad request yields some evidence that is not admissible, this does not bar a request that is calculated to lead to production of relevant matter."). No WMATA effort to improve safety will be "chilled" by production of these documents in discovery. Plaintiff has offered to enter into a reasonable protective agreement with WMATA. This will assure its privacy concerns. WMATA has refused that offer.

7

Third, to the extent that the "privilege" has been recognized, it has been applied on a document-specific basis, not to exclude entire categories of documents. WMATA had the burden in its motion to describe why each withheld/redacted document is subject to the privilege. It has not met this burden.[6]

**B.**    **The Privilege Does Not Apply To The Employment Services Litigation Documents Or To The Accident Report**

While Plaintiff maintains that WMATA cannot shield any of the withheld/redacted documents pursuant to the privilege, two categories of information and documents have no connection with the privilege, and must be produced.

The first category is comprised of information and documents prepared, submitted, and received in the Employment Services Litigation, wherein WMATA successfully argued that the bus driver was terminated for her actions arising from Mrs. Fenichel's death.

The Claims Examiner's and the Administrative Law Judge's Opinions regarding the discipline/termination of the bus driver (attached at **Exh. B**, and discussed at length in Plaintiff's pending motion for partial summary judgment) make clear that those submissions and representations squarely dealt with the facts underlying what caused Mrs. Fenichel's death. Specifically, the ALJ's Opinion relies heavily on the evidence provided by WMATA to substantiate the termination for failure to follow safety rules and the rules of careful driving. *See* Final Order, at **Exh. B** ("Robert Ballard, Transportation Superintendent, testified on behalf of [WMATA]"). WMATA's filings and representations in the Employment Services Litigation, and those submitted by the bus driver's counsel which are maintained in WMATA's files, are information that is likely to lead to the discovery of admissible evidence.

---

[6]    Plaintiff notes that he is hamstrung by WMATA's failure to prepare a privilege log, which Plaintiff long ago requested. Without that, Plaintiff is hard pressed to argue applicability of the privilege as to individual documents. This, alone, is a basis to order production.

WMATA cannot claim that its actions before this tribunal are subject to the "self-evaluative" privilege.  Indeed, this information was publicly disclosed at the hearing before the Administrative Law Judge.  It is not a reasonable position for WMATA to claim that its efforts to avoid paying unemployment compensation to its former employee is cloaked by the privilege.[7]

The second improperly redacted document is the WMATA Accident Report Form. (Attached at **Exh. C**).  The Accident Form is a document prepared in the ordinary course of business by a WMATA supervisor in conjunction with the bus driver.  It contains a narrative of the facts of the accident, and the actions taken as a result of the accident.

Two sections of the Accident Report Form are redacted; both sections apparently discuss fault for causing the accident.  The first redacted section indicates whether the accident was preventable, non-preventable, minor or major.  This information is relevant to Plaintiff's case because WMATA has asserted the defense of contributory negligence, *i.e.,* that the accident was not preventable.  To combat this defense Plaintiff is entitled to know whether WMATA's own investigation -- performed soon after the accident -- contradicts the defense it has asserted against Plaintiff.  While the admissibility of this information at trial can be debated at another time, Plaintiff is entitled to know what WMATA personnel concluded before he deposes them.

The second redacted section is in the "Summary of Employee Statement; Reviewer's Instructions to Employee."  WMATA has produced a portion of the narrative regarding the

---

[7]  Although this argument deals mainly with documents, WMATA should be required to answer the Interrogatories relevant to the Employment Services Litigation as well.  Those interrogatories request, among other things, the identity of all WMATA personnel involved in the Employment Services Litigation, whom Plaintiff may choose to depose.

facts of the accident, but has redacted the remainder of the text.  Plaintiff is entitled to know

what conclusions WMATA drew about the accident at the time of its investigation.

## **CONCLUSION**

WMATA concluded internally that its bus driver was at fault in causing Mrs. Fenichel's

death.  That is established by the Employment Services Litigation opinions.  In the present

case, WMATA has asserted that it bears no liability for Mrs. Fenichel's death.  If there are

documents that exist that shed light on WMATA's inconsistent positions, Plaintiff is entitled to

see them as he develops his case.  Moreover, the privilege, to the extent that it exists at all, does

not exist to shield damaging documents, which is precisely what WMATA is attempting to

accomplish here.  Any concerns WMATA has can be resolved via a protective order.

WHEREFORE, Plaintiff respectfully requests that the Court deny WMATA's motion

for a protective order and order WMATA to forthwith produce the withheld and redacted

documents.

Respectfully submitted,


BRUCE J. KLORES & ASSOCIATES, P.C.

By_____/s/ Scott Perry_____
    Bruce J. Klores (358548)
    Scott M. Perry (#459841)
    1735 20th Street, N.W.
    Washington, DC 20009
    P: 202-628-8100
    F: 202-628-1240
    Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ROBERT R. FENICHEL, M.D.       )
Individually, and as Personal       )
Representative of the       )
Estate and Next of Kin of       )
EMILY S. FENICHEL, Deceased,       )
       )
     Plaintiff,       )     Case No. **1:07-cv-00768-JR**
       )
v.       )
       )
WASHINGTON METROPOLITAN       )
AREA TRANSIT AUTHORITY, et al.       )
       )
     Defendants.       )
_____)

## <u>ORDER DENYING WMATA'S MOTION FOR PROTECTIVE ORDER</u>

The Court, having considered WMATA's Motion for Protective Order, and Plaintiff's

Opposition Thereto, hereby ORDERS that the motion is DENIED.

It is further ORDERED that WMATA shall forthwith produce all documents that it has

withheld and redacted pursuant to the "self-evaluative" privilege;

WMATA shall forthwith answer all interrogatories and document requests in which it

has asserted the "self-evaluative" privilege; and

WMATA shall forthwith produce all documents and answer interrogatories regarding

the Employment Services Litigation.

<br>

                          _____
                          United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

RECEIVED
AUG 2 ? 2007
BY:_____

| | |
|---|---|
| ROBERT R. FENICHEL, M.D., | : |
| Plaintiff, | : |
| v. | : Case No.: 1:07-cv-00768-JR |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al. | : |
| Defendants. | : |

**DEFENDANT WMATA'S ANSWERS TO
PLAINTIFF ROBERT FENICHEL'S INTERROGATORIES**

Defendant Washington Metropolitan Area Transit Authority ("WMATA") submits its Answers to Plaintiff Fenichel's Interrogatories as follows:

## PRELIMINARY STATEMENT

WMATA reserves the right to rely on any facts, documents, or other evidence which may develop or come to WMATA's attention. WMATA's Answers are set forth herein without prejudice to WMATA's right to assert additional objections or supplemental answers should WMATA discover additional information or grounds for objections. WMATA reserves the right to supplement or amend these answers at any time prior to trial of this action.

## INTERROGATORIES

1. Identify every person who was consulted or who otherwise participated in preparing the answers to these Interrogatories, identify all documents either consulted in answering these Interrogatories or otherwise relating to the information requested in these Interrogatories, and identify each person who presently has possession,

custody or control of each document.

**ANSWER:**

These Interrogatories are being answered by Pamela C. Wilkins, Acting Director Office of Risk Management and Designated WMATA Representative, located at 600 Fifth Street, NW, Washington, DC 20001. The Answers are not based on Ms. Wilkins' personal knowledge, as he is answering solely as WMATA's designated representative. WMATA objects to the extent this interrogatory seeks additional information on grounds of attorney-client privilege, attorney work product of counsel or the claims office, or WMATA's self-evaluative privilege. Without waiving these objections, see the accompanying documents.

2. If you contend that the Plaintiff, through any act or omission, either caused or contributed to the cause of the incident, please identify all facts upon which you intend to rely to support this contention and provide the names, last known address and telephone numbers of all individuals who have any information that supports or contradicts you contention in this respect. Please also provide any statements made by Plaintiff.

**ANSWER:**

Decedent Emily Fenichel, caused or contributed to this incident by entering the crosswalk against a flashing "don't walk" signal; walking into the path of the bus that was so close it was impossible for the driver to yield, and otherwise not keeping an appropriate lookout for her own safety.

3. Please state the name, business and residence address, business and

residence telephone number, and current occupation of each and every individual, known to you, who has any knowledge of the incident or who has taken any photographs or has actual or constructive possession of any photographs of the scene of the Incident.  (Please note the term photograph includes still photographs, video recordings or motion pictures of any kind.)

ANSWER:

The following persons may have been witnesses to the incident or its immediate aftermath:

(1)   Michelle N. Ferguson

(2)   MPD Detective Michael Miller (Major Crash Unit)

(3)   MPD Officer Sandra Connor, Badge #3700

(4)   MPD Officer William Belton, Badge #4272

(5)   Mr. Mathew Clark, 2712 Wisconsin Ave., NW #406, Washington, D.C.

(6)   Mr. Chris McGuire, 4313 Yuma Street, NW, Washington, D.C.

(7)   Mr. Luis Urbina, 4001 Nebraska Ave., NW, Washington, D.C.

(8)   Jackie Benson, WRC News Reporter

WMATA Street Supervisors Norman Williams and Paul Ways took photographs of the scene on the date of the accident. The photographs are currently in the possession of the undersigned counsel for WMATA.  Jim Redding and Darryl Suggs from WMATA's Office of Safety were also at the scene.  To WMATA's knowledge, Officers from Metropolitan Police Department also took photographs of the scene of the accident.  A Mr. Kelley and Transit Police Officer Shukri Pettigrue were also at the

scene after the incident occurred. <u>See also</u> the persons listed on the accompanying Transit Police Event Report. WMATA objects to the extent this Interrogatory seeks additional information on grounds of overbreadth.

4. If you have possession, custody, control, access to or knowledge of the existence of any maps, plats, drawings, diagrams, surveys, measurements, reports of statements describing, depicting or concerning the Incident, then as to each such item please state the nature or character of the item, its present location and the name, address and phone number of the individual having possession, control, access to or knowledge of the described item.

**<u>ANSWER</u>:**

<u>See</u> the accompanying documents. WMATA objects to the extent this Interrogatory, or any other discovery request, seeks any documents or any other material protected by the attorney-client privilege, work product of counsel or the claims office, or WMATA's self-evaluative privilege.

5. Give the names and addresses of all persons known to you or your attorney who were eyewitnesses to the accident complained of and state the location of each eyewitness at the time of the accident, so far as is known to you or your attorney.

**<u>ANSWER</u>:**

Upon information and belief, Ms. Ferguson, Officer Connor, Officer Belton, Mr. Clark, Mr. McGuire, and Mr. Urbina may have been eyewitnesses to the incident itself. <u>See also</u> Answer to No. 3, <u>supra</u>.

6. Give a complete statement of the facts as to how the bus operator contends

4

that the occurrence took place including the exact location of the occurrence and the direction in which all operators were proceeding.

**ANSWER:**

Metrobus Operator Michelle Ferguson exited WMATA garage onto 44th Street and made a right turn on Jenifer Street heading eastbound. As she entered the intersection of Wisconsin Avenue from Jenifer Street, she had a green light. Decedent Emily Fenichel, had a "don't walk" signal with only several seconds left at the time she left the curb. Despite making appropriate observations, the bus operator could not see the decedent prior to the accident because of the particular interplay of the interior of the bus, the height and location of Decedent at particular times relevant to the position of the Ms. Ferguson. (See report of Michael Miller, Detective, Major Crash Unit, attached hereto). The Metrobus was completing a right turn onto southbound Wisconsin Avenue when the accident occurred.

7. If a report with respect to the occurrence was made in the ordinary course of business, including investigative reports, state the date of the report and identify the person who made the report and the report's custodian.

**ANSWER:**

See the accompanying reports (redacted where indicated). WMATA does not concede that these reports were made in the ordinary course of business.

8. State whether the bus operator or any WMATA employees gave any written statements about the happening of the accident and if so, state to whom such statement was given and the date; unless you claim privilege, attach a copy of such

statement to your answers.

**ANSWER:**

Yes. <u>See</u> the accompanying documents (redacted where indicated) and Answer No. 4, <u>supra</u>.

9. Identify all persons who have given statements that relate in any way to this case.

**ANSWER:**

<u>See</u> the accompanying reports and Answer No. 4, <u>supra</u>.

10. Identify the bus number and route for the WMATA bus that is the subject of this lawsuit as well as the bus manufacturer, vehicle identification number, year of manufacturer and size of bus. Please include the last date and time the bus underwent a safety inspection and describe what that inspection consisted of.

**ANSWER:**

Bus # 3916, 1997 Orion Model 05.501, Tag # B37901. The Metrobus was not operating on any revenue routes. <u>See</u> the accompanying Vehicle Maintenance Record.

11. If the bus operator consumed any alcoholic beverage, drugs (prescriptive or otherwise), and/or medication within the 24 hour period immediately before the collision, state the nature thereof, the purpose therefore, the name and address of the doctor who prescribed the medication, if any, the dosage prescribed, the amount taken or which was to be taken within such period. As to alcohol, state the amount consumed, and identify all persons present during said consumption.

**ANSWER:**

WMATA is unaware of any such usage.

12.  If  the  bus  operator  was  charged  with  any  offenses  or  was disciplined/terminated by WMATA arising out of the occurrence, state the nature of the charges, the court and case number, and the disposition of the charges/discipline.

**ANSWER:**

**The bus operator was not charged with any offense.  WMATA objects based on its self-evaluative privilege and relevancy to the extent this interrogatory, or any other discovery request, seeks information related to WMATA's internal disciplinary process.**

13. State whether at any time during the fifteen year period preceding the date of your answers to these interrogatories, the bus operator has been convicted of any crime, including minor traffic offenses.  If so, for each conviction identify the court in the which the bus operator was convicted and state the amount of any fine and the date and length of any incarceration imposed.

**ANSWER:**

**WMATA is unaware of any such convictions.**

14. If you are covered by any liability insurance policy which may, or does, indemnify Defendant for any of the allegations contained in the Complaint in this action, for each such insurance policy, including any and all excess or umbrella liability policies, please provide the following information.

a.      the name of each insurance company providing such policies;

b.      the effective date of each policy; and,

7

c.    the policy limits or amount of each such policy.

**ANSWER:**

**WMATA is self-insured for the purposes of this litigation.**

15. Please state the date upon which you hired Bus Driver Ferguson and describe the process through which she was hired, including all training provided by WMATA and all courses taken by Ferguson.

**ANSWER:**

**Ms. Ferguson was hired on September 6, 2002 after an application and interview process. She successfully completed WMATA orientation process and six weeks of training. WMATA objects to the extent this Interrogatory seeks additional information because it is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. WMATA enjoys immunity from suit for its governmental/discretionary decisions related to all employment related decisions, such as hiring, training, and supervision. See Beebe v. WMATA, 129 F.3d 1283 (D.C. Cir. 1997); Burkhart v. WMATA, 112 F.3d 1207, 1215 (D.C. Cir. 1997); Dove v. WMATA, 402 F. Supp. 2d 91 (D.D.C. 2005).**

17. Identify each expert witness that you will call as a witness in this litigation. State in complete detail the substance of what each expert will testify to including each and every opinion each expert will give; and the facts underlying each such opinion, and identify all documents that your expert will rely upon.

**ANSWER:**

**WMATA has not yet determined what experts it will call in this litigation, but**

will identify such experts in accordance with the Court's scheduling order.

18. Describe in detail any property damage to the WMATA vehicle as a result of this incident.

<u>ANSWER:</u>

None.

19. If at any time since the date of the Plaintiff's injuries you ever requested or conducted any investigation into the bus accident referred to in the Complaint, please state the name and address of all such investigators you have contacted, the dates of such investigations or investigators.

<u>ANSWER:</u>

<u>See</u> the accompanying documents and Answer No. 4, <u>supra</u>.

20. Please identify any policies, rules, procedures, regulations or protocols of the Defendant relating to the screening and hiring of new employees and identify the reason for any such policy, rule, procedure, regulation or protocol and the individual(s) responsible for promulgating such policy, procedure, regulation or protocol.

<u>ANSWER:</u>

WMATA objects to this Interrogatory because it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. WMATA enjoys immunity for claims of negligent hiring, training, supervision. <u>See</u> <u>Beebe</u>; <u>Burkhart</u>; and <u>Dove</u>, <u>supra</u>.

20. Please identify  policies, rules, procedures, regulations or protocols of the

9

Defendant relating to the training of new employees and any ongoing or in-service training for employees and identify the reason for any such policy, rule procedure, regulation or protocol and the individual(s) responsible for promulgating such policy, procedure, regulation or protocol.

    <u>ANSWER</u>:

    <u>See</u> the accompanying documents. WMATA objects to the extent this Interrogatory seeks additional information because it is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. WMATA enjoys immunity for claims of negligent hiring, training, and supervision. <u>See</u>, <u>Beebe</u>; <u>Burkhart</u>; and <u>Dove</u>, <u>supra</u>.

    21. Please identify any policies, rules, procedures, regulations, standards or protocols of the Defendant relating to employee performance reviews, evaluations and/or appraisals and identify the reason for any such policy, rule, procedure, regulation or protocol and the individuals(s) responsible for promulgating such policy, procedure, regulation or protocol.

    <u>ANSWER</u>:

    WMATA objects to the extent this Interrogatory seeks additional information because it is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. WMATA enjoys immunity for claims of negligent hiring, training, and supervision . <u>See</u> <u>Beebe</u>; <u>Burkhart</u>; and <u>Dove</u>, <u>supra</u>. Subject to and without waiving the objection, <u>see</u> <u>also</u> the accompanying documents.

    22. Please state whether any complaints were filed against Bus Driver Ferguson

in the five (5) years preceding the incident and, if so, describe the nature of those complaints. In doing so, please describe any investigations conducted by WMATA regarding any complaints filed against Bus Driver Ferguson in the five (5) years preceding the incident and please describe any disciplinary action taken by you.

ANSWER:    WMATA objects to the extent this Interrogatory seeks additional information because it is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence. WMATA enjoys immunity for claims of negligent hiring, training, and supervision. See Beebe; Burkhart; and Dove, supra.

23. Please identify all WMATA drivers that have been cited for infractions for moving violations over the past three years and provide the number of infractions and the nature of the infractions.

ANSWER:

WMATA objects to the extent this Interrogatory seeks additional information that is irrelevant, immaterial, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

24. Was the bus operator using her cell phone or other PDA at or near the time of the accident? Regardless of the answer, please provide Mrs. Ferguson's cell phone number and the cellular provider at the time.

ANSWER:

To WMATA's knowledge, no. WMATA is not in control or possession of Mrs.

Ferguson's cell phone number and/or cellular provider at the time of the accident.

25. Please identify all lawsuits currently pending against WMATA where a WMATA bus operator is alleged to have caused a fatality or other permanent injury. Provide the case name, number, court and attorneys involved.

**ANSWER:**

WMATA objects to the extent this Interrogatory seeks additional information that is irrelevant, immaterial, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

26. Are you aware of any prior accidents/incidents at the intersection of Jennifer Street, N.W. and Wisconsin Avenue, N.W. involving a WMATA employee?

**ANSWER:**

WMATA objects to the extent this Interrogatory seeks additional information that is irrelevant, immaterial, not reasonably calculated to lead to the discovery of admissible evidence. Moreover, this request is overly broad , unduly burdensome, and not reasonably limited in time or scope.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING ANSWERS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. EXECUTED ON AUGUST _24th_, 2007.**

_Pamela C. Wilkins_

Pamela C. Wilkins, Acting Director, Office of
Risk Management,
Third Party Liability and
Designated WMATA Representative
600 Fifth Street, N.W.
Washington, DC  20001

12

Gerard J. Stief #925933
Associate General Counsel
(202) 962-1463

Janice L. Cole #440351
Associate General Counsel
(202) 962-2543
600 Fifth Street, N.W.
Washington, D.C.  20001
Attorneys for Defendant WMATA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___24___ day of August 2007, a copy of the

foregoing **WMATA's Answers to Interrogatories** was mailed to:

Bruce J. Klores #358548
Scott M. Perry #459841
Bruce J. Klores & Associates
1735 20th Street, NW
Washington, DC 20009
202-628-8100
Attorneys for Plaintiffs

David P. Durbin #928655
1100 Connecticut Avenue, NW
Suite 600
Washington, DC 20036
202-496-2804
Attorney for Defendant DaimlerChrysler
Commercial Buses North America, Inc.
f/k/a Orion Bus Industries, Inc.

William J. Cremer, Esq.
Bradley M. Burd, Esq.
Cremer, Kopon, Shaughnessy & Spina, LLC
Suite 3300
180 North LaSalle Street
Chicago, IL 60601

13

312-276-3818
Attorneys for Defendant DaimlerChrysler
Commercial Buses North America, Inc.
f/k/a Orion Bus Industries, Inc.

_____
Janice L. Cole #440351

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
AUG 2 4 2007
BY: ------------------

ROBERT R. FENICHEL, M.D.,      :
                               :
              Plaintiff,       :
                               :
      v.                       :      Case No.: 1:07-cv-00768-JR
                               :
WASHINGTON METROPOLITAN        :
  AREA TRANSIT AUTHORITY, et al. :
                               :
                               :
              Defendants. :

**DEFENDANT WMATA'S RESPONSES TO PLAINTIFF'S**
**FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Defendant Washington Metropolitan Area Transit Authority ("WMATA") submits its Responses to Plaintiff Fenichel's First Request for Production of Documents as follows:

**REQUESTS**

1. All WMATA Standard Operating Procedures that relate to, in any way whatsoever, the facts and circumstances of this accident, including, but not limited to, interaction with pedestrian.

**RESPONSE:**

**See the attached sections of the WMATA Standard Operating Procedures.**

2. Each document subpoena issued by you in this case.

**RESPONSE:**

**None at this time.**

2

3. Each subpoena issued by you in this case.

**RESPONSE:**

**None at this time.**

4. Any and all documents of any nature, including invoices, checks, correspondence, reports, or documents of any type which pertain to medical record reviews and/or peer reviews conducted by the Defendant WMATA or at the request of the Defendant WMATA with respect to the medical records of Emily Fenichel.

**RESPONSE:**

**WMATA objects to the extent that it requests information regarding experts WMATA may have consulted with but does not intend to name as its expert; subject to said objection, none.**

5. Any and all insurance polices, including umbrella or excess polices, which may or do provide WMATA with insurance coverage for the allegations set forth in this lawsuit.

**RESPONSE:**

**See attached Certificate of Self Insurance.**

6. A copy of all reports made in the ordinary course of business including, but not limited to unredacted WMATA Motor Vehicle Accident Report, Street Supervisor Accident Report(s), and the like.

**RESPONSE:**

**See the attached documents (redacted where indicated based on WMATA's self-evaluative privilege).  See also Answer to Interrogatory No. 4.  The production of these**

3

documents is not an acknowledgment that these reports were made in the ordinary course of business.

7. Original color photographs of the location of the incident, the parties to the lawsuit and/or the vehicle(s) involved in the incident.

RESPONSE:

See attached photocopies of photographs from the scene of the accident. The originals of these color photographs are available for inspection at a mutually convenient time.

8. A copy of any and all statements allegedly made by Emily Fenichel.

RESPONSE:

See the attached MPD Traffic Accident Report and Major Crash Unit Report.

9. Any handwritten and/or typed statement made by the WMATA bus operator relating to the incident that is the subject of this lawsuit.

RESPONSE:

See the attached documents and Answer to Interrogatory No. 4.

10. A copy of any and all statements of any person claimed to be a witness to all or part of the accident in question.

RESPONSE:

See the attached documents and Answer to Interrogatory No. 4.

11. Any and all documents, photographs, claims evaluations, or copies of checks for loss or damage, pertaining to Plaintiffs' claim.

RESPONSE:

4

**See** the attached documents. WMATA objects to the extent this request seeks any additional information protected by the attorney-client privilege, privilege for work product of counsel or the claims office, or WMATA's self-evaluative privilege.

12. Any and all documents of any nature, including repair estimates, photographs, invoices, checks, or other documents of any type which pertain to claims for damage in connection wit the incident in question.

**RESPONSE:**

**WMATA is unaware of any such documents regarding property damage.**

13. A copy of any and all photographs, plats, and/or diagrams made concerning the accident in question, including but not limited to the vehicles involved, the persons involved, the persons involved, the persons involved and/or the location involved.

**RESPONSE:**

**See** the attached documents and copies of photographs. WMATA objects to the extent this request seeks attorney work product.

14. A copy of any and all reports, films, audiotapes, videotapes, photography, and/or tracings relating to this accident including the results of any police investigation obtained by WMATA.

**RESPONSE:**

**See** the attached documents. WMATA objects to the extent this request seeks attorney work product.

15. A copy of any and all reports, films, audiotapes, videotapes, and/or tracings relating to this accident including the results of any police investigation obtained by

5

WMATA.

**RESPONSE:**

**WMATA is attempting to obtain the WRC-TV video taken at the scene and will make it available for review if received.**

16. Any videotapes or depictions of the Plaintiff or the accident that are in your possession or that are attainable by you, including any surveillance videotapes.

**RESPONSE:**

**See Response No. 15, supra.**

17. Copies of property damage estimates.

**RESPONSE:**

**WMATA is unaware of any such information.**

18. Photocopy of front and back of the WMATA bus operator's drivers license and/or CDL License and a copy of the operator's medical certificate in effect at the time.

**RESPONSE:**

**See the attached photocopy of the driver's license. WMATA objects on grounds of employee privacy to the extent it seeks medical information regarding the bus operator.**

19. Copy of any other document that you intend to refer to at trial. Compliance herewith can be accomplished by mailing copies of all documents to Plaintiff's counsel.

**RESPONSE:**

**WMATA will designate its trial exhibits in the pretrial statement as per the rules.**

See also the accompanying documents.

20.  Please produce a copy of any other document that you intend to refer to at trial. Compliance herewith can be accomplished by mailing copies of all documents to Plaintiff's counsel. Please contact the undersigned prior to the production date if you do not desire to mail copies.

RESPONSE:

See Response No. 19, supra.

21. All reports from any expert that you intend to call as a witness at trial.

RESPONSE:

WMATA will identify its proposed expert witnesses in accordance with the Court's scheduling order, and provide any such reports at or after that time.

22. All documents consulted and/or relied upon in responding to Plaintiffs' First Set of Interrogatories.

RESPONSE:

WMATA objects to this request to the extent it seeks documents protected under the attorney-client privilege and/or as attorney work product. Without waiving these objections, see the accompanying documents.

23. All exhibits that you intend to introduce at trial.

RESPONSE:

See Response No. 20, supra.

24. A complete copy of the file maintained by WMATA pertaining to the claims made by the Plaintiff and/or the incident in question.

7

**RESPONSE:**

WMATA objects on grounds of this request seeks information protected by the attorney-client privilege, work product of counsel and the claims office, and WMATA's self-evaluative privilege. Without waiving these objections, see the attached documents.

25. Any and all documents and records pertaining to the purchase of the vehicle involved in the incident.

**RESPONSE:**

See the attached Solicitation, Offer and Award. WMATA objects to the extent this request seeks additional documents because it is overly broad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.

26. Any and all documents pertaining to the repair and/or maintenance of the vehicle that was involved in the incident for the three (3) years prior to and including the date of the incident.

**RESPONSE:**

See the Vehicle Maintenance History. WMATA objects to the extent this request is irrelevant, immaterial, not reasonably calculated to lead to the discovery of admissible evidence, and unduly burdensome.

27. Any and all documents or materials of any nature pertaining to any and all repairs and/or maintenance performed on the subject vehicle at any time between the incident and the present.

**RESPONSE:**

<u>See</u> Response No. 26 and the attached Vehicle Maintenance History.

28. Any and all safety inspections that were performed on the vehicle in question during the six (6) months prior to and including the incident.

**RESPONSE:**

<u>See</u> Response No. 26 and the attached Vehicle Maintenance History.

29. Any and all "line sheets" or similar documents maintained on the vehicle in question.

**RESPONSE:**

**WMATA does not understand the question.** <u>See</u> <u>also</u> Response No. 26.

30. The complete personnel file of the Bus Driver Michelle Ferguson. This includes all employment applications, disciplinary actions taken while a WMATA employee, performance reviews, test scores, photographs and any other materials of any nature maintained in this individual's personnel file and/or which otherwise pertain in any manner to this individual.

**RESPONSE:**

**WMATA objects because this request is irrelevant, immaterial, not reasonably calculated towards the discovery of admissible evidence, and infringes on the employee's privacy. Said request may be violative of HIPAA. WMATA enjoys sovereign immunity from suit for its governmental/discretionary decisions including all employment related decisions, assignments, negligenthiring, training, and supervision. <u>See</u> <u>Beebe v. WMATA</u>, 129 F.3d 1283 (D.C. Cir. 1997); <u>Burkhart v. WMATA</u>, 112**

9

F.3d 1207, 1215 (D.C. Cir. 1997); <u>Dove v. WMATA</u>, 402 F. Supp. 2d 91 (D.D.C. 2005).

31. Any and all documents of any nature that contain facts upon which WMATA intends to rely to support any of the defenses set forth in this defendant's answer to Plaintiff's Complaint.

**RESPONSE:**

**See Response No. 19 and the accompanying documents, including the report by Michael Miller, Detective with the Major Crash Unit of the DC Metropolitan Police.**

32. Any training manuals, policies, procedures, guidelines or other similar materials which were provided to Bus Driver Michelle Ferguson at the time she was hired to work for the WMATA.

**RESPONSE:**

**See the attached documents. WMATA objects to the extent this request seeks additional information in that this request is overly broad and unduly burdensome, seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.**

33. Any training materials, guidelines, rules, regulations or similar materials which were designed to pertain to employees such as Mrs. Ferguson who were employees at the WMATA.

**RESPONSE:**

**See Response No. 32 and the attached documents.**

34. Any statistics maintained by WMATA that details or summarizes motor

10

vehicle accidents or traffic violations by all WMATA drivers in the last five years.

RESPONSE:

WMATA objects because this request is overly broad, unduly burdensome, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

35. Copies of any materials given to WMATA drivers in the last five years regarding driver safety.

RESPONSE:

See Response No. 32 and the attached documents.

Respectfully submitted,

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**

_____
Gerard J. Stief #925933
Associate General Counsel
(202) 962-1463

_____
Janice L. Cole  #440351
Associate General Counsel
(202) 962-2543
600 Fifth Street, N.W.
Washington, D.C.  20001
Attorneys for Defendant WMATA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _24th_ day of August 2007, a copy of the

foregoing **WMATA's Response to Plaintiff's First Request for Production of Documents**

was mailed to:

> Bruce J. Klores #358548
> Scott M. Perry #459841
> Bruce J. Klores & Associates
> 1735 20th Street, NW
> Washington, DC 20009
> 202-628-8100
> Attorneys for Plaintiffs

> David P. Durbin #928655
> 1100 Connecticut Avenue, NW
> Suite 600
> Washington, DC 20036
> 202-496-2804
> Attorney for Defendant DaimlerChrysler
> Commercial Buses North America, Inc.
> f/k/a Orion Bus Industries, Inc.

> William J. Cremer, Esq.
> Bradley M. Burd, Esq.
> Cremer, Kopon, Shaughnessy & Spina, LLC
> Suite 3300
> 180 North LaSalle Street
> Chicago, IL 60601
> 312-276-3818
> Attorneys for Defendant DaimlerChrysler
> Commercial Buses North America, Inc.
> f/k/a Orion Bus Industries, Inc.

12

_____
Janice L. Cole #440351

13

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT R. FENICHEL, M.D.   )
Individually, and as Personal   )
Representative of the     )
Estate and Next of Kin of    )
EMILY S. FENICHEL, Deceased,  )
            )
            )  Case No. **1:07-cv-00768-JR**
   Plaintiff,     )
            )
v.           )
            )
WASHINGTON METROPOLITAN  )
AREA TRANSIT AUTHORITY, et al. )
            )
   Defendants.    )
            )

## PLAINTIFF'S SECOND INTERROGATORIES
## TO DEFENDANT WMATA

   Plaintiffs, by and through undersigned counsel, pursuant to Fed.R.Civ.P. 33, request that Defendant Washington Metropolitan Area Transit Authority (WMATA) timely answer separately and fully in writing under oath the interrogatories hereinafter set forth.

## INSTRUCTIONS

   (a) Your response should set forth the Interrogatory and its Answer, and "shall answer each interrogatory separately and fully in writing under oath, or shall state fully the grounds for refusal to answer any interrogatory." The response shall be signed by you.

   (b) Your answer shall include all information available to you or your agents, representatives, or attorneys.

   (c) These Interrogatories are continuing in character so as to require you to promptly amend or supplement your answers if you obtain further or different information.

   (d) If, pursuant to Rule 2-421(c), you elect to specify and produce business records of yours in answer to any Interrogatory, then according to Rule 2-421(c), your specifications

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

"shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained."

(e)  If in answering these Interrogatories, you encounter any ambiguities construing either a question, instruction, or definition, set forth the matter deemed ambiguous and the construction used in answering.

(f)  No part of an Interrogatory shall be left unanswered merely because an objection is interposed to another part of the Interrogatory.

(g)  Where an objection is made to any Interrogatory, or any sub-part thereof, the objection shall state with specificity all grounds.

(h)  Where a claim of privilege is asserted in objecting to any Interrogatory, or sub-part thereof, and an answer is not provided because of such assertion, you are directed to provide a statement of the basis for the claim of privilege, including specific identification of any state privilege rule or statute being invoked.

## DEFINITIONS

**As used in these Interrogatories,** the following terms are to be interpreted according to these definitions:

(a)  The term "**person**" includes any individual, trust, estate, unincorporated association or society, partnership, municipal or other corporation, the State, its agencies or political subdivision, any court, or any other governmental entity, and including all predecessors and successors in interest.

(b)  The terms "**you**" and "**your**" include the person(s) to whom these Interrogatories are addressed, and all that person's agents, employees, representatives, attorneys, family members and all other persons or entities acting on that person's behalf or under his/her control.  The term "**you**" also includes  Michelle Ferguson.

(c)  The terms "**and**" and "**or**" shall be construed conjunctively or disjunctively as necessary to make each interrogatory inclusive rather than exclusive.

(d)  The terms "**include(s)**" and "**including**" shall be construed to mean "without limitation."

(e)  The terms "**document**" or "**documents**" includes all writings, letters, memoranda, agreements, contracts, invoices, bills, receipts, checks, drawings, graphs, charts, photographs, recordings, and other data compilations from which information can be obtained, translated, if necessary, into reasonable form.

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

2

(f)  The terms "**identify**", **identity**", or "**identification**", when used in reference to a natural person, require you to state that person's full name, last known address, home and business telephone numbers, present employment, business affiliation, and relation, if any, to you.  When used in reference to a person other than a natural person, the terms "**identify**", "**identity**", or "**identification**", require you to describe the nature of such person (that is, whether it is a corporation, partnership, etc. under the definition of "person" above), and to state that person's last known address, telephone number, and principal place of business.  Once any person has been identified properly, it shall be sufficient after that, when identifying that same person, to state the name only.  When used in reference to a document, the term "**identify**," "**identity**", or "**identification**," means to set forth its title and subject matter, date, author, designated and actual recipients, type of document (e.g., letter, memorandum), number of pages, and the identity (as outlined above) of its present or last known custodian.

(g)  As used in these interrogatories, the terms " **communication**" or "**communications**" shall be deemed to include any transmission of documents, conversations, discussions, meetings, negotiations, or any other oral or written exchange arising out of or concerning the subject matter addressed, whether with representatives or third persons.

## INTERROGATORIES

**INTERROGATORY NO. 27**      Please list and describe all information that WMATA has in its possession prior to June 8, 2006 which stated, alluded to, described, and/or contained information about WMATA's buses having mirrors that were placed in such a way that it limited the bus drivers' vision and overall view of the road.  This includes, but is not limited to, all complaints formally or informally stated, written or given by WMATA bus drivers, other WMATA employees and/or any customer of the WMATA transportation services to WMATA.

**ANSWER:**

**INTERROGATORY NO. 28**      Identify the attorney by name, address, and telephone number that represented WMATA with regard to Ms. Ferguson's petition for unemployment.

**ANSWER:**

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klorrs.com

Respectfully submitted,

BRUCE J. KLORES & ASSOCIATES, P.C.

By_____
        Bruce J. Klores (#358548)
        Scott M. Perry (#459841)
        1735 20th Street, N.W.
        Washington, DC 20009
        P: 202-628-8100
        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served by mail on the 24th day of August, 2007, on the following counsel:

Gerard Joseph Stief, Esquire
Janice Lynn Cole, Esquire
WMATA
600 5th Street, NW
Washington, DC 20001

David P. Durbin, Esquire
JORDAN COYNE & SAVITS, LLP
1100 Connecticut Avenue NW
Suite 600
Washington, DC 20036
(202)496-2804

_____
Scott M. Perry

K:1845/Rogs.WMATA.2

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3698
www.klores.com

4

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ROBERT R. FENICHEL, M.D. )
Individually, and as Personal )
Representative of the )
Estate and Next of Kin of )
EMILY S. FENICHEL, Deceased, )
)                    Case No. **1:07-cv-00768-JR**
      Plaintiff, )
)
)
v. )
)
WASHINGTON METROPOLITAN )
AREA TRANSIT AUTHORITY, et al. )
)
      Defendants. )
_____)

## PLAINTIFF'S SECOND REQUEST FOR THE PRODUCTION
## OF DOCUMENTS TO DEFENDANT WMATA

      Plaintiffs, pursuant to F.R.Civ P. 34, by and through undersigned counsel, request that

Defendant Washington Metropolitan Area Transit Authority (WMATA) timely respond to the

following requests for documents, and that it produce and permit Plaintiffs to inspect, copy and

photograph all documents and things in its possession, custody or control as described below or,

in the alternative, produce all documents and things requested at 1735 20th Street, N.W.,

Washington, D.C. 20009.

## INSTRUCTIONS

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

      A.     The term "document" has the meaning described in Fed.R. Civ. 34 and includes,

but is not limited to, all writings and/or other tangible or electronic records, including but not

limited to any written, printed, typed, recorded, filmed, punched, transcribed or taped records

and other graphic matter of any kind or nature held or produced or reproduced, whether sent or

received, including the original, draft, copies and non-identical copies bearing notation or marks

not found on the original, which are in your custody, possession and/or control or to which you

otherwise have access. Examples of these items include, but are not limited to, all records,

drawings, medical reports, charts, correspondence, minutes, inventory records, payroll records,

corporate records, bank records, accounting records, logs, work reports, files, hearing or trial transcripts, depositions, calculations, memoranda, reports, financial statements, telegrams, cable, telex messages, tabulations, studies, analyses, evaluations, projections, work appointment books, diaries, lists, comparisons, questionnaires, surveys, graphs, books, pamphlets, booklets, articles, magazines, newspapers, microfilm, microfiche, photographs, tapes or other recordings, punched cards, magnetic tapes, discs, data sales, drums, printouts, computer-generated reports and printouts, other data compilations from which information can be obtained and any other documents, as defined under the Federal Rules of Civil Procedure.

B.    As used herein, the word "document" includes all copies unless such copies (including any notations and marks thereon) are exact duplicates of documents that are produced.

C.    As used herein, the words "you" or "your" mean defendant WMATA, and any of your agencies, divisions, departments, agents, employees, representatives, attorneys, and/or any person acting for or on your behalf.

D.    This request is directed at all documents within your possession, custody or control, and also includes documents in the possession, custody or control of agents, persons or entities in privity with you, including past or present attorneys.

E.    As used herein, the term "relating to" means containing, recording, discussing, mentioning, noting, summarizing, referring to, commenting upon, describing, digesting, reporting, listing, analyzing or studying the subject matter identified in the request.

F.    To the extent a privilege is claimed with respect to any document covered by this request for production of documents, you are requested to state with respect to such document the following:

i.      the basis for the claim of privilege;
ii.     the author of the document;
iii.    to whom the document is addressed;
iii.    the date on which the document was prepared;
iv.     the title or heading of the document;
v.      the type of document (e.g., handwritten note, memorandum, tape recording, journal, desk calendar, book of accounts, etc.);
vi.     any other information that might be necessary to describe such a document sufficiently for designation thereof; and
vii.    the document's present location and custodian.

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

G.    These requests shall be deemed to be continuing in nature. You are therefore required to produce additional documents if you obtain or discover additional responsive documents prior to trial.

H.    When producing documents, you should organize and label them where appropriate to correspond to the numbered categories in this request.

2

## REQUESTS

**REQUEST NO.1**    Produce all documents referred to in response to Interrogatory No. 27.

**RESPONSE:**

**REQUEST NO. 2**    Produce the entire unemployment file with regard to Ms. Ferguson, including all documents in which you, or anyone on your behalf, took a position as to whether Mrs. Ferguson should be entitled to unemployment benefits.  This should include all briefs, related documents filed or received by you, and any decisions rendered.

**RESPONSE:**

Respectfully submitted,

BRUCE J. KLORES & ASSOCIATES, P.C.

By _____
    Bruce J. Klores (358548)
    Scott M. Perry (#459841)
    1735 20th Street, N.W.
    Washington, DC 20009
    P: 202-628-8100
    Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served by mail on the 24h day of August 2007, on the following counsel:

Gerard Joseph Stief, Esquire
Janice Lynn Cole, Esquire
WMATA
600 5th Street, NW
Washington, DC 20001

David P. Durbin, Esquire
JORDAN COYNE & SAVITS, LLP
1100 Connecticut Avenue NW
Suite 600
Washington, DC 20036
(202)496-2804

_____
Scott M. Perry

BRUCE J. KLORES
& ASSOCIATES
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION

1735 20TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 628-8100

TELECOPIER (202) 628-1240
TOLL FREE 1 (877) 223-3688
www.klores.com

K:1845/RPDs.WMATA.2

3

DISTRICT OF COLUMBIA
OFFICE OF
ADMINISTRATIVE HEARINGS

2007 APR -6  P 3: 43

**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**
941 North Capitol Street, NE Suite 9100
Washington, DC 20002
TEL: (202) 442-8167
FAX: (202) 442-9451

MICHELLE N. FERGUSON
      Appellant/Claimant

   v.

WMATA
      Appellee/Employer

Case No.: ES-P-07-106712

**FINAL ORDER**

## I.   INTRODUCTION

Appellant/Claimant Michelle N. Ferguson filed an appeal of a Claims Examiner's Determination holding her ineligible for unemployment compensation benefits. This appeal raises the issue whether Claimant was discharged for cause constituting "misconduct" as defined in 7 District of Columbia Municipal Regulations ("DCMR") 312, pursuant to the District of Columbia Unemployment Compensation Act, D.C. Code, 2001 Ed. § 51-110(b).

This administrative court issued a Scheduling Order and Notice of In-Person Hearing on February 28, 2007, scheduling the hearing for March 14, 2007, at 10:30 a.m. At the request of Claimant, and for good cause shown, the matter was continued until later in the day, the hearing was held at 12:30 p.m. At the hearing, Claimant was represented by Lolita Martin, Esq., Claimant Advocacy Program. Appellee/Employer WMATA was represented by Kathleen Carey, Esq. Claimant testified on her own behalf. Robert Ballard, Transportation

Superintendent, testified on behalf of Employer.   During the hearing, Claimant's Exhibit ("Exh.") 100 and Employer's Exhs. 200 through 206 were admitted into the record.

At the hearing, Claimant's counsel advised Claimant that, pursuant to the 5th Amendment to the United States Constitution, Claimant had a right not to testify since her testimony could potentially give rise to criminal charges.   Claimant stated that she understood her rights, but voluntarily chose to testify at the hearing.

## II.    FINDINGS OF FACT

Claimant filed an appeal of the Claims Examiner's February 12, 2007 Determination on February 20, 2007.[1]

Claimant worked for Employer for three years and nine months as a bus operator.   On June 8, 2006, at approximately 10:45 p.m., Claimant, operating a twenty-foot bus, left the Western Avenue Bus Depot headed to Dupont Circle to begin her route.   Claimant stopped at a red light at the intersection of Jennifer Street and Wisconsin Avenue, N.W.   When the light changed, Claimant began to proceed into the intersection traveling east on Jennifer Street. Claimant intended to turn right to travel south on Wisconsin Avenue.   Claimant waited for pedestrians to cross, and began her turn.   While turning from Jennifer Street onto Wisconsin Avenue, the left front bumper of the bus Claimant was operating hit a pedestrian, dragging the pedestrian and running over her.   Exhs. 100, 200.   The pedestrian had stepped off the curb into the crosswalk of the south side of Wisconsin Avenue and was hit in the center lane.   The

---

[1]   Nothing in the record below indicates any issue has been raised or preserved concerning factors under D.C. Code, 2001 Ed. § 51-109, such as base period eligibility or availability for work.

pedestrian approached the intersection and began crossing while Claimant was waiting to make her turn. When the pedestrian left the curb, the pedestrian walk light was flashing "Don't Walk," but the traffic light for Wisconsin Avenue traffic was red. It took the pedestrian five seconds to walk from the curb to the point of impact. The pedestrian died as a result of her injuries. *Id.*

Employer has Standard Operating Procedures that set forth the expected proper procedures for the operation of its buses. Exh. 203. Employer trains each bus driver on the proper procedures, using the Standard Operating Procedures as its training guide. *Id.* The procedures provide a bus operator with clearly defined bus operating procedures for making right turns, intersection operations, observations, and defensive driving. *Id.* This training includes procedures to minimize the effect of blind spots. *Id.*

Employer suspended Claimant pending an investigation into the accident. On June 29, 2006, Employer terminated Claimant's employment as a result of the June 8, 2006 accident.

## III.     CONCLUSIONS OF LAW AND DISCUSSION

In accordance with D.C. Code, 2001 Ed. § 51-111(b), any party may file an appeal from a Claims Examiner's Determination within ten (10) calendar days after the mailing of the Determination to the party's last-known address or, in the absence of such mailing, within ten (10) calendar days of actual delivery of the Determination. The Determination in this case contains a certificate of service dated February 12, 2007. Therefore, the parties had until February 22, 2007, to file an appeal. Claimant's appeal was filed on February 20, 2007. The appeal was timely filed and jurisdiction is established. D.C. Code, 2001 Ed. § 51-111(b).

Generally, any unemployed individual who meets certain statutory eligibility requirements is qualified to receive benefits. D.C. Code, 2001 Ed. § 51-109. The law, however, creates disqualification exceptions to the general rule of eligibility. If an employee is discharged for misconduct (either "gross" or "other than gross"), the employee is disqualified from receiving benefits for at least some period of time. D.C. Code, 2001 Ed. § 51-110.

The employer bears the burden of producing evidence and demonstrating that an employee has been discharged for misconduct. OAH Rule 2820.3 (burden of production on party arguing an exception to a statutory requirement); *see McCaskill v. D.C. Dep't of Employment Servs.*, 572 A.2d 443, 445-446 (D.C. 1990). An employee may, however, offer testimony or documents sufficient to satisfy the employer's burdens of production and persuasion on the issue of misconduct.

The District of Columbia's unemployment compensation statute recognizes two levels of disqualifying misconduct, "gross" and "other than gross." D.C. Code, 2001 Ed. § 51-110(b)(1) and (2). "Gross misconduct" is the more serious of the two levels and includes acts that "deliberately or willfully violate[] the employer's rules, deliberately or willfully threaten[] or violate[] the employer's interests, show[] a repeated disregard for the employee's obligation to the employer, or disregard[] standards of behavior which an employer has a right to expect of its employee." 7 DCMR 312.3. Applicable regulations describe specific acts that, among others, may constitute gross misconduct:

a. Sabotage;
b. Unprovoked assault or threats;
c. Arson;
d. Theft or attempted theft;
e. Dishonesty;
f. Insubordination;

g.  Repeated disregard of reasonable orders;
h.  Intoxication, the use of or impairment by an alcoholic beverage, controlled substance, or other intoxicant;
i.  Use or possession of a controlled substance;
j.  Willful destruction of property;
k.  Repeated absence or tardiness following warning.

7 DCMR 312.4.

Employees can also be disqualified from receiving unemployment benefits for conduct that is less egregious than gross misconduct but nevertheless "constitutes a breach of the employee's duties or obligations to the employer, a breach of the employment agreement or contract, or . . . adversely affects a material employer interest." 7 DCMR 312.5. Such "other than gross" misconduct, also called "simple" misconduct, includes "acts where the severity, degree, or other mitigating circumstances do not support a finding of gross misconduct." *Id; see Chase v. D.C. Dep't of Employment Servs.,* 804 A.2d 1119, 1122 (D.C. 2002). Applicable regulations provide several examples of simple misconduct:

a.  Minor violations of employer rules;
b.  Conducting unauthorized personal activities during business hours;
c.  Absence or tardiness where the number of instances or their proximity in time does not rise to the level of gross misconduct;
d.  Inappropriate use of profane or abusive language.

7 DCMR 312.6. The period of disqualification for simple misconduct is shorter than the period of disqualification for gross misconduct.

Whether the level of alleged misconduct is gross or simple, an employee cannot be disqualified from receiving unemployment benefits unless there has been a finding of "misconduct" (as the term is defined under the unemployment statute and regulations) "based fundamentally on the reasons specified by the employer for the discharge." *See Chase,* 804 A.2d

at 1123 (internal citation omitted).  Mr. Ballard testified that Employer terminated Claimant's employment as a result of the June 8, 2006 accident.

I find that there is sufficient evidence to support a determination that Claimant's discharge from employment was the result of an act which "disregards standards of behavior which an employer has a right to expect of its employee," and is thus gross misconduct. 7 DCMR 312.3.

Claimant was a professional bus driver.  She was trained how to operate the bus to avoid accidents.  She was trained how to traverse intersections, make right turns, look for pedestrians; she was trained to observe "every person, object, or vehicle within the traffic pattern." Exh. 203. This training includes procedures to be used to minimize the impact of both vehicle and environmental blind spots.  Exh. 203.

Claimant admitted that she was aware of Employer's Standard Operating Procedures and that she had been trained using the Standard Operating Procedures.  In fact, Claimant testified that she had followed all Standard Operating Procedures.  Claimant argued that this was not a preventable accident:  Claimant did not see the pedestrian, the pedestrian must have been in her blind spot.  Claimant also argued that the pedestrian ran in front of her bus and she had no opportunity to see the pedestrian.  I find these arguments to be unavailing.

Claimant testified that she was proceeding to make a right turn.  Claimant was taught to look left, right, left, right, to make sure no pedestrians are in the road and traffic pattern, and then to proceed.  Exh. 203.  Claimant should have seen and avoided hitting a pedestrian walking

within the crosswalk and with the light.[2] The Supplemental Police Report revealed that it "was possible for [Claimant] not to see [the pedestrian] prior to the impact" and that the pedestrian could have been in Claimant's blind spot. Exh. 100. However, that same police report stated that it took the pedestrian approximately five seconds to walk from the curb to the point of impact. Clearly, the pedestrian did not just appear at the curb, she was on the sidewalk prior to crossing the street. The pedestrian was within the traffic pattern for more than five seconds. Therefore, there was additional time for Claimant to have observed the pedestrian. Had Claimant been following the Standard Operating Procedures with which she was trained, and following the rules of careful driving, Claimant should have seen the pedestrian well before the pedestrian left the curb and entered the crosswalk.

Part of the training for WMATA bus drivers is how to limit the effect of blind spots. Relying on a blind spot is not a sufficient excuse for a trained professional. Failure to minimize the effects of a blind spot, and ultimately hitting a pedestrian, is disregarding a standard of behavior which an employer has a right to expect of its employee. Accordingly, the Determination of the Claims Examiner shall be affirmed. Claimant remains ineligible for unemployment compensation benefits. D.C. Code, 2001 Ed. §§ 51-110(b) and 51-111(e); OAH Rule 2820.3.

## IV.    ORDER

Based upon the foregoing findings of fact and conclusions of law and the entire record in this matter, it is, this 6th day of April, 2007:

---

[2]    According to the Supplemental Police Report, the pedestrian left the curb and entered the intersection after the "Don't Walk" signal began. However, even if true, that fact does not absolve Claimant. The pedestrian was in the crosswalk walking with the traffic light.

**ORDERED**, that the Claims Examiner's Determination that Appellant/Claimant Michelle N. Ferguson is ineligible for unemployment compensation benefits is **AFFIRMED**; and it is further

**ORDERED**, that Appellant/Claimant Michelle N. Ferguson remains **INELIGIBLE** for unemployment compensation benefits, and it is further

**ORDERED,** that the appeal rights of any person aggrieved by this Order are stated below.

Wendy Hartmann Moore
Administrative Law Judge

Case No.: ES-P-06-106712

# PETITION FOR REVIEW
## (APPEAL RIGHTS)

**THIS ORDER IS A FINAL ORDER. IF YOU WISH TO APPEAL THIS ORDER, YOU HAVE 30 CALENDAR DAYS FROM THE DATE IT IS MAILED TO YOU TO FILE A PETITION FOR REVIEW WITH THE D.C. COURT OF APPEALS.**

Pursuant to D.C. Code, 2001 Ed. § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may obtain judicial review by filing an original and six copies of a petition for review with the District of Columbia Court of Appeals at the following address:

Clerk
District of Columbia Court of Appeals
H. Carl Moultrie I Courthouse
500 Indiana Avenue NW
Sixth Floor
Washington, DC 20001

The petition for review (and required copies) may be mailed or delivered in person to the Clerk of the Court of Appeals, and must be received by the Clerk of the Court of Appeals within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a fee of $100 for filing a petition for review. Persons who are unable to pay the filing fee may file a Motion and Affidavit to proceed without the payment of the filing fee. Such motion and affidavit should be filed with the petition for review. Information on petitions for review to the Court of Appeals can be found in Title III of the Rules of the District of Columbia Court of Appeals, which are available in the Office of the Clerk of the Court of Appeals or online at www.dcappeals.gov .

If you are a member of the United States Armed Forces on active duty, you may have certain rights under the Servicemembers Civil Relief Act 50 U.S.C.S. Appx. §501 *et seq.* If you qualify for these rights and you have **LOST** this case because you were not present, you **MAY** be able to have this case reopened. If you think you may qualify under this law, you must notify this court promptly to ensure that your rights are protected.

Case No.: ES-P-06-106712

## Certificate of Service:

**By First Class Mail (Postage Paid):**

Michelle N. Ferguson
4020 Livingston Road, SE, #303
Washington, DC  20032-2906

Lolita Martin, Esq.
Claimant Advocacy Program
888 16th Street, NW, Suite 520
Washington, DC 20006

Kathleen A. Carey, Esq.
WMATA
600 Fifth Street, NW
Washington, DC  20001

**By Inter-Agency Mail:**

Dorothy Jones
Department of Employment Services
609 H Street, NE
Washington, DC  20002

I hereby certify that on *April 6*, 2007, this document was caused to be served upon the above-named parties and upon DOES at the addresses listed and by the means stated.

_____
Clerk / Deputy Clerk





RECEIVED FROM
DEPT OF EMPLOYMENT
SERVICES

2007 AUG 28 AM II: 44

OFFICE OF THE GENERAL
COUNSEL

# DISTRICT OF COLUMBIA
## DEPARTMENT OF EMPLOYMENT SERVICES
## CENTRAL ADJUDICATION BRANCH
### 609 H STREET, N.E. SUITE 341
### WASHINGTON, D.C. 20002

## DETERMINATION BY CLAIMS EXAMINER

**Social Security Number:** 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

**CLAIMANT:**

MICHELLE N FERGUSON
4020 LIVINGSTON ROAD SE #303
WASHINGTON, DC - 20032-2906

**EMPLOYER:**

WMATA
600 5TH ST NW RM 2D-05
WASHINGTON, DC - 20001-2610

**ISSUE:**
**DISCHARGED FOR MISCONDUCT**

You are hereby notified of the following determination disqualifying you from the receipt of benefits beginning 01/28/2007 to indefinite or until such time as you have been employed in each of ten (10) weeks (whether or not consecutive), have earnings from this employment equal to not less than ten (10) times your Weekly Benefit Amount, and become unemployed through no fault of your own.
**D.C. Code, Title 51-110(b)(1).**

**REASON FOR DETERMINATION:**
You were discharged from your job with your most recent employer because you were involved in a preventable major accident resulting in a fatality of a pedestrian. This major accident was not in the best interest of the employer. Therefore, it is considered that you were discharged for misconduct occurring in your most recent work.
**Gross misconduct has been established.**

**DECISION:**
**Therefore, the claimant listed herein has been determined ineligible for unemployment benefits.**

Antoinette Carter
Claims Examiner

I certify that a copy of this document was mailed to the employer/claimant at the above address on 2/12/2007.

_____
Signature

**SEE THE ENCLOSED NOTICE OF APPEAL RIGHTS**

6/28/06                                                        AC



004733

**Government of the District of Columbia**                    **Department of Employment Services**

Office of Unemployment Compensation    -0        609 H Street, N.E.                    Washington, D.C. 20002

## REQUEST FOR SEPARATION INFORMATION

Date: 2-1-07

The individual named below has filed an initial claim for unemployment benefits effective
and indicated that you are the employer for whom his/her last performed 30 days work.        1-28-07

Claimant's Name: Michelle Ferguson                          SSN: 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

The claimant indicated that the reason for separation was: Misconduct

Under D.C. Code 46-111, a claimant will be disqualified if it is determined that he/she left the last 30 work day
employer voluntarily without good cause connected with the work or was discharged for misconduct occurring in the
course of the work for the last 30 work day employer.
Please complete items 1 through 3, sign, date and return by mail or fax within 7 days of the date displayed above to:

                    CENTRAL ADJUDICATION BRANCH
                    609 H STREET NE    -    ROOM 304
                    WASHINGTON, D.C.  20002
                    TELEPHONE : (202) 698-5199  8/82
                    FAX: (202) 698-5707

1. Dates of Employment: First Day Worked  9/6/02  ; Last Day Worked  6/8/06

2. Reason for Separation: (Check One):

☐ Laid Off for Lack of Work    ☐ Left Voluntarily    ☒ Discharged for Cause    ☐ Labor Dispute

☐ Other    If reason for separation checked is other than lack of work. **explain in detail.**

Ms. Ferguson was involved in a preventable
major accident resulting in a fatality of pedestrian.

3. Did this person receive, or is he/she entitled to receive Severance Pay? Yes ☐    No ☒
If yes, indicate Total Amount _____ ; period covered by severance: From _____    To _____

Signature: _____

Print Name: Roberta Hamilton

Title: HR Admin                                          Date: 2-7-07
                                                         202 962 2397
                                                         Telephone: _____

JOB SERVICE  "Helping People Help Themselves"                              ESREQA.FRM



DC Home | Citizen Services | Mayor's Office

Home | Log Off

## Separation Case Notes - T1 Transaction

| SSN: 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 | Name: MICHELLE N FERGUSON |
|---|---|

```
per call to claimant 2-2-07 202-561-0904 10:55am
stated she was terminated because she was a bus
driver and she hit and killed a pedestrian, claimant
stated it wasnt her fault. the pedestrian ran
infront of the bus. they call this preventable
major. any accident you are terminated from metro.
a.carter.

per fax from employer roberta hamilton (hr admin)202-
962-2397 2-7-07 states the claimant was terminated
because she was involved in a preventable major
accident resulting in a fatality of a pedestrian.
a.carter
```

Save    Cancel




ON POINT
TECHNOLOGY INC

# ACCIDENT REPORT FORM

**M metro**

| 1. FORM HEADED UP BY: (INITIALS) **RLB** | 2. DIVISION / SECTION **WETR / BTRA** | DIVISION CODE **3225/3510** | BUSV / SAFETY **PDE 01** |
|---|---|---|---|

| 3. DATE OF ACCIDENT: **06/08/06** | TIME: **10:50:PM** | VEHICLE NUMBER: **3916** | RUN NUMBER: **560** | BLOCK NUMBER: **WC-13** | ROUTE NUMBER: **#** |
|---|---|---|---|---|---|

| 4. LOCATION OF ACCIDENT: **On Wisconsin Avenue & Jenifer Street** | AREA: **DC/NW** | DESTINATION: **DuPont Circle** |
|---|---|---|

| 5. EMPLOYEE INVOLVED: **Ferguson, Michelle** | EMPLOYEE NO.: **004733** | JOB STATUS: NEW SERVICE ☐ FULL TIME ☒ PART TIME ☐ | SENIORITY: **09/06/02** | DATE OF BIRTH: **06/07/70** |
|---|---|---|---|---|

## ACCIDENT RECORD FOR THE PAST 365 DAYS

| DATE | *NO | *PRE | *MIN | *MAJ | ACTION TAKEN | DATE | *NO | *PRE | *MIN | *MAJ | ACTION TAKEN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| / / | ☐ | ☐ | ☐ | ☐ | **NONE** | / / | ☐ | ☐ | ☐ | ☐ | |
| / / | ☐ | ☐ | ☐ | ☐ | | / / | ☐ | ☐ | ☐ | ☐ | |
| / / | ☐ | ☐ | ☐ | ☐ | | / / | ☐ | ☐ | ☐ | ☐ | |

**\*RATINGS      N.P = NON-PREVENTABLE    PRE = PREVENTABLE      MIN = MINOR      MAJ = MAJOR**

## INVESTIGATION BY THE DIVISION SUPERINTENDENT OR SUPERVISOR

| 6. DID YOU VISIT THE SCENE OF THE ACCIDENT?   YES ☐   NO ☒   DATE: / /   TIME: : : |
|---|
| 7. IF NOT, ARE YOU THOROUGHLY FAMILIAR WITH SCENE OF THE ACCIDENT   YES ☒   NO ☐ |
| 8. DID YOU INSPECT THE EQUIPMENT INVOLVED?   YES ☐   NO ☒   DATE: / /   TIME: : : |
| 9. WHO WAS PRESENT AT THE TIME OF INSPECTION?                         N/A |
| 10. WAS A BRAKE TEST PERFORMED?   YES ☐   NO ☒   DATE: / /   BRAKE READINGS |
| 11. WAS A TRAFFIC CITATION ISSUED?   YES ☐   NO ☒   IF SO TO WHOM? |

| 12. EMPLOYEE PERMIT NUMBER **1892060** | STATE **DC** | CLASSIFICATION A Ⓑ C D E Ⓟ | EXPIRATION DATE **06/07/11** | RESTRICTIONS: **NONE** |
|---|---|---|---|---|

## ACTION TAKEN BY THE DIVISION SUPERINTENDENT OR SUPERVISOR  | DOT - EXPIRE: 05/26/08 |

| 13. PREVENTABLE | NON - PREVENTABLE | MINOR | MAJOR | DATE OF TRAINING: |
|---|---|---|---|---|

REDACTED SELF EVALUATIVE PRIVILEGE

14. I FULLY UNDERSTAND THAT I HAVE FIVE (5) BUSINESS DAYS TO APPEAL THE ACTION TAKEN.   INITIAL

| 15. APPEAL:  YES   NO ☐ | APPEAL DATE: / / | APPEAL HEARING: / / |
|---|---|---|

| APPEAL DECISION:  GRANTED ☐ | DENIED | APPEAL RETURN: | FAILED TO FILE APPEAL WITHIN (5) DAYS: ☐ |
|---|---|---|---|

16. ACTION TAKEN:  REDACTED

| 17. SUPV. SIGNATURE *Bert L Ballard* | TITLE: **Asst. Superintendent** | DATE: **06/29/06** |
|---|---|---|

## I CERTIFY THAT THE ABOVE HAS BEEN CALLED TO MY ATTENTION TODAY

| EMPLOYEE SIGNATURE *Michelle Ferguson* | PAYROLL: **004733** | DATE: **06/29/06** |
|---|---|---|

NOTE: REMARKS MAY BE WRITTEN IN THE SPACE PROVIDED ON THE SECOND PAGE OF THIS FORM THIS MUST BE DONE AT THE TIME THE REPORT IS SIGNED BY THE EMPLOYEE CONCERNED.

| 13.296 (Rev 02/01)  sls.) | Original - BUSV /SAFETY 1st Copy -DIVISION     2nd Copy -EMPLOYEE     3rd Copy -UNION |
|---|---|

Metrobus # 3916 was traveling E/B on Jenifer Street attempting to make a right turn onto S/B Wisconsin Avenue. There was a van parked in the curb lane S/B on Wisconsin Avenue.

The female pedestrian was walking E/B on Jenifer Street in the crosswalk crossing Wisconsin Avenue.

Operator Ferguson states she was in non-revenue service. " When the traffic light changed green she waited for the pedestrians to clear the crosswalk and began to make her right turn at a speed of 2 mph. As she starting to turn there was a male pedestrian who began to enter the crosswalk from the east side of Wisconsin Avenue walking towards the bus." The Operator also states she was watching the male pedestrian when she felt a bump, she stopped the bus because she thought she had hit something. The operator got off the bus to check, she then saw the pedestrian under the front of the bus. The police who observed the accident instructed her to get back on the bus, and back-up a little so they could attend to the pedestrian until the ambulance arrive. Operator Ferguson further stated she never saw the pedestrian before making contact.

The front center bumper of the bus made contact to the pedestrian who was walking in the crosswalk knocking her to the ground, the bus dragged the pedestrian a few feet wedging her under the bus. The wheels of the bus did not run over the pedestrian. The pedestrian was able to give her name, date of birth and telephone number to the police officer before being transported.

Witness MPD officer Connor # 3700 states the operator was turning right, watching a male pedestrian on the left side walking toward the bus. The female pedestrian began to walk into the crosswalk. Officer Connor also stated the pedestrian was in the operator's blind spot, the front center bumper of the bus made contact to the pedestrian knocking her to the ground. The pedestrian was wedged under the front of the bus and dragged her a few feet within the wheels running over the pedestrian.

Witness Officer Belton # 4272 states he observed the bus making a right turn from Jenifer Street into Wisconsin Avenue when the pedestrian walked out in front of the bus, and the bus hit her while making the turn.

EMPLOYEE'S COMMENTS

3.29613 (05/96) (G.J.)  Use Separate Sheet If More Space Is Needed

everal attempts to contact the other witnesses via telephone for a statements however, they
ere unsuccessful.

he pedestrian sustained serious injuries to an unknown portion of her body, she was pronounced
ead on arrival at Sibley Hospital. There were no other injuries reported. MPD took a report,
harges are unknown at this time.

                    REDACTED

                    SELF EVALUATIVE PRIVILEGE

EMPLOYEE'S COMMENTS