**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT R. FENICHEL, M.D.<br>Individually, and as Personal<br>Representative of the<br>Estate and Next of Kin of<br>EMILY S. FENICHEL, Deceased,<br><br>    Plaintiff,<br><br>v.<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY, et al.<br><br>    Defendants. | Case No. 1:07-CV-00768-JR |

**PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE REFERENCE TO, OR RELIANCE UPON, D.C. MUNICIAL REGULATION § 2302.3**

Plaintiff, through counsel, and pursuant to the Court's inherent powers, moves this Court to prohibit Defendant WMATA from referring to, or relying upon, D.C. Municipal Regulation ("DCMR") § 2302.3 to prove that Mrs. Fenichel was contributorily negligent. In support of this Motion, Plaintiff states as follows:

**INTRODUCTION**

This case arises from the death of Emily Fenichel, a 64 year old wife, mother and grandmother, who while in a crosswalk on Wisconsin Avenue on June 8, 2006, was run over by a WMATA bus. The collision occurred at the intersection of Wisconsin Avenue, N.W. and Jenifer Street, N.W. (the "Intersection"), which contains both traffic lights and pedestrian crossing signals.

WMATA concedes that Mrs. Fenichel was in the crosswalk when she was struck and killed; that Mrs. Fenichel was not crossing against the flow of vehicular traffic on Wisconsin

Avenue; and that its bus driver never saw Mrs. Fenichel in the crosswalk even though she was between 16 (Defendant) and 21 feet (Plaintiff and Metropolitan Police Department) across Wisconsin Avenue when struck. Yet, WMATA seeks to convince the jury that Mrs. Fenichel caused her own death.

WMATA asserts that Mrs. Fenichel began to cross Wisconsin Avenue during the "Pedestrian Change Interval," the period of time on the pedestrian signal after the white pictogram of a person walking is displayed but before a solid amber hand is displayed.[1] During the Pedestrian Change Interval, a flashing amber hand is displayed along with a numerical countdown. WMATA claims that by stepping into the Intersection during the Pedestrian Change Interval, Mrs. Fenichel violated DCMR § 2302.3, a 50 year-old municipal street-crossing regulation that has no application to this pedestrian signal. WMATA seeks to argue that the 90% of pedestrians (by recent study), like Mrs. Fenichel, who enter crosswalks during the Pedestrian Change Interval are negligent *per se* and contributorily negligent, and that this prevents a pedestrian from recovering even when she is run down 21 feet into a crosswalk by a turning 28,000 pound bus.[2]

A plain reading of Section 2302.3 requires the conclusion that: (1) the regulation does not apply to the pedestrian signal that Mrs. Fenichel faced because that signal does not rely upon any of the words/phrases contained in the regulation ("Walk," "Don't Walk," and "Wait"); and (2) the regulation fails to address the meaning of the Pedestrian Change Interval, the longest interval during the crossing sequence.

---

[1] Plaintiff expects to prove that Mrs. Fenichel stepped into the crosswalk prior to the Pedestrian Change Interval. For purposes of this Motion, however, Plaintiff will view the evidence in the light that WMATA will try to establish.

[2] WMATA bases this affirmative defense on: (1) the testimony of Matthew Clark who admits that he did not see the pedestrian signal at the time of impact but who guessed that the pedestrian signal would have been at "4" seconds, which is during the Pedestrian Change Interval; and (2) the statement/note of Officer Sandra Connor who at deposition conceded that she saw the number "4" *after* the collision occurred.

Even if it could be argued that DCMR § 2302.3 applies here, which on its face it does not, the 50 year-old regulation is antiquated and outdated; it does not apply to this pedestrian signal and it was not designed to protect against the harm that occurred here. Thus, it would be manifestly unfair to allow WMATA to argue that Mrs. Fenichel violated an inapplicable traffic regulation.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     DCMR § 2302.3 HAS NO APPLICATION TO THE PEDESTRIAN SIGNAL CONTROLLING THIS INTERSECTION**

Pedestrian signals in the District of Columbia were originally designed using a three-part interval. When the traffic light turned red for vehicular traffic, the pedestrian signal would display "WALK." After a certain interval, the pedestrian signal would change to "DON'T WALK." Some signals also provided a brief "WAIT" signal.

In 1949, the District of Columbia enacted DCMR § 2302, titled "Pedestrian 'Walk,' 'Don't Walk," and 'Wait' Signals."

Section 2302.1, which implements Section 2302, provides that the subsections of Section 2302 only apply to pedestrian signals using *three* specific words:

> Whenever special pedestrian control signals exhibiting the words "WALK," "DON'T WALK," or "WAIT," are in place, such signals shall indicate and apply to pedestrians as set forth in this section.

Section 2302.3 then provides that:

> No pedestrian shall start to cross the roadway in the direction of a "DON'T WALK" or "WAIT" signal.

**Exhibit A.**

Because this regulation was enacted over 50 years before the current pedestrian signal was installed, it makes no reference to the meaning of the Pedestrian Change Interval or the

3

meaning of the pictograms used by the current signal. WMATA, however, asserts that the entire 15-second long Pedestrian Change Interval (the longest interval during the crossing sequence) is equivalent to the phrase "Don't Walk" contained in Section 2302.3. WMATA can point to nothing in the regulation that states this. As such, it would be inappropriate to instruct the jury that Section 2302.3 either establishes, or is evidence of, the standard of care that applied to Mrs. Fenichel as she crossed Wisconsin Avenue.

### A. The Pedestrian Signal Controlling This Intersection Does Not Rely on "Walk," "Wait," or "Don't Walk"

As technology advanced, it became possible to provide pedestrians with more information while crossing intersections. New pedestrian signals were created. Section 2302.3, however, has not been updated to address the new pedestrian signals.[3]

In 2005, the District of Columbia installed a new pedestrian signal at the Intersection. **Exhibit B.** The new pedestrian signal -- the one that faced Mrs. Fenichel -- relies exclusively on a combination of pictograms and a numerical countdown to provide pedestrians with crossing information. It does not use any of the words/phrases contained in Section 2302.3.

Specifically, when the traffic light on Wisconsin Avenue (the street Mrs. Fenichel was crossing) turns red for vehicular traffic, the pedestrian signal displays a white icon of a person walking, along with an amber numerical countdown that begins at 27. When the amber numerical countdown reaches 15 (a 12-second interval), a flashing amber hand appears along with the amber numerical countdown, which is the beginning of the Pedestrian Change Interval. The flashing amber hand continues until the countdown reaches zero (a 15-second interval). At that point, a solid amber hand is displayed. The traffic light controlling vehicular traffic on Wisconsin Avenue remains red for another six seconds after the solid amber hand appears to

---

[3] According to the Annotations, Section 2302 was amended in 1987 by repealing Section 2302.4. The Annotation shows no changes were made to Section 2302.3 in 1987.

4

give pedestrians time to finish crossing, and then the traffic light turns green for Wisconsin Avenue vehicular traffic.

Thus, the pedestrian signal in effect at the Intersection, and which was in effect on the day that Mrs. Fenichel was killed, is completely different than the pedestrian signals described in Section 2302.3. It uses **none of the words/phrases** that Section 2302.3 relies upon. The pedestrian signal does not display the word "Walk;" it does not display the phrase "Don't Walk," and it does not use the word "Wait."

### B.   Section 2302.3 Provides No Guidance Regarding The Meaning Of The Pedestrian Change Interval

The Pedestrian Change Interval, which consists of a flashing amber hand and a numerical countdown that begins at 15 seconds and counts down to zero, is the **longest interval** during the crossing sequence. It is also the interval upon which WMATA seeks to base its contributory-negligence defense. Yet, Section 2302.3 ascribes **no meaning** to the Pedestrian Change Interval.

The Pedestrian Change Interval is a crucial part of the new signal technology, and it provides information to the pedestrian that was not available when Section 2302.3 was enacted. Specifically, by including a numerical countdown, the pedestrian is now provided with specific information as to how long he/she has to cross the street. In fact, the Pedestrian Change Interval (15 seconds) is *longer* than the interval displaying a white icon of a person walking (12 seconds), indicating to the reasonable pedestrian that he/she may cross during the Pedestrian Change Interval.

It would be unfair to apply this 50 year-old traffic regulation when, on its face, it fails to address the circumstances presented to Mrs. Fenichel as she was crossing Wisconsin Avenue. Because Section 2302.3 fails to even address the longest portion of the crossing interval, and

provides no information as to the meaning of the numerical countdown, it has no application here.[4]

## II. EVEN IF THE COURT WERE TO FIND THAT THE REGULATION IS APPLICABLE, THE STATUTE'S OBSCURITY AND ANTIQUITY RENDER ITS USE UNFAIRLY PREJUDICIAL

Even if the Court were to determine that Section 2302.3 applied to Mrs. Fenichel, it should exercise its discretionary power to exclude the regulation to avoid unfair prejudice to the Plaintiff.

Whether to admit a regulation/statute as either evidence of the standard of care or as negligence *per se* is solely within the trial court's discretion. *See McNeil Pharm. v. Hawkins,* 686 A.2d 567, 579 (D.C. 1996) (quoting Restatement of Torts (Second) § 286 cmt. d. at 26 (1965)). A court "may decline to apply negligence *per se* to a particular case 'if sufficient policy considerations militate against it.'" *McNeil,* 686 at 579. Thus, in *McNeil*, the D.C. Court of Appeals noted that the trial court must conduct an inquiry into the statute to determine whether its proposed application is appropriate. In making such inquiry, trial courts should consider whether the "law is so obscure, outdated, or arbitrary as to make inequitable its adoption as a standard of care." *Id.* at 582 n.23.

In the present case, Section 2302.3 is obscure, outdated and, as evidenced by the fact that 90% of the public crosses during the Pedestrian Change Interval, is arbitrary. The regulation fails to address the two most significant facts affecting WMATA's contributory negligence defense: (1) the meaning of the icons used by the pedestrian signal; and (2) the meaning of the

---

[4] WMATA will, of course, remain free to argue that Mrs. Fenichel began to cross Wisconsin Avenue too late into the numerical countdown and, thus, caused her own death. But that defense -- which calls for a classic "reasonableness" determination by the jury -- is quite different from the Court instructing the jury that this outmoded and inapplicable traffic regulation either sets, or is evidence of, the standard of care.

Pedestrian Change Interval (the numerical countdown) that represents the longest portion of the crossing interval.

In determining whether to exercise its discretion and exclude the regulation, the Court can rely upon common sense and typical pedestrian behavior. As to typical pedestrian behavior, one recent study of pedestrian-crossing behavior when Pedestrian Change Intervals were used found that between **80%-90%** of pedestrians *start to cross* during the Pedestrian Change Interval. *See* Countdown Pedestrian Signals: A Comparison of Alternative Pedestrian Change Interval Displays, Final Report submitted to the Federal Highway Administration (March 2005).[5] Consequently, WMATA is asking the Court to instruct the jury that up to 90% of pedestrians are violating Section 2302.3 everyday and that, if struck, are contributorily negligent.[6]

Excluding reference to, or reliance upon, Section 2302.3 would work no unfairness on WMATA. What WMATA is really claiming is that Mrs. Fenichel waited too long to step into the crosswalk and that the reasonable person would not have stepped into the crosswalk at the time that she did. A Court ruling excluding this regulation will not affect WMATA's ability to set forth its defense. WMATA will still be able to set forth its defense and ask the jury to decide whether: (1) Mrs. Fenichel acted reasonably and (2) if not, whether there is any causal connection between Mrs. Fenichel's actions and her death.

The jury is the collective conscience of the community. It should decide whether, based on the evidence and its common experiences, Mrs. Fenichel's actions were reasonable. It would

---

[5] The study found that "[r]egardless of the [type of Pedestrian Change Interval utilized], pedestrians were very likely to begin crossing both during the first five seconds (early) of the pedestrian change interval (95%) and during the remaining seconds (late) of the pedestrian change interval (86%)."

[6] WMATA's proffered expert found the rate to be 11%. Needless to say, Plaintiff believes the non-litigation-prepared study submitted to the federal government is more reliable than a study conducted by an expert retained to protect WMATA's interests.

be unfair to the Plaintiff for the jury to be instructed that an outmoded, and inapplicable 50 year old traffic regulation trumps its collective experience.

**III.   SECTION 2302.3 IS DESIGNED TO PROTECT PEDESTRIANS FROM VEHICULAR TRAFFIC THAT IS STOPPED ON WISCONSIN AVENUE, NOT VEHICULAR TRAFFIC TURNING ONTO WISCONSIN AVENUE FROM JENIFER STREET**

There is another problem with WMATA's attempt to use this regulation against Mrs. Fenichel. The pedestrian signal facing Mrs. Fenichel as she crossed Wisconsin Avenue is designed to protect pedestrians from vehicular traffic traveling north/south on Wisconsin Avenue that has been stopped by the Wisconsin Avenue traffic light. The WMATA bus that struck Mrs. Fenichel was not part of that stopped north/south Wisconsin vehicular traffic. Rather, the WMATA bus was turning *onto* Wisconsin Avenue from Jenifer Street and had a green light as it entered the intersection. As explained below, the pedestrian signal provides no protection (and is not designed to provide protection) to pedestrians crossing Wisconsin Avenue from vehicles turning from Jenifer Street. Thus, Section 2302.3 is equally inapplicable because it is not designed to protect against the harm that occurred.

Here is why: When the traffic light turns red for north/south vehicular traffic on Wisconsin Avenue, the pedestrian signal controlling pedestrian traffic crossing Wisconsin Avenue displays the white icon of a person walking, indicating it is safe to cross Wisconsin Avenue (Mrs. Fenichel's route of travel). Simultaneously, the traffic light controlling vehicular traffic on Jenifer Street (where the WMATA bus was turning from) turns green, allowing vehicles to make a right turn onto Wisconsin Avenue. Thus, the pedestrian signal provides no protection for pedestrians crossing Wisconsin Avenue from vehicular traffic turning onto

Wisconsin Avenue from Jenifer Street. Rather, as at all intersections, the rules of the road apply and it is the turning driver's responsibility to observe, and yield to, pedestrians in the crosswalk.[7]

Because Section 2302.3 is not designed to protect against the harm that occurred here, it cannot be used against Mrs. Fenichel in WMATA's attempt to prove contributory negligence.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiff respectfully requests that the Court prohibit WMATA from making any reference to DCMR Section 2302.3 during trial.

Respectfully submitted,

BRUCE J. KLORES & ASSOCIATES, P.C.

By   /s/ Scott M. Perry
   Bruce J. Klores (358548)
   Scott M. Perry (#459841)
   1735 20th Street, N.W.
   Washington, DC 20009
   P: 202-628-8100
   F: 202-628-1240
   Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served electronically on this 4th day of August 2008, on the following counsel:

Gerard Joseph Stief, Esquire
Janice Lynn Cole, Esquire
WMATA 600 5th Street, NW
Washington, DC 20001

     /s/ Scott M. Perry
     Scott M. Perry

---

[7] Although WMATA apparently disputes even this basic premise:
Request for Admission 19: WMATA requires that its bus drivers yield the right of way to pedestrians in crosswalk at all times.
WMATA Answer: Denied.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT R. FENICHEL, M.D. Individually, and as Personal Representative of the Estate and Next of Kin of EMILY S. FENICHEL, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al. <br><br> Defendants. | Case No. **1:07-CV-00768-JR** |

## **ORDER**

The Court, having considered Plaintiff's Motion *In Limine* To Exclude Reference To, Or Reliance Upon, D.C. Municipal Regulation § 2302.3, and any opposition thereto, hereby Orders that the motion is;

GRANTED.

_____
United States District Judge

*CDCR 18-2302*

CODE OF D.C. MUNICIPAL REGULATIONS
Copyright (c) 2008 Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* THIS FILE INCLUDES ALL REGULATIONS ADOPTED AND PUBLISHED THROUGH THE \*\*\*
\*\*\* D.C. REGISTER, VOL. 55, ISSUE 17, APRIL 25, 2008 \*\*\*

TITLE 18. VEHICLES AND TRAFFIC
CHAPTER 23. PEDESTRIANS

CDCR 18-2302 (2008)

18-2302. PEDESTRIAN "WALK," "DON'T WALK," AND "WAIT" SIGNALS

2302.1 Whenever special pedestrian control signals exhibiting the words "WALKS," "DON'T WALK," or "WAIT" are in place, such signals shall indicate and apply to pedestrians as set forth in this section.

2302.2 Pedestrians facing a "WALK" signal may proceed across the roadway in the direction of the signal and shall be given the right-of-way by the drivers of all vehicles.

2302.3 No pedestrian shall start to cross the roadway in the direction of a "DON'T WALK" or "WAIT" signal.

2302.4 [Repealed] D.C. Law 7-34, 34 DCR 5316, 5317 (August 14, 1987)

SOURCE: Commissioners' Order 274,310/949 effective September 1, 1949, 17 DCRR §§ 12 (October 19, 1970).; as amended by § 4 of the Pedestrian Protection Amendment Act of 1987, D.C. Law 7-34, 34 DCR 5316, 5317 (August 14, 1987) History of Regulations since Last Compilation (March 1997)

## COUNTDOWN PEDESTRIAN SIGNALS

| ACSA | INTERSECTION | SIGNALIZED INTERSECTION | NUMBER INSTALLED | INSTALLED BY | DATE INSTALLED |
|---|---|---|---|---|---|
| 5122 | Georgia Avenue and Dahlia Street NW | 1 | 8 | Republic | 3/10/05 |
| 5124 | Georgia Avenue, Eastern Avenue, Blair Road NW | 1 | 10 | Republic | 3/10/05 |
| 5125 | Georgia Avenue and Elder Street NW | 1 | 8 | Republic | 3/10/05 |
| 5128 | Georgia Avenue, Gallatin Street, Arkansas Avenue NW | 2 | 2 | Republic | 3/10/05 |
| 5138 | Georgia Avenue and Missouri Avenue NW | 2 | 6 | Republic | 3/10/05 |
| 5237 | Georgia Avenue and Aspen Street NW | 1 | 8 | Republic | 3/10/05 |
| 5147 | Georgia Avenue and Van Buren Street NW | 1 | 4 | Republic | 3/10/05 |
| 5142 | Georgia Avenue and Piney Branch Road NW | 1 | 8 | Republic | 3/10/05 |
| 5117 | Georgia Avenue, Alaska Avenue, Kalmia Road NW | 2 | 14 | Republic | 3/11/05 |
| 5129 | Georgia Avenue and Geranium Street NW | 1 | 8 | Republic | 3/11/05 |
| 6130 | Wisconsin Avenue, Albemarle Street, Sears Crossing NW | 2 | 10 | Republic | 3/11/05 |
| 6155 | Wisconsin Avenue and Woodley Road NW | 1 | 8 | Republic | 3/11/05 |
| 6140 | Wisconsin Avenue and Harrison Street NW | 1 | 8 | Republic | 3/11/05 |
| 6141 | Wisconsin Avenue and Jenifer Street NW | 1 | 8 | Republic | 3/11/05 |
| 6156 | Tenley Circle NW | 4 | 20 | Republic | 3/14/05 |
| 6136 | Wisconsin Avenue and Fessenden Street NW | 1 | 8 | Republic | 3/14/05 |
| 6131 | Wisconsin Avenue and Brandywine Street NW | 1 | 8 | Republic | 3/14/05 |
| 6133 | Wisconsin Avenue and Davenport Street NW | 1 | 6 | Republic | 3/14/05 |
| 6159 | Wisconsin Avenue and Ellicott Street and 42nd Street NW | 2 | 8 | Republic | 3/14/05 |
| 6152 | Wisconsin Avenue and Van Ness Street NW | 1 | 8 | Republic | 3/14/05 |
| 6135 | Wisconsin Avenue and Edmonds Street NW | 1 | 2 | Republic | 3/14/05 |
| 6143 | Wisconsin Avenue and Macomb Street N.W. | 1 | 8 | Republic | 3/14/05 |
| 6144 | Wisconsin Avenue and Massachusetts Avenue N.W. | 1 | 8 | Republic | 3/14/05 |
| 6146 | Wisconsin Avenue and Newark Street NW | 1 | 8 | Republic | 3/14/05 |
| 6151 | Wisconsin Avenue and Rodman Street NW | 1 | 4 | Republic | 3/14/05 |
| 6246 | Wisconsin Avenue and Upton Street NW | 1 | 8 | Republic | 3/14/05 |
| 1241 | Rock Creek Parkway and Kennedy Center Ramp NW | 1 | 4 | Republic | 3/15/05 |

GOVERNMENT OF THE DISTRICT OF COLUMBIA
DEPARTMENT OF TRANSPORTATION

Office of the General Counsel



June 20, 2008

Scott M. Perry Esq.
Bruce J. Klores & Associates
1735 – 20th Street NW
Washington, DC 20009

    Re:    *Fenichel v. WMATA*
            *Subpoena to District Department of Transportation*

Dear Mr. Perry:

Enclosed are our responses to your Subpoena to the District Department of Transportation dated May 29, 2008, wherein you requested copies of the following:

- Document(s) sufficient to determine when the pedestrian walk signal located in the Southeast Corner of Wisconsin Avenue, N.W. at the intersection of Wisconsin Avenue, NW. and Jenifer Street, N.W. (facing pedestrians crossing Wisconsin Avenue, N.W. from West to East) was installed.

Please find the attached documents of public records held by the District Department of Transportation that is responsive to your subpoena.

If you have any questions regarding the information discussed in this letter, feel free to contact me at (202) 671-3235 or diana.jordan@dc.gov.

Sincerely,

Diana G. Jordan
FOIA Officer, Claims/Litigation Manager

Enclosures as noted.