**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT R. FENICHEL, M.D. )<br>Individually, and as Personal )<br>Representative of the )<br>Estate and Next of Kin of )<br>EMILY S. FENICHEL, Deceased, )<br>    )<br>    Plaintiff, )<br>    )<br>v. )<br>    )<br>WASHINGTON METROPOLITAN )<br>AREA TRANSIT AUTHORITY, et al. )<br>    )<br>    Defendants. )<br>_____ ) | Case No. 1:07-CV-00768-JR |

**PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN**
**TESTIMONY OF WITNESS MATTHEW CLARK**

Plaintiff, through counsel, and pursuant to the Court's inherent powers, moves this Court to exclude certain testimony of witness, Matthew Clark, that is not based on his personal observations. In support of this Motion, Plaintiff states as follows:

**INTRODUCTION**

This case arises from the death of Emily Fenichel, a 64 year old wife, mother and grandmother, who while in a crosswalk on Wisconsin Avenue on June 8, 2006, was run over by a WMATA bus. WMATA concedes that Mrs. Fenichel was in the crosswalk when she was struck and killed; that Mrs. Fenichel was not crossing against the flow of vehicular traffic on Wisconsin Avenue; and that its bus driver never saw Mrs. Fenichel in the crosswalk even though she was between 16 (Defendant) and 21 feet (Plaintiff and Metropolitan Police Department) across Wisconsin Avenue when struck. Yet, WMATA seeks to convince the jury that Mrs. Fenichel caused her own death.

Specifically, WMATA seeks to prove that Mrs. Fenichel was contributorily negligent by stepping into the crosswalk late in the crossing sequence.[1] To establish the moment when Mrs. Fenichel stepped into the crosswalk, WMATA seeks to rely on videotaped deposition testimony from Matthew Clark, a witness who is expected to be beyond the subpoena power of the Court.[2]

Mr. Clark, 25, has claimed that he was walking across Wisconsin Avenue from east to west and that as he reached the curb, Mrs. Fenichel passed him traveling from west to east. Mr. Clark admits that he did not see Mrs. Fenichel get struck by the WMATA bus (because he had already passed her and was headed in the opposite direction.)  But he guessed that the impact occurred after he took "one or two steps" onto the curb.

Mr. Clark further admitted that he did not look at the pedestrian crossing signal at any time while he was crossing, or after Mrs. Fenichel was struck by the WMATA bus. Yet, when asked at deposition, he guessed that the pedestrian signal would have likely shown that "5" or "4" seconds remained to cross.

It is this statement -- his guess as to the timing of the pedestrian crossing signal – which was not based on his personal observation, that Plaintiff seeks to exclude.

## MEMORANDUM OF POINTS AND AUTHORITIES

It is axiomatic that an eyewitness can only testify to matters of personal observation. *See United States ex rel. El-Amin v. Geo. Wash. Univ.*, 533 F.Supp. 2d 12, *25-26 (D. D.C. 2008) ("Federal Rule of Evidence 602 requires that non-experts testify only to matters of which they have personal knowledge; its purpose is to assure reliability.").

---

[1] The crossing sequence is more fully described in Plaintiff's pending Motion *In Limine* to Exclude Reference To, Or Reliance Upon, D.C. Municipal Regulation § 2302.3 (Document No. 47).

[2] For the benefit of the Court and the jury, Plaintiff's counsel has reviewed Mr. Clark's testimony and provided WMATA with the portions of his testimony that Plaintiff seeks to redact as either not relevant or objectionable. To date, WMATA has provided no response to Plaintiff.

Mr. Clark conceded at deposition that he did not see Mrs. Fenichel when she was struck by the WMATA bus because he was headed in the opposite direction:

> Q: And do you recall from what you observed – now, you didn't actually see the impact between the bus and Mrs. Fenichel, did you?
>
> A. No.

Deposition of Matthew Clark of 1/4/08 at p. 19, ll. 1-4.  He further conceded that he **did not look at the pedestrian signal at the time of impact**:

> Q: When the impact occurred do you remember looking at the pedestrian signal?
>
> *A: No.  I had already – was already on the street or on the sidewalk.*
>
> Q: Okay, you didn't – but you didn't turn around and look at the pedestrian signal on the other side of Wisconsin?
>
> *A: No.*

Clark Dep. at p. 39, ll. 14-21.

In a June 20, 2006 statement (twelve days after Mrs. Fenichel's death), Detective Michael Miller (the MPD investigator) wrote that Mr. Clark claimed to have seen the number "5" or "4" on the pedestrian signal "[a]fter it happened."[3]

WMATA asked Mr. Clark about this statement at his deposition.  Mr. Clark testified that his statement to Detective Miller about the timing of the pedestrian signal was **not based on personal observation**, but rather was simply a guess on his part:

> Q: Okay.  Do you remember telling Detective Miller at any point what the countdown was after the accident had happened on the pedestrian signal?

---

[3] This is contained in a hearsay Witness Statement that Detective Miller typed at the station after talking to Mr. Clark at his workplace.  There is no explanation of the timing that correlates with "after it happened.

3

> *A: I gave him **what I thought, what I thought the count was probably at** based on my experience of walking that street so many times. I mean, considering I had walked it often enough to know that once I – every time I reached the end of the corner I usually would have four or five seconds left on the countdown.*

Clark Dep. at p. 40, ll. 4-13.  Mr. Clark further admitted that immediately after the collision, he went to a local bar and that he had consumed three "Jameson on the rocks" by the time the police investigator found him and talked to him.  Clark Dep. at p. 47, ll. 12-16.  He also testified that he was talking on a cell phone with his girlfriend as he crossed Wisconsin Avenue and when the collision occurred.  *See* Clark Dep. at p. 12, ll. 12-14 & p. 16, ll. 4-10.

Mr. Clark's opinion as to the amount of time left on the pedestrian signal is not admissible because it is not based on personal observation.  It lacks any indicia of trustworthiness or reliability because it is not based on personal observation, and his statements cannot be cross examined because he will not be present at trial.  In fact, when WMATA attempted to pin him down as to his exact observations, he testified that he **did not** look at the pedestrian signal while crossing:

> Q: And as you approached the curb on the west side as you completed crossing the street did you notice what the walk/don't walk sign reflected at that point?
>
> A: ***I couldn't say,*** *but I mean based on my experience I know I still enough time to complete my walk.*
>
> Q: Do you have a recollection though as to what it was flashing on that evening?
>
> A: ***Not exactly.***

Clark Dep. at p. 12, ll. 2-11.  This, combined with his statement that he was talking on his cell phone at the time of the impact, undermines the reliability of his opinion.  The Rules of Evidence exist to ensure that this very type of speculation, not based on personal observation, be excluded.

4

Mr. Clark's statements as to the timing of the pedestrian signal are based on nothing more than his speculation. It is pure opinion. He is not an expert. His testimony has no foundation in personal observation, the linchpin required to make eyewitness testimony admissible.

## CONCLUSION

WHEREFORE, for the foregoing reasons, and any other reasons that the Court deems appropriate, Plaintiff respectfully requests that statement from Matthew Clark's videotaped deposition as to the timing on the pedestrian signal be excluded.

Respectfully submitted,

BRUCE J. KLORES & ASSOCIATES, P.C.

By__/s/ Scott M. Perry_____
   Bruce J. Klores (358548)
   Scott M. Perry (#459841)
   1735 20th Street, N.W.
   Washington, DC 20009
   P: 202-628-8100
   F: 202-628-1240
   Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served electronically on this 12th day of August 2008, on the following counsel:

Gerard Joseph Stief, Esquire
Janice Lynn Cole, Esquire
WMATA 600 5th Street, NW
Washington, DC 20001

    _____/s/_Scott M. Perry_____
    Scott M. Perry

1845/MIL.clark

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT R. FENICHEL, M.D.<br>Individually, and as Personal<br>Representative of the<br>Estate and Next of Kin of<br>EMILY S. FENICHEL, Deceased,<br><br>    Plaintiff,<br><br>v.<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY, et al.<br><br>    Defendants. | Case No. **1:07-CV-00768-JR** |

## **ORDER**

The Court, having considered Plaintiff's Motion *In Limine* To Exclude Certain Testimony of Witness Matthew Clark, and any opposition thereto, hereby Orders that the motion is;

GRANTED.

_____
United States District Judge