## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ROBERT R. FENICHEL, M.D.** | : |
| **Plaintiff,** | : |
| **v.** | :   **Case No.: 1:07-cv-00768-JR** |
| **WASHINGTON METROPOLITAN** <br> **AREA TRANSIT AUTHORITY** | : |
| **Defendant.** | : |

## DEFENDANT WMATA'S MOTION IN LIMINE TO PROHIBIT PLAINTIFF FROM PRESENTING EVIDENCE RELATED TO THE DISCIPLINE OR UNEMPLOYMENT COMPENSATION <u>HEARING OF THE BUS DRIVER</u>

Defendant Washington Metropolitan Area Transit Authority ("WMATA") hereby moves the Court to prohibit Plaintiff from presenting evidence related to either the discipline or the unemployment compensation hearing regarding the bus operator.  As detailed in the accompanying memorandum of points and authorities, such evidence is irrelevant, based on hearsay, violative of WMATA's self-evaluative privilege, and contrary to the principle that subsequent remedial measures are not admissible for public policy reasons.

WHEREFORE, for the foregoing reasons, WMATA respectfully requests that this motion be granted and that Plaintiff be precluded from offering evidence related to either the discipline or unemployment compensation hearing regarding the bus operator.

**Coordination With Counsel**

The undersigned contacted counsel for Plaintiff prior to the filing of this motion.

Plaintiff will oppose this motion.

Respectfully submitted,

**WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY**

 /s/ Gerard J. Stief
Gerard J. Stief  #925933
Associate General Counsel
(202) 962-1463

 /s/ Janice L. Cole
Janice L. Cole  #440351
Associate General Counsel
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-2543
Attorneys for Defendant WMATA

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of August, 2008 a copy of Defendant

WMATA's Motion In Limine to Prohibit Plaintiff From Presenting Evidence Related to

the Discipline or Unemployment Compensation Hearing of the Bus Operator  was sent

via the Court's electronic filing service to:

Bruce J. Klores
Scott M. Perry
Bruce J. Klores & Associates
1735 20th Street, NW
Washington, DC 20009

 /s/ Gerard J. Stief
Gerard J. Stief

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————— :
                                                    :
**ROBERT R. FENICHEL, M.D.**       :
                                                    :
            **Plaintiff,**                    :
                                                    :
      **v.**                                       :      **Case No.: 1:07-cv-00768-JR**
                                                    :
**WASHINGTON METROPOLITAN**   :
  **AREA TRANSIT AUTHORITY**     :
                                                    :
            **Defendant.**                  :
                                                    :
———————————————————— :

**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT WMATA'S MOTION**
**IN LIMINE TO PROHIBIT PLAINTIFF**
**FROM PRESENTING EVIDENCE**
**RELATED TO THE DISCIPLINE OR**
**UNEMPLOYMENT COMPENSATION**
<u>**HEARING OF THE BUS DRIVER**</u>

<u>**Factual Background**</u>

This case arises from a tragic June 6, 2006 accident between a pedestrian and a Metrobus at the intersection of Wisconsin Avenue and Jenifer Street, N.W. The decedent, Emily Fenichel, was struck and killed by the bus as it was completing a right turn onto southbound Wisconsin Avenue at approximately 10:59 p.m. Over WMATA's objections, the Court directed WMATA to produce certain information related to the subsequent remedial discipline of the bus operator and the ensuing unemployment compensation hearing. However, the Court made clear at the time that it was only ruling on the discovery issues, not whether any such information is admissible at trial. The latter issue is the subject of this motion. Although WMATA

has not yet received Plaintiff's pretrial statement, WMATA anticipates that Plaintiff will attempt to offer evidence related to the termination of the bus operator as a result of this accident, as well as the unemployment hearing on the unemployment claim brought by the bus operator.

## ARGUMENT

I.    **The Court Should Exclude Any Evidence Related To The Disciplinary Action WMATA Took Against The Bus Operator Because Such Evidence Is Irrelevant, Based On Hearsay, Violative Of WMATA's Self-Evaluative Privilege, And A Subsequent Remedial Measure.**

The real issues in this case are whether the bus operator was negligent and, if so, whether the decedent was contributorily negligent or assumed the risk by stepping off the curb after the pedestrian control signal had changed to a "Don't Walk" signal. Everything else is a red herring, designed to obfuscate the real issues in this case.  As such, it is irrelevant.  Moreover, any disciplinary action of its very nature is based on hearsay, without benefit of discovery.

The law is well-established that any actions taken by way of a self-evaluative or subsequent remedial measure nature may not be utilized against the defendant. Federal courts interpreting discovery rules have denied or strictly limited discovery (let alone admissibility) based purely on public policy considerations of protecting such self-evaluative processes, opinions, and conclusions.  See Gilbert v. WMATA, Civil Action No. 85-535 (D.D.C., Oct. 9, 1986) (Revercomb, J.) (safety evaluations of rail stations) (Exhibit A); Whisenton v. WMATA, Civil Action No. 88-2637, slip op. at 3 (D.D.C., Dec. 22, 1988) (Gessell, J.) (bus operator evaluations) (Exhibit B); Georgetown Univ.

2

Hosp., 656 F. Supp. 824, 826 (D.D.C. 1987) and Bredice v. Doctor's Hosp., 50

F.R.D. 249, 250-51 (D.D.C. 1970) (hospital staff committee charged with reviewing

clinical work at hospital); O'Connor v. Chrysler Corp., 86 F.R.D. 211, 216-18 (D.Ma.

1980) and Penk v. Oregon State Bd. of Higher Education, 99 F.R.D. 506 (D.Or. 1982)

(reports of affirmative action programs prepared to comply with federal employment

opportunity laws); Webb v. Westinghouse Electric Corp., 81 F.R.D. 431 (E.D. Pa.

1978).

   Subsequent to this Court's December 5, 2007 Memorandum Order (Docket No.

31) denying WMATA's motion for a protective order regarding the discovery of the

documents related to discipline and the unemployment hearing, Judge Bates of this

Court issued a Memorandum and Order in Sutton v. WMATA, No. 07-1197 (D.D.C.

Dec. 17, 2007) (Exhibit C), recognizing and applying in part WMATA's self-evaluative

privilege to a discovery dispute in that case.  Specifically, Judge Bates allowed

WMATA to protect from discovery the opinion, as opposed to the factual, portions of

the documents in issue.  He cited the D.C. Circuit's decision in First Eastern Corp. v.

Mainwaring, 21 F.3d 465, 466-67 (D.C. Cir. 1994), where the Court of Appeals

discussed the self-evaluative privilege, but declined to apply it where waived before

the trial court.

   The D.C. Court of Appeals likewise has considered the federal court's approach

and has recognized that public policy considerations justify protecting from discovery

the analyses, opinions, and conclusions drawn by scientific researchers from their

3

data. Plough Inc. v. Nat'l Academy of Sciences, 530 A.2d 1152, 1157 (D.C. 1987), citing Ross v. Bolton, 106 F.R.D. 22, 24 (S.D.N.Y. 1985) (material representing staff analyses of data in quasi-governmental agencies investigation into illegal securities trading protected from discovery; defendant permitted discovery of factual data, but not staff analyses of data).

In Martin v. Potomac Electric Power Co., 1990 WL 158787, at 2 (D.D.C. 1990), the district court declined to apply the privilege, reasoning that, in the context of employment discrimination cases, litigation is more effective in furthering the policies behind Title VII than the encouragement of candid affirmative action plans, and that fair Title VII litigation, where "proof of intent is so vital and yet so difficult to obtain," would be enhanced by discovery of such reports.    The court in Martin nonetheless stated that the privilege recognized in Bredice had continuing vitality in cases involving public health and safety.   It stated, "It is critical that efforts to understand and correct dangerous conditions are not blocked because companies fear that evidence gathered as part of the corrective process will later be used against them."   1990 WL 158787 at 1.

In Granger v. National R.R. Passenger Corp., 116 F.R.D. 507 (E.D. Pa. 1987), the district court applied the self-evaluative privilege and protected the plaintiff from discovering opinions and conclusions regarding an accident that Amtrak investigated. Plaintiff Granger had sought to compel Defendant Amtrak to produce documents without redactions under portions with headings, "Accident Analysis," "Cause,"

4

"Contributing Factors," and "Committee Recommendations." Amtrak asserted the self-critical analysis doctrine protected production of these redacted sections. The district court discussed the policies underlying this privilege or doctrine, noting that it is based on "the need to promote candid and forthright self-evaluation." Granger, 116 F.R.D. at 509. The court then protected from discovery the portions of the documents which clearly encompassed opinions and recommendation, i.e., Accident Analysis and Committee Recommendations, finding that the production of these portions "would tend to hamper honest, candid self-evaluation." Granger, 116 F.R.D. at 510.

In the instant case, the subjective decision by WMATA to terminate the bus operator involved in the accident in issue involves the very same self-evaluative which the above-referenced cases prohibit use against the defendants. This subjective decision by WMATA to terminate the bus operator, as noted above, inherently is based on hearsay. This trial should be based on sworn testimony and other relevant evidence such as photographs, not on remedial self-evaluation designed to prevent future accidents. Moreover, the decision to terminate a bus operator is, by its very nature, a subsequent remedial action designed to prevent a future accident. Just as a plaintiff could not present evidence that WMATA repaired a cracked tile on a station platform in a trip-and-fall case, so too can Plaintiff in the instant case not be allowed to present evidence related to the fact that WMATA terminated the bus operator, or the reasons why. See Fed. R. Evid. 407.

5

II.     **The Court Should Exclude Any Evidence Related To The Unemployment Compensation Hearing Because Plaintiff's Actions Are In Violation Of D.C. Code § 51-113 And Neither Collateral Nor Judicial Estoppel Apply To Bar Claims By Governmental Entities As A Matter Of Law.**

Upon information and belief, WMATA understands that Plaintiff will also seek to offer evidence related to the unemployment compensation proceedings, including the arguments raised by WMATA in defending that claim by the bus operator.[1] WMATA's argument on this issue is even stronger now than it was in opposition to Plaintiff's Motion for Partial Summary Judgment last fall because the D.C. Court of Appeals, based on a joint request by WMATA and the bus operator, remanded for unemployment benefits to be awarded. Thus, the prior unemployment determination is essentially a nullity, and Plaintiff should not be permitted to produce evidence of such a nullity.

D.C. Code § 51-113 (2001) deals with the disclosure of information in unemployment compensation proceedings. Section 51-113(f) specifically addresses the confidentiality mandated in these proceedings, providing in relevant part:

> Except as hereinafter otherwise provided, information obtained from any employing unit or individual pursuant to the administration of this subchapter and determinations as to the benefit rights of any individual shall be held confidential and shall not be disclosed or be open to public inspection in any manner, whether by subpoena or otherwise, revealing the individual's or employing unit's identity. . . .

---

[1] Plaintiff has attempted to subpoena for trial the WMATA attorney who handled the unemployment hearing, even though this Court rejected Plaintiff's previous efforts to depose her. WMATA will file a separate motion to quash service on that attorney.

6

Thus, § 51-113(f) specifically prohibits disclosure of the identity of both the employer and the employee by subpoena or otherwise. Here, information specifically identifying both the employer and the employee by name and address was improperly obtained from DOES through subpoena issued by Plaintiff in violation of § 51-113(f). Aside from the direct violation of § 51-113(f), that statute underscores the limited nature of, and confidentiality associated with unemployment compensation hearings, further undermining Plaintiff's claims of estoppel, as discussed below.

Plaintiff in essence is trying to use either a non-mutual collateral estoppel or judicial estoppel theory against WMATA. Neither theory is supportable for the following additional reasons.

In Jack Faucett Assoc., Inc. v. American Tel. and Tel. Co., 744 F.2d 118, 124 (D.C. Cir. 1984), the D.C. Circuit held that the District Court abused its discretion in allowing the plaintiffs to invoke offensive collateral estoppel, stating:

> Under the doctrine of offensive collateral estoppel or issue preclusion, a defendant is precluded from re-litigating identical issues that the defendant litigated and lost against another plaintiff. . . . The doctrine is detailed, difficult, and potentially dangerous. In Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979), the Supreme Court refused to prohibit offensive collateral estoppel altogether, saying instead that "the preferable approach . . . is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." 439 U.S. at 331. Recently, the Court again acknowledged the existence of offensive collateral estoppel, at least against non-governmental defendants. See United States v. Mendoza, 464 U.S. 154 (1984) (holding the offensive collateral estoppel cannot be used against the government).

7

In <u>Mendoza</u>, an immigration case, the Court held "that the Court of Appeals was wrong in applying non-mutual collateral estoppel against the Government." 464 U.S. at 164.

These federal court cases are consistent with District of Columbia Court of Appeals decisions holding that estoppel generally is not applicable to governmental entities. In <u>Mamo v. District of Columbia</u>, 934 A.2d 376, 386 (D.C. 2007) the Court in an eminent domain case rejected the plaintiff's promissory estoppel argument, stating:

> Nor has Mr. Mamo shown any misconduct on the part of Mr. Teasley or other District government official for the nonpayment of such damages; but, as we have stated, "'the doctrine of equitable estoppel, if applicable against the government at all, may be invoked only where there is a showing of some type of affirmative misconduct by a government agent.'" <u>Leekley v. District of Columbia Dept. of Employment Servs.</u>, 726 A.2d 678, 680 (D.C. 1999) (quoting <u>Robinson v. Smith</u>, 683 A.2d 481, 492 (D.C. 1996)).

<u>Mamo</u> in turn was cited in Judge Steadman's concurring opinion in <u>Fairman v. District of Columbia</u>, 934 A.2d 438, 449 (D.C. 2007):

> Principles of judicial and equitable estoppel applicable to private parties do not translate readily where the government is a litigant and considerations of protection of the public fisc and the public interest are involved. <u>See e.g.</u>, <u>District of Columbia v. Gould</u>, 852 A.2d 50, 56-57 (D.C. 2004); <u>Mamo v. District of Columbia</u>, No. 06-CV-845, slip op. at 17-19 (Oct. 18, 2007).

In <u>Gould</u>, 852 A.2d at 56, the Court of Appeals declined to apply offensive collateral estoppel against the District of Columbia, stating:

8

> Moreover, "decisions of the Supreme Court . . . make clear that the estoppel can rarely be asserted against the government." . . . This is because "the government is never disabled from protecting the public interest by reason of the past mistakes of its agents." Udall v. Oelschlaeger, 129 U.S. App. D.C. 13, 389 F.2d 974, 977 (D. C. Cir. 1978). . . . "Estoppels against the public are little favored, and they generally cannot be asserted against, and are not applicable to, the government or governmental entities."

In the instant case, it is established law that WMATA is a governmental entity possessing sovereign immunity by virtue of the immunity extended to it by Maryland, Virginia, and Congress on behalf of the District of Columbia. See Watters v. WMATA, 295 F.3d 36, 39-40 (D.C. Cir. 2002); Morris v. WMATA, 781 F.2d 218, 220 (D.C. Cir. 1986). The same principles discussed in the cases cited above demonstrate that neither collateral estoppel, nor any other type of estoppel, can be used against WMATA in this case under either federal or District of Columbia law.

Even if the Court were to look past the rule that collateral estoppel should not be applied against governmental entities, Plaintiff's motion simply fails to meet the requisite elements for collateral estoppel. In Jack Faucett Assoc., Inc. v. AT&T, 744 F.2d at 125, the D.C. Circuit listed three conditions that must be satisfied before collateral estoppel can apply:

> (1) The issue must have been actually litigated, that is contested by the parties and submitted for determination by the court.
>
> (2) The issue must have been "actually and necessarily determined by a court of competent jurisdiction" in the first trial.

> (3) Preclusion in the second trial must not work on unfairness.

Failure to meet any of the three elements defeats applicability of collateral estoppel.

In the instant case, Plaintiff fails to meet all three of the elements. With respect to the first element, the issue which Plaintiff claims DOES performed, "determine liability for the accident," was not "actually litigated." (Plaintiff's Memo at 9). Rather, unemployment compensation proceedings serve a totally different purpose, with different burdens of proof. The issue in unemployment compensation proceedings is whether a former employee is entitled to statutory pay following separation from a job. By contrast, Plaintiff improperly seeks to expand the narrow issue before DOES into broad findings of breach of duty, proximate cause, and absence of contributory negligence. These basic elements related to a tort claim simply were not resolved in the proceedings before DOES, even before the remand by the Court of Appeals.

Additionally, contributory negligence by the decedent is not determinative, or relevant, in an unemployment compensation context. However, it is crucially relevant in a tort claim under District of Columbia law, where contributory negligence is an absolute defense. See District of Columbia v. Brown, 589 A.2d 384, 388 (D.C. 1991); D.C. Standardized Civil Jury Instruction 5.15 (2002)("Contributory Negligence Defined"). According to 18 DCMR § 2302.3, "no pedestrian shall start to cross the roadway in the direction of a "DON'T WALK or "WAIT" signal." There is strong evidence in this case that the decedent entered the crosswalk during the illuminated "hand" signal denoting "Don't Walk."

Similarly, and for substantially the same reasons, Plaintiff cannot meet the second element. The essential elements related to a tort claim were not "actually and necessarily determined by a court of competent jurisdiction in the first trial." Although in certain circumstances collateral estoppel may emanate from an administrative proceeding, the fact that unemployment compensation proceedings do not involve discovery, and only entail a limited, brief hearing, further counsels against application of collateral estoppel.

Plaintiff cannot meet the third element in that the application of collateral estoppel would "work an unfairness" to WMATA and the riding public and taxpayers who support it. The findings of the D.C. Police Major Crash Unit Report and other evidence provide a strong basis for a jury to find that the bus operator was not negligent or that the decedent's action in walking against the pedestrian traffic control signal was the proximate and arguably sole cause of this tragic accident. Plaintiff is trying to take advantage of a proceeding designed for a limited purpose in an attempt to avoid what is his burden -- proving a case of negligence and defending a strong argument of contributory negligence.

The rationale of the foregoing cases applies equally to judicial estoppel. See Fairman v. District of Columbia , 934 A.2d at 439. (Steadman, J. concurring) ("Principles of judicial and equitable estoppel applicable to private parties do not translate readily where the government is a litigant and consideration of protection of

11

the public fisc and the public interest are involved"). The following cases specifically address the nonapplicability of judicial estoppel to governmental entities.

In <u>State of New Hampshire v. State of Maine</u>, 532 U.S. 742 (2001), the Supreme Court held that judicial estoppel barred New Hampshire from asserting a completely inconsistent position on the very same point in a river boundary case than the position taken in an earlier Supreme Court case. However, these cases involved a dispute between two states over which the Supreme Court had original jurisdiction. The Supreme Court specifically noted the normal rule "that 'ordinarily the doctrine of estoppel or that part of it which precludes inconsistent positions in judicial proceedings is not applied to states,'" citing to <u>Illinois ex rel. Gorden v. Campbell</u>, 329 U.S. 362, 369 (1946). <u>See also Disability Rights Council v. WMATA</u>, 239 F.R.D. 9, 24 (D.D.C. 2006) ("Nor could the putative class members take advantage of judicial estoppel, which is generally unavailable as to government litigants").

The D.C. Circuit does not recognize judicial estoppel. <u>See United Mine Workers 1974 Pension v. Pittston Co.</u>, 984 F.2d 469, 477 (D.C. Cir. 1993) ("we have not previously embraced the doctrine of judicial estoppel [footnote omitted] in this circuit and we decline to do so in this case"). In footnote 12 of that decision, the D.C. Circuit cited <u>Konstantinidis v. Chen</u>, 626 F.2d 933, 938 (D.C. Cir. 1980) for the proposition that "far from endorsing judicial estoppel as the most appropriate means of effectuating that policy, we expressed a preference for the 'determination of cases on the basis of the true facts as they might be established ultimately.'" 984 F.2d at

12

477 n.12.  Finally, even if the Court disagrees with WMATA's position that any of the referenced evidence must be excluded as a matter of law, nonetheless the prejudicial impact outweighs the probative value, and should also be excluded on that basis.  <u>See</u> Fed. R. Evid. 403.

## <u>CONCLUSION</u>

For the foregoing reasons, WMATA respectfully requests that its Motion in Limine be granted.

Respectfully submitted,

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**

 /s/ Gerard J. Stief
Gerard J. Stief  #925933
Associate General Counsel
(202) 962-1463

 /s/ Janice L. Cole
Janice L. Cole  #440351
Associate General Counsel
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-2543
Attorneys for Defendant WMATA

13

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ROBERT R. FENICHEL, M.D.** | : |
| **Plaintiff,** | : |
| **v.** | : **Case No.: 1:07-cv-00768-JR** |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY** | : |
| **Defendant.** | : |

### ORDER

Upon consideration of Defendant WMATA's Motion In Limine to Prohibit Plaintiff

From Presenting Evidence Related to the Discipline or Unemployment Compensation

Hearing of the Bus Operator , and the Opposition thereto, it is by the Court this _____

day of _____, 2008:

ORDERED, that the motion is granted.

_____
United States District Judge

Electronic copies to:

Gerard J. Stief
Janice L. Cole
Counsel for Defendant WMATA

Bruce J. Klores
Scott M. Perry
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CLAUDE GILBERT, ETC.,                :

            Plaintiffs               :

        v.                           :          C.A. No. 85-535
                                     :
WMATA, ET AL.,                       :      F I L E D
                                     :
            Defendants               :      OCT - 9 1986

                                        JAMES F. DAVEY, Clerk
                    ORDER

    This matter is before the Court on plaintiff's Motion to

Compel WMATA to produce ten documents responsive to plain-

tiff's interrogatories numbers 2 and 3 but claimed to be

privileged.  The Court has considered the motion and oppo-

sition, and has viewed the documents in camera.  Many of the

documents refer to candid self-evaluation of WMATA's per-

sonnel, policies and escalator safety.  The majority of

these documents are not discoverable as they are protected

by the public policy of encouraging such communication to

improve service and safety.  Other documents are not dis-

coverable as they encompass the mental impressions and con-

clusions of WMATA personnel.

    Plaintiff's Motion to Compel is hereby GRANTED in part

and DENIED in part in accordance with the following direc-

tions:

    1.  Handwritten memorandum from G. Bretz to M. Melling-

ton, dated 4/26/85.  This document is not discoverable, as

it concerns escalator evaluations for the purpose of insti-

tuting remedial safety measures.

EXHIBIT A

-2-

2.  Interoffice memorandum from G. Bretz to M. Mellington, dated 2/4/85.  The first page of this memo must be produced in its entirety as it constitutes a solely factual description of two post-accident inspections.  The second page is not discoverable as it contains the mental impressions and conclusions of the post-accident inspection.

3.  Inter-office memorandum from G. Bretz to D. Cooksley.  The first and third paragraphs of this document are to be produced as they relate to factual descriptions of escalator accidents and inspections.  The second and fourth paragraphs contain mental impressions and conclusions of the inspections and are therefore not discoverable.

The two page Westinghouse escalator maintenance instructions are product recommendations and facts and shall be produced.

4.  Interoffice Memorandum from D. Cooksey to G. Bretz, dated 2/19/85.  This document contains candid self-criticism of WMATA personnel and is therefore not discoverable.

5.  Interoffice Memorandum from G. Bretz to D. Allmmond, dated 1/21/86.  This document is a communication between an agent of WMATA and WMATA counsel.  It was prepared in anticipation of litigation and contains a candid self-evaluation of WMATA personnel and remedial suggestions.  It is therefore not discoverable.

6.  Inter-office Memorandum from Roy Dodge to R. O'Neil, dated 6/1/77.  This document consists primarily of suggestions for remedial improvements to escalators and is not discoverable.

AO 72A

7.  Handwritten Memorandum of Farrell Canup.  WMATA asserts it has produced a typewritten facsimile to plaintiff.  There is therefore no basis for withholding the handwritten document and it shall be produced.

8.  Minutes of Safety Meeting on 4/10/79.  This document consists of self-evaluations of the escalators and a discussion of remedial measures for safety improvements.  It is not discoverable.

9. and 10.  Inter-office Memoranda from G. Bretz to M. Mellington and D. Cooksey, dated 2/15/85 and 2/26/85 respectively.  These documents involve candid evaluations of information disclosed by G. Bretz to counsel for WMATA and are privileged from discovery.

Accordingly, it is by the Court, this __9__ day of October, 1986,

ORDERED that defendant WMATA produce for plaintiff and the Court's review, all discoverable documents as enumerated above.

George H. Revercomb, Judge

10/9/86
Date

-4-

Copies to:

John P. Coale, Esq.
George G. Misko, Esq.
Coale and Associates, P.C.
1019 19th Street, N.W.
Suite 1040
Washington, D.C.  20036

Frederick Abramson, ESq.
Kenneth J. Ingram, Esq.
Judy B. Chase, Esq.
Sachs, Greenbaum and Tayler
1140 Connecticut Avenue, N.W.
Suite 900

Donald Clower, Esq.
David Almond, Esq.
Office of the General Counsel
WMATA - Room 2A13
600 Fifth Street, N.W.
Washington, D.C.  20001

Greta C. Van Susteren, Esq.
511 E. Street, N.W.
Washington, D.C.

Thomas A. Medford, Jr., Esq.
WMATA - 600 Fifth Street, N.W.
Washington, D.C.  20001

Susan Ellis Wild, Esq.
1140 Connecticut Avenue, N.W.
Suite 900
Washington, D.C.  20036

Randell Hunt Norton, Esq.
John Jude O'Donnell, Esq.
Thompson, Larson, McGrail, O'Donnell and Harding
730 15th Street, N.W.
Washington, D.C.  20005

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

CONCHITA WHISENTON,               )
                                  )
            Plaintiff,            )
                                  )
       v.                         )       Civil Action No. 88-2637
                                  )
WASHINGTON METROPOLITAN           )
AREA TRANSIT AUTHORITY,           )
                                  )
            Defendant.            )

## MEMORANDUM AND ORDER

The underlying complaint in this case concerns the injuries plaintiff allegedly sustained when alighting from a Washington Metropolitan Area Transit Authority (WMATA) bus. The Court has before it plaintiff's Motion to Compel Production of Documents, defendant's Opposition thereto; defendant's Motion for a Protective Order filed November 8, 1988 and plaintiff's opposition thereto; and defendant's Motion for a Protective Order filed December 16, 1988, and the Court heard counsel on these motions.

A. **Plaintiff's Motion to Compel.**

Plaintiff seeks to compel production of three types of documents: (1) the incident report prepared by the bus operator concerning the occurrence described in the complaint; (2) the complete driving record for the operator of the bus; and (3) any reports prepared by a supervisor or safety committee regarding the incident. The defendant asserts that the first and third

requests were prepared in anticipation of litigation, and are part of the self-evaluative and deliberative process; thus, they are non-discoverable. It contends that the driving record will not lead to any admissible evidence, as the plaintiff has not alleged a negligent hiring or negligent entrustment theory.

Rule 26 (b)(3) of the Federal Rules of Civil Procedure provides that:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of any attorney or other representative of a party concerning the litigation. (Emphasis added.)

1. The Accident Report

With respect to the first request, the accident report by the driver, the Court has examined the report itself, and found that the plaintiff is entitled to receive it. It appears to have been signed by the driver himself in accordance with the handbook for metrobus operators (plaintiff's ex. 1). Although the plaintiff has the ability to subpoena the driver, statements made in the incident report may be useful for impeachment purposes, as they are made immediately after or on the same day that an accident or incident occurs.

2

2.  Investigative Reports

With respect to reports prepared by a supervisor or safety committee, the Court denies the plaintiff's motion to compel. The Court accepts the defendant's contentions that these reports are, realistically, prepared with an eye toward suits that may be filed as a result of an accident.  Although WMATA requires that these reports always be prepared after an accident, and it has not produced any document stating flatly that they are prepared for litigation, this does not make them reports made in the ordinary course of business without an eye to litigation as plaintiff contends.  A frequent defendant in personal injury cases, WMATA has ample reason to believe that accidents are likely to lead to claims or litigation.  The Court was advised at argument that drivers are not required to file a signed statement or to testify, but rather simply appear for informal questioning which is summarized by the interviewer.  This normal precaution has, on its face, little evidentiary value.

The Court also finds persuasive WMATA's contention that discovery of safety committee reports would intrude on WMATA's qualified privilege for self-examination.  Discovery would impinge on WMATA's ability to evaluate when bus drivers were at fault, what the cause of an accident was, how best to prevent accidents in the future, as well as whether to settle a claim or defend it in court.  Bredice v. Doctor's Hospital, Inc., 50 F.R.D. 249, 250-251 (D.D.C. 1970), aff'd, 479 F.2d 920 (D.C.Cir. 1973).

3

As quoted above, Rule 26 (b)(3) permits discovery of documents prepared in anticipation of litigation only if the party requesting discovery asserts a "substantial need," which plaintiff has not done here, except with respect to the signed statements of the bus driver. She asserts that she suffered a badly broken left leg as a result of the accident, and that she was transported from the scene by ambulance and was unable to gather any names of witnesses or other information on the occurrence. If there were witnesses, the Court would order that she be furnished names and addresses and, on a proper showing, permitted to see their signed statements contained in any of the incident reports. Likewise, if any report contained photos, the plaintiff would have been entitled to see them despite the fact that they might have been made or taken in anticipation of litigation. However, the defendant answered plaintiff's interrogatories on October 11, 1988, and stated that there are no known eyewitnesses to any part of the occurrence, that it does not know the names of any passengers on the bus during the time when the accident occurred and that WMATA has no photographs, plats or diagrams of the scene.

Since mid-October, the plaintiff has had the name and work address of the bus driver, and those whom WMATA sent to the scene of the accident within the hour. She may take the deposition of the driver, and request his copy of the safety committee investigation, which may have been given to him following the investigation.

4

The Court concludes the plaintiff has no substantial need to compel production of accident reports prepared by WMATA supervisors and that such production would intrude on the privileges defendant claims.

C. Driving Record

With respect to the driving records of the bus driver, WMATA objects on the ground that it will not lead to the discovery of any admissible evidence, and defendant's counsel states generally that the reports contain vast quantities of irrelevant evidence, though counsel has not examined the report of this driver nor was it available at argument.

Plaintiff asserts that the record may contain important impeachment material, and that defendant has not yet admitted liability, although it accepts respondeat superior responsibility. Plaintiff contends that the records may show that the driver may have been warned that he had allowed a bus to move when the rear door was still open -- the situation that plaintiff alleges caused her injuries. Plaintiff states that, "A typical habit of operation is for the operator to allow the rear door emergency brake to contain the bus while it is left in a forward gear and thus permit the bus to begin moving as soon as the back door has been closed." However, such a practice does not rise to the level of habit pursuant to Fed. R. Evid. 406, and it may not have been recorded in the driving record in any event.

However, prior accidents of a similar type may be recorded in the driver's record, and these may be relevant, and the record

5

as a whole may disclose a negligent tendency. The defendant is hereby ordered promptly to provide the Court with the single page "cover sheet" described at argument which summarizes all accidents in which the driver was involved, if any, as a bus driver  After in camera inspection, the Court will determine which parts of the file, if any, shall be tendered to plaintiff. The motion to compel discovery of the accident file will be resolved at that time.

B.  Defendant's November 8, 1988 Motion for a Protective Order

Defendant seeks an order protecting during depositions:  (1) the driving record of the operator involved in this occurrence; (2)  WMATA procedures for audit and review of bus driver actions and procedures.

Plaintiff did not fully explain the relevance of WMATA's procedures for auditing and reviewing bus driver actions to his theory of the case.  Defendant's motion to preclude discovery of WMATA's procedures under (2), above, is denied.  The motion as to (1), above, is mooted by the Court's ruling.

C.  Defendant's December 16, 1988 Motion for a Protective Order

Defendant's motion for a protective order to preclude the appearance of an Assistant General Manager at the December 19, 1988 motion hearing is denied as moot.

SO ORDERED.

December 22, 1988.

UNITED STATES DISTRICT JUDGE

6

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GLADYS CLAUDETTE SUTTON,**<br><br>**Plaintiff,**<br><br>v.<br><br>**WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY,**<br><br>**Defendant.** | **Civil Action No.  07-1197 (JDB)** |

## MEMORANDUM AND ORDER

On December 11, 2007 this Court held a telephone conference with the parties in this case to discuss an on-going dispute relating primarily to redacted portions of reports produced by defendant in the process of discovery.  Following that discussion, the parties submitted supplemental briefing on the disputed issue on December 13, 2007 and, the next day, defendant submitted unredacted copies of the reports in question for *in camera* review.  For the reasons set forth below, the Court will order defendant to produce to plaintiff unredacted versions of certain portions of the reports.

## DISCUSSION

### I.        Self-Evaluative Privilege

Defendant argues that it redacted the contested portions of the reports because (at least in part) the information contained therein consisted of self-evaluation and self-analysis that "should be accorded protection under public policy."  Def.'s Opp'n at 3.  In short, the self-evaluative privilege protects information that "relates to mental impressions and conclusions" formed during

-1-

a self-critical analysis of the events in question. See Wright v. WMATA, 1989 U.S. Dist. LEXIS 4366 at *1 (D.D.C. April 19, 1989). Defendant cites several decisions involving WMATA from this Court, as well as from D.C. Superior Court, that have applied the self-evaluative privilege doctrine. See, e.g., id.; Estate of Lucy v. WMATA, No. 87-2630 slip op. (D.D.C. April 25, 1988); Gilbert v. WMATA, No. 85-535 slip op. (D.D.C. Oct. 9, 1986); Def.'s Opp'n Ex. D (citing various D.C. Superior Court decisions); see also First Eastern Corp. v. Mainwaring, 21 F.3d 465, 466-67 (D.C. Cir. 1994) (recognizing the self-evaluative privilege but declining to apply it because the argument was waived below). In essence, the policy rationale underlying the self-evaluative privilege is that if WMATA is forced to disclose the substance of these internal evaluations, it may be chilled from performing them in the first instance, thereby reducing overall public transportation safety. The Court adopts those principles for purposes of this analysis. Nevertheless, upon *in camera* review of the WMATA reports, the Court concludes that several of the redacted portions of the documents do not contain information that falls within the scope of the self-evaluative privilege.

To begin with, the Court first reviewed the "Accident Report Form" produced by defendant. Defendant initially redacted information under the "Accident Record for the Past 365 Days" heading. The Court finds that the record of past accidents concerning the WMATA employee -- the bus operator involved in the fatal accident at issue -- is factual information that does not qualify as "mental impressions" or "conclusions" and should be produced. Thus, defendant shall produce information in the "Date" and "Action Taken" columns within the "Accident Record" heading. On the other hand, defendant may carefully redact information contained under the columns between "Date" and "Action Taken," because the Court concludes

that such assessments regarding the accident constitute opinions or conclusions within the scope

of the self-evaluative privilege. Defendant also redacted information under the "Action Taken by

the Division Superintendent or Supervisor" heading on page one of the same form. Because the

information found in rows numbered "13" and "16" is self-evaluative material, assessing and

characterizing the accident, defendant may redact those two rows under this heading. Finally, in

the next portion of the "Accident Report Form," defendant redacted information on page three of

"defendant's exhibit 1," as paginated by plaintiff's supplemental briefing. See Pl.'s Mot. Ex. 1 at

3. The Court concludes that information on this page also constitutes self-evaluative material

concerning the proper characterization and assessment (in defendant's view) of the accident and

may thus be withheld and redacted.

Turning to the Department of System Safety and Risk Management's "Bus/Pedestrian

Fatality Interim Investigation" report issued on February 17, 2007 -- labeled as defendant's

exhibit 2 in plaintiff's briefing -- defendant withheld material found on page five of that

document (again, by plaintiff's pagination). The Court concludes that the brief entries under the

headings "Probable Cause" and "Conclusions" are not protected self-evaluative material because

they merely state facts: namely, that there were no determinations made on those points as of that

date. As such, that information is not protected and should be produced to plaintiff.

Finally, defendant provided the Court with an additional document that it had just

recently discovered that amounts to a final update on the findings and conclusions issued in the

February 17, 2007 interim investigation report. This report, dated April 4, 2007, contains some

information that qualifies as self-evaluative. Specifically, defendant may withhold the following

self-evaluative material: (1) under the "Probable Cause" heading, defendant may redact the entire

section; and (2) under the "Conclusions" heading, defendant may redact <u>only</u> the <u>second</u> bullet

point (beginning with "BTRA").  With respect to the "Actions taken" and "Recommendations"

headings on the next page, the Court concludes that the information listed under those subject

headings constitutes mere factual material that cannot be withheld under the self-evaluative

privilege; of course, the Court expresses no view on the admissibility, as opposed to the

discoverability, of this information.  Thus, defendant shall produce a copy of the report that

conforms to these findings.

**II.    Work Product Doctrine**

Defendant also asserts that all of the disputed reports were prepared in anticipation of

litigation and therefore are exempt from discovery as protected work product.  The Court will not

belabor this point.  Suffice it to say, the information detailed above that the Court has found

cannot be withheld under the self-evaluative privilege does not qualify for the work product

exemption either, because the material amounts to mere statements of fact as opposed to

protected opinion work product.  <u>See</u> <u>Dir., Office of Thrift Superv. v. Vison & Elkins</u>, 124 F.3d

1304, 1307 (D.C. Cir. 1997) (distinguishing between opinion and factual work product and

finding the latter to be discoverable upon the proper showing).  The Court is satisfied that

plaintiff has demonstrated a substantial need for that information and undue hardship in

acquiring the information in any other manner.  <u>Id.</u>  Hence, defendant's assertion of work product

protection does not bar production of the information discussed above.

<u>**ORDER**</u>

For the foregoing reasons, it is hereby **ORDERED** that defendant shall conform its

production of the disputed materials to the determinations reflected above.

-4-

**SO ORDERED.**


                                    /s/ John D. Bates
                                  JOHN D. BATES
                            United States District Judge


Date:  December 17, 2007